Clark S. Stone (SBN 202123) cstone@macpherson-kwok.com
MACPHERSON KWOK CHEN & HEID LLP
2033 Gateway Place, Suite 400
San Jose, CA 95110
Telephone:  (408) 392-9250
Facsimile:  (408) 392-9262

Alan L. Barry (*pro hac vice* pending) abarry@bellboyd.com
Michael J. Abernathy (*pro hac vice* pending*)* mabernathy@bellboyd.com
Sanjay K. Murthy (SBN 212097) smurthy@bellboyd.com
BELL, BOYD & LLOYD LLP
70 West Madison Street, Suite 3100
Chicago, Illinois  60602
Telephone:  (312) 372-1121
Facsimile:  (312) 827-8000

Attorneys for Defendants
NEURALSTEM, INC., KARL K. JOHE, and
I. RICHARD GARR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STEMCELLS, INC., a Delaware corporation, and STEMCELLS CALIFORNIA, INC., a California corporation,<br><br>        Plaintiffs,<br><br>     v.<br><br>NEURALSTEM, INC., a Maryland corporation, KARL K. JOHE, an individual, and I. RICHARD GARR, an individual,<br><br>        Defendants. | **Case No. C 08-02364 CW**<br><br>**NOTICE OF MOTION; MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, STAY OR TRANSFER**<br><br>Judge:     Hon. Claudia Wilken<br>Date:      July 10, 2008<br>Time:      2:00 p.m.<br>Courtroom: Courtroom 2, 4th Floor |

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND ...................................................................................2

    A.  The StemCells Maryland Action ................................................................2

    B.  The Neuralstem Maryland Action ...............................................................3

    C.  The StemCells California Action .................................................................4

III. ARGUMENT ..........................................................................................................4

    A.  This Case Should Be Dismissed For Violating The First-To-File Rule ................4

        1.  Neuralstem Filed Suit In Maryland First .......................................5

        2.  The Parties Are Essentially The Same............................................6

        3.  The Issues In The Two Cases Are Identical ...................................6

        4.  No Exceptions To The First-To-File Rule Exist.............................6

    B.  In The Alternative, This Case Should Be Transferred To The District Of Maryland ..................................................................................................8

        1.  Two Actions Are Already Pending In The District Of Maryland ..............9

        2.  The Interests Of Justice Overwhelmingly Favor Transfer To Maryland ..................................................................................9

        3.  The Convenience Of The Parties Is Best Served By Transferring This Case ..............................................................................10

IV. CONCLUSION.......................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

## <u>CASES</u>

*Alltrade, Inc. v. Uniweld Products, Inc.*
   946 F.2d 622 (9th Cir. 1991) ...................................................................... 6

*Asset Allocation & Management Co. v. Western Employers Ins. Co.*
   892 F.2d 566 (7th Cir. 1989) ...................................................................... 4

*Cambridge Filter Corp. v. Int'l Filter Co., Inc.*
   548 F. Supp. 1308 (D.Nev. 1982) ............................................................. 8

*Colorado River Water Conservation District v. United States*
   424 U.S. 800 (1976) .................................................................................... 4

*Cont'l Grain Co. v. Barge FBL-585*
   364 U.S. 19 (1960) ...................................................................................... 8

*Electronics for Imaging, Inc. v. Coyle*
   394 F.3d 1341 (Fed. Cir. 2005) ................................................................. 5

*Genentech, Inc. v. Eli Lilly Co.*
   998 F.2d 931 (Fed. Cir. 1993) ................................................................... 5

*Intuitive Surgical, Inc., v. California Institute Of Tech.*
   2007 WL 1150787 (N.D. Cal. April 18, 2007) ..................................... 5, 8

*London and Hull Maritime Ins. Co. Ltd. v. Eagle Pacific Ins. Co.*
   1996 WL 479013 (N.D. Cal. Aug. 14, 1996) ......................................... 10

*Manuel v. Cevergys Corp.*
   430 F.3d 1132 (11th Cir. 2005) ................................................................. 4

*Minn. Mining & Mfg. Co. v. Norton Co.*
   929 F.2d 670 (Fed. Cir. 1991) ................................................................... 7

*Sanders v. Franklin*
   25 F. Supp. 2d 855 (N.D. Ill. 1998) .......................................................... 9

*Smith v. S.E.C.*, 129 F.3d 356 (6th Cir. 1997) ............................................ 4

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*
   497 F.3d 1271 (Fed. Cir. 2007) ................................................................. 7

*Van Dusen v. Baraack*
   376 U.S. 612 (1964) .................................................................................... 8

*Z-Line Designs, Inc. v. Bell'O Int'l L.L.C.*
   218 F.R.D. 663, 665 (N.D. Cal. 2003) ...................................................... 5

## <u>STATUTES</u>

28 U.S.C. § 1404(a) ....................................................................................... 8

35 U.S.C. § 271(e) ................................................................................. 2, 6, 9

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 12 and Civil L.R. 7-2, Neuralstem, Inc., Karl K. Johe, and I. Richard Garr (collectively "Defendants") move the Court to dismiss, stay, or transfer the patent infringement Complaint filed by plaintiffs, StemCells, Inc. and StemCells California, Inc. ("StemCells") based on the first-to-file rule because there are two actions pending in the United States District Court for the District of Maryland—one filed by Defendant Neuralstem and **one filed by StemCells**. Those actions involve the same parties, *presumably* the same allegedly infringing conduct, and the same patents.[1] Alternatively, this Court should transfer the current action so that it may be consolidated with the Maryland Actions because a transfer would serve the interests of justice, avoiding duplicative litigation, the waste of judicial resources, the potential for conflicting rulings, and inconvenience to the parties and witnesses.

## I.    INTRODUCTION

This is not the first dispute between these parties. StemCells' original Complaint and its First Amended Complaint notably fail to inform the Court that the parties are already involved in two litigations in another district court involving the same accused infringing activity and the same patents at issue here. In 2006, **StemCells** sued Neuralstem in the District of Maryland, asserting that Neuralstem's research activities infringed its patent rights. (Civil Action No. 06-1877, the "StemCells Maryland Action"). The StemCells Maryland Action alleges infringement of four patents from the same patent family as those at issue here and presumably relates to the same accused infringing conduct.[2]

Recently, based on threatening statements made by StemCells after the issuance of a new patent in the same patent family, Neuralstem filed a declaratory judgment action in the District Court of Maryland. (Civil Action No. 08-cv-1173, the "Neuralstem Maryland Action"). The two

---

[1]    The Amended Complaint fails to identify any facts concerning any infringing conduct by any of the named defendants, so Neuralstem is left to guess what conduct is at issue here. Indeed, the only allegation—"[o]n information and belief Defendants have been infringing…."—is deficient on its face. First Amended Complaint at ¶¶ 11 and 16.

[2]    Neuralstem is a small company focused on clinical therapeutic research to treat various diseases using its proprietary stem cell technology.

1    Maryland Actions are related and assigned to Judge Alexander Williams, Jr.  Later that same day,

2    StemCells filed this reactionary lawsuit setting two courts on the path to deciding identical issues,

3    at the cost of judicial efficiency, consistency, and the convenience of all involved.  It is undisputed

4    that the Neuralstem Maryland Action was filed **before** this case, involves the same accused

5    infringing activity, and the same patents at issue here.  Accordingly, this Court should dismiss this

6    action because it violates the first-to-file rule.

7        Alternatively, the relevant facts clearly favor transferring this action to the District of

8    Maryland.  Under well-established precedent in this Circuit, cases should be transferred where

9    related actions are pending.  Here, transfer is particularly warranted to avoid piecemeal litigation,

10   conserve judicial resources, and prevent conflicting decisions on liability, validity, enforceability,

11   and the applicability of the "safe harbor" and other defenses.  Finally, by filing the StemCells

12   Maryland Action in 2006, Stemcells has already agreed that Maryland is the proper venue for this

13   dispute.  Thus, if this Complaint is not dismissed, this action should be transferred so that it may be

14   consolidated with the related litigation.

15   **II.    FACTUAL BACKGROUND**

16       **A.    The StemCells Maryland Action**

17       On October 6, 2006, StemCells filed its Second Amended Complaint alleging that

18   Neuralstem infringes U.S. Patent Nos. 6,294,346 ("'346 patent"); 6,497,872 B1 ("'872 patent");

19   5,851,832 ("'832 patent"); and 7,101,709 ("'709 patent") (collectively, the "patents-in-suit").  (Dkt.

20   No. 23.)[3]  On October 30, 2006, Neuralstem Answered the Second Amended Complaint and

21   asserted, *inter alia*, affirmative defenses that (1) Neuralstem does not infringe any valid or

22   enforceable claim of the patents-in-suit; (2) its activities are protected from infringement under 35

23   U.S.C. § 271(e)(1); and (3) each claim of the patents-in-suit is invalid. (*See* Dkt. No. 32.)

24   Additionally, Neuralstem filed counterclaims of non-infringement and invalidity of the patents-in-

25   suit, as well as a counterclaim for a violation of Section 2 of the Sherman Antitrust Act. (*Id.*)

26       On October 13, 2006, Neuralstem filed a Motion to Dismiss, or in the Alternative, for

27   _____

28   [3]    All citations identified as "Dkt.__" refer to matters from Civil Action No. 06-1877 (D. Md).

1    Summary Judgment asserting that all of Neuralstem's allegedly infringing activities are exempt

2    from infringement by both statute and Supreme Court precedent.  (*See* Dkt. Nos. 27, 28.)   On

3    October 30, 2006, Judge Williams granted a joint motion to stay substantive patent discovery

4    pending resolution of Neuralstem's motion to dismiss.  (Dkt. No. 31.)

5         On February 16, 2007, in response to requests by Neuralstem, the PTO ordered

6    reexamination of the '346 patent and '709 patent based on a substantial new question of

7    patentability raised by the prior art.  On May 10, 2007, the PTO also ordered reexaminations of the

8    claims of the other two patents involved in this lawsuit, the '872 patent and the '832 patent.

9    Because all four of the patents-in-suit were undergoing reexamination at the PTO, on June 25,

10   2007, upon a joint motion by both parties, this Court stayed and administratively closed the

11   litigation pending the reexamination proceedings in the PTO.  (Dkt. Nos. 69, 70.)

12        On May 6, 2008, Neuralstem filed a motion to reopen the case and lift the stay.  (Dkt. No.

13   71,72.)   On May 7, 2008, StemCells' counsel originally indicated that it might be interested in

14   stipulating to reopening the case. (Murthy Decl. at ¶ 7.)   However, on May 12, 2008, StemCells

15   inexplicably changed its position and decided to oppose having the case reopened.  (Murthy Decl.

16   at ¶ 8.)  Nevertheless, a decision on the motion to reopen the case is expected soon.

17        **B.      The Neuralstem Maryland Action**

18        On April 22, 2008, the PTO issued United States Patent No. 7,361,505 (the "'505 patent")

19   for "Multipotent Neural Stem Cell Compositions" to Neurospheres.  (See Ex. A.)[4]   The day after

20   issuance, StemCells, Neurospheres' exclusive licensee for the '505 patent, issued a press release

21   regarding the '505 patent and touted its "broad claims covering human neural stem cells derived

22   from any tissue source, including embryonic, fetal, juvenile, or adult tissue."  (Ex. B, StemCells

23   April 23, 2008 Press Release.)   In that press release, StemCells' President and CEO, Martin

24   McGlynn stated: "We are confident that any third party wishing to commercialize neural stem cells

25   as potential therapeutics or use them as drug screening tools will have to seek a license from us

26   irrespective of how they derive the cells."  *Id.* (emphasis added).

27   ────────────────
     [4]   All Exhibits are attached to the Declaration of Sanjay K. Murthy In Support of Defendants'
28         Motion to Dismiss, Stay or Transfer.

1  　　　　Based on StemCells' press release and its history of suing companies that refuse to take a

2  license, including Neuralstem, Neuralstem decided to take matters into its own hands, and on

3  May 7, 2008 it filed a Complaint for Declaratory Judgment that the '505 patent was invalid, not

4  infringed, and unenforceable.  (Ex. C.)   On May 13, 2008, Neuralstem filed its First Amended

5  Complaint and added invalidity and non-infringement claims against U.S. Patent No. 7,115,418

6  (the "'418 patent").  (Ex. D.)  Neuralstem also added declaratory judgment claims that certain

7  statements made about the status of the reexaminations relating to the patents involved in the

8  StemCells Maryland Suit were not "trade libel" or "unfair competition." (Ex. D at ¶¶ 46-71.)

9  　　　　**C.**　　　**The StemCells California Action**

10 　　　　 On May 7, 2008, hours *after* the Neuralstem Maryland Action was filed, StemCells filed

11 this Complaint alleging patent infringement of the '418 patent and the '505 patent.  On May 9,

12 2008, StemCells filed an Amended Complaint adding claims for Trade Libel and Unfair

13 Competition in violation of California Business & Professions Code § 17200 *et seq*.  StemCells

14 admits that these state law claims, which it asserts are based on statements made by

15 Neuralstem's CEO concerning the reexamination of patents involved in the ***StemCells Maryland***

16 ***Action*** and the ***Neuralstem Maryland Action***, have "common operative facts" to its patent

17 infringement claims here.  (Amended Complaint at ¶¶ 2 and 22-37.)

18 **III.**　　**ARGUMENT**

19 　　　　**A.**　　　**This Case Should Be Dismissed For Violating The First-To-File Rule**

20 　　　　As the Supreme Court has stated, "[a]s between federal district courts . . . the general

21 principal is to avoid duplicative litigation."  *Colorado River Water Conservation District v. United*

22 *States*, 424 U.S. 800, 817 (1976).  Under the first-to-file rule, a strong presumption exists that the

23 action should be decided by the court in which the action was first filed.  *See, e.g., Smith v. S.E.C.*,

24 129 F.3d 356, 361 (6th Cir. 1997); *Manuel v. Cevergys Corp.*, 430 F.3d 1132, 1135 (11th Cir.

25 2005); *Asset Allocation & Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 573 (7th

26 Cir. 1989).   Where, as here, a court is addressing jurisdictional issues relating to first-filed

27 declaratory judgment actions, the Federal Circuit applies its own law which strongly endorses the

28

DEFENDANTS' MOTION TO DISMISS, STAY OR TRANSFER　　　4
CASE NO. C-08-02364 (CW)

1  first-to-file rule: "[w]e prefer to apply in patent cases the general rule whereby the forum of the

2  first-filed case is favored unless considerations of judicial economy, and the just and effective

3  disposition of disputes require otherwise." *Genentech, Inc. v. Eli Lilly Co.*, 998 F.2d 931, 937

4  (Fed. Cir. 1993); *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345-46 (Fed. Cir. 2005).

5  As the court in *Genentech* explained, the fact that the first filed suit is for declaratory

6  judgment does not change the analysis:

> The considerations affecting transfer to or dismissal in favor of
> another forum do not change simply because the first-filed action
> is a declaratory action. ***When the declaratory action can resolve***
> ***the various legal relations in dispute and afford relief from the***
> ***controversy that gave rise to the proceeding, and absent sound***
> ***reason for a change of forum, a first-filed declaratory action is***
> ***entitled to precedence as against a later-filed patent***
> ***infringement action.***

12  *Genentech*, 998 F.2d at 938 (emphasis added).

13  In applying the first-to-file rule, a court looks to three threshold factors: "(1) the

14  chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the

15  issues." *Z-Line Designs, Inc. v. Bell'O Int'l L.L.C.*, 218 F.R.D. 663, 665 (N.D. Cal. 2003)

16  (Whyte, J.). All three of these factors support the application of the first-to-file rule.

### 1.  Neuralstem Filed Suit In Maryland First

18  It is undisputed that Neuralstem filed its declaratory judgment action first. As this

19  Court recently explained, the fact that StemCells filed its patent infringement complaint a "few

20  hours" later on the same day does not change the first-to-file analysis:

> The Court finds that the first-to-file rule is applicable and
> requires deference to the first-filed court, ***notwithstanding the***
> ***near simultaneous nature of the filings.*** The Court is persuaded
> that applying the first-to-file rule in this case furthers the sound
> policy rationale underlying it.

24  *Intuitive Surgical, Inc., v. California Institute Of Tech.*, 2007 WL 1150787, *3 (N.D. Cal. April

25  18, 2007) (Wilken, J.) (applying first-to-file rule when actions filed a "few hours" apart). Not

26  applying the first-to-file rule here would sanction reactionary lawsuits filed only to destroy the

27  plaintiff's chosen forum. Such forum shopping should not be condoned.

1

## 2.    The Parties Are Essentially The Same

StemCells, Inc., StemCells California, Inc., and Neuralstem are all parties to this action and the Neuralstem Maryland Action. The only difference is that StemCells has decided—for reasons that are not entirely clear—to name Neuralstem's CEO and Chief Scientific Officer as parties to this action. Indeed, this Court will search in vain for any facts supporting the infringement allegations against these two individuals. Moreover, the case for personal jurisdiction over these two Maryland residents is even more tenuous. Accordingly, this factor also favors application of the first-to-file rule so that this case can proceed in Maryland—a venue where personal jurisdiction issues are avoided, and where StemCells has repeatedly availed itself of the court system.[5]

## 3.    The Issues In The Two Cases Are Identical

The Neuralstem Maryland Action involves the same patents, the same accused infringing activity, and the same legal issues of infringement, including application of the 35 U.S.C. § 271(e)(1) safe harbor provision, validity, and unenforceability. Inevitably the Neuralstem Maryland Action and this suit would involve the same claim construction issues and the same documents and records, and certainly the same witnesses will be deposed during discovery and called to trial. There is no difference in the issues between the two cases.

## 4.    No Exceptions To The First-To-File Rule Exist

"Circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit and forum shopping." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (internal citations omitted). None of those exceptions exists here.

It is impossible for StemCells to claim that Neuralstem engaged in forum shopping since Maryland is the venue where ***StemCells*** has filed three separate patent infringement suits, including one suit against Neuralstem. Likewise, StemCells can hardly claim that Neuralstem's

---

[5]    In addition to the pending Stemcells Maryland Action, in 2004 and 2005, Stemcells sued another competitor, ReNeuron ***twice*** in the United States District Court for the District of Maryland. *See* Civil Action Nos. 04-CV-03973 and 05-CV-1125.

actions were in "bad faith" or "anticipatory" when StemCells was already suing Neuralstem on

four patents disclosing the exact same technology and was issuing threatening statements.

On April 15, 2008, a few weeks before Neuralstem filed its declaratory judgment

action, StemCells' CEO announced to the world its plans to "***expeditiously***" go after

Neuralstem in the StemCells Maryland Action:

> "We welcome this action by the PTO, which preserves intact the basis of our infringement action against Neuralstem," said Martin McGlynn, President and CEO of Stemcells, Inc.

> * * *

> ***We can now move ahead expeditiously with our suit against Neuralstem and its collaborators and we remain confident they will ultimately be found to have infringed numerous claims of our patents.***  (Ex. E, StemCells Press Release dated April 15, 2008.)

Shortly thereafter, StemCells released another press release announcing the issuance of

the '505 patent and threatening Neuralstem and the entire market.  (Ex. B.)

After waiting several weeks, Neuralstem decided to take matters into its own hands and

brought a declaratory judgment action to protect its business and adjudicate StemCells' still

unasserted claims of infringement.  Congress created declaratory judgment actions to provide a

remedy for parties—like Neuralstem—that are threatened with potential litigation but not sued.

"The Declaratory Judgment Act was intended to fix the problem that arises when the other side

does not sue."  *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed.

Cir. 2007) (*citing Minn. Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 673 (Fed. Cir. 1991)

("In promulgating the Declaratory Judgment Act, Congress intended to prevent avoidable

damages from being incurred by a person uncertain of his rights and threatened with damage by

delayed adjudication."))  Thus, under these circumstances, Neuralstem's declaratory judgment

complaint cannot possibly qualify as either brought in "bad faith" or "anticipatory."[6]

---

[6]   The only "anticipatory" lawsuit was that filed by Stemcells who filed this Complaint hours ***after*** Neuralstem's filing—a transparent attempt to forum shop.

Finally, as this Court has previously noted, any balance of convenience analysis or determination about an exception to the first-to-file rule should be done by the first-filed court. *Intuitive,* 2007 WL 1150787, at *3 ("The court in the first-filed action should decide whether there is an exception to the first-to-file rule."). Thus, this Court should dismiss, or transfer this action, or, at the very least, stay this action pending the decision of the first-filed court in Maryland.

**B.     In The Alternative, This Case Should Be Transferred To The District Of Maryland**

Although substantial justification exists for dismissing this action outright, in the alternative, this action should be transferred under 28 U.S.C. § 1404(a) to the District of Maryland, where an identical action is already pending and where it can be consolidated with the other pending actions to conserve judicial resources.   The fundamental rationale and function of Section 1404(a) are "to prevent waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Baraack*, 376 U.S. 612, 616 (1964).

As the Supreme Court explained, Section 1404(a) was created precisely for cases like this: "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  *See Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) (superseded by statute on other grounds).

Transferring this action to the District of Maryland would best serve the intent of Section 1404(a)—to place litigation where it properly belongs, remedying StemCells' abuse of the federal courts by filing a federal lawsuit in this judicial district, when an identical and duplicative lawsuit is already pending in another federal court.  This is especially true given that another related action involving identical issues is pending in Maryland.[7]

---

[7]    *Cambridge Filter Corp. v. Int'l Filter Co., Inc.*, 548 F. Supp. 1308, 1311 (D. Nev. 1982) ("The feasibility of consolidation is a significant factor in deciding a transfer motion.").

The principal issue in determining if an action should be transferred to a more convenient forum under Section 1404(a) is whether the transferee district—here, the District of Maryland—is one where the action might have originally been brought. That and the other factors to be considered and balanced in the analysis, including the convenience of the parties, the convenience of witnesses, and the interests of justice, all compel the transfer of this action.

### 1.    Two Actions Are Already Pending In The District Of Maryland

Under Section 1404(a), an action "might have been brought" in any judicial district in which venue is proper. *See Sanders v. Franklin*, 25 F. Supp. 2d 855, 857 (N.D. Ill. 1998). Because both the Neuralstem Maryland Action and StemCells Maryland Action involve the same parties, the group of patents, and the same alleged infringing activity, venue is proper in the District of Maryland. Moreover, StemCells has already filed three separate infringement suits in that district putting to rest any notion that Maryland is not the proper forum.

### 2.    The Interests Of Justice Overwhelmingly Favor Transfer To Maryland

The "interests of justice" analysis relates to the efficient administration of the courts. Factors traditionally considered in an "interests of justice" analysis include where the litigants are most likely to receive a speedy trial and having judges familiar with the applicable law try the case. That analysis likewise favors transferring this action to the District of Maryland.

Judge Williams is already familiar with the issues in this case, patent law, and the technology described in the patents—he presided over the StemCells Maryland Action for over a year before that case was stayed. There is a pending dispositive motion to be decided once the case is reopened based on the "safe harbor" provision in 35 U.S.C. § 271(e)(1).[8] StemCells *agreed* that a stay of all substantive discovery unrelated to the "safe harbor" defense was appropriate pending the outcome of that motion. Written discovery on the safe harbor issue is complete and all that remains are a few depositions.

---

[8]    35 U.S.C. § 271(e)(1) states: "It shall not be an act of infringement to make, use, offer to sell, or sell within the United States or import into the United States a patented invention….solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological product."

Moreover, the StemCells Maryland Action was stayed in 2007 by agreement of both parties pending the outcome of reexamination proceedings initiated by Neuralstem at the United States Patent & Trademark Office ("PTO").  Those reexamination proceedings are nearly complete, and Neuralstem has moved to have the case reopened and the stay lifted. Apparently recognizing that the claim amendments made during the reexamination have damaged its infringement case, StemCells is now fighting to keep the suit, which *it filed,* stayed.  Nonetheless, a decision on that motion is expected soon.

Allowing this case to proceed in this District would waste judicial resources in having two courts construe the terms in the patents, possibly leading to inconsistent rulings on claim construction, validity, and infringement issues.  Indeed, this Court has found judicial economy dispositive in determining whether transfer is warranted:

> In this case, a related case involving the same parties, the same issues, the same witnesses and the same facts, is pending in the Western District of Washington. If this case is not transferred, inconsistent judgments could result, which could work an injustice. For example, this Court could rule that the Excess Underwriters were not responsible for the disputed amount, and the Washington court could rule that Eagle Pacific was not. Under these circumstances, judicial economy mandates that this case be transferred to the United States District Court for the Western District of Washington.

*London and Hull Maritime Ins. Co. Ltd. v. Eagle Pacific Ins. Co.*, 1996 WL 479013, *5 (N.D. Cal. Aug. 14, 1996) (Wilken, J.).

Here, without a transfer, there could be inconsistent ruling on the "safe harbor" defense, and different claim constructions for the same terms in the identical and related patents involved this case and the Maryland Action.

### 3.    The Convenience Of The Parties Is Best Served By Transferring This Case

While StemCells is based in California, compelling reasons exist to afford its choice of forum no weight.  StemCells has filed multiple suits in Maryland, including the StemCells Maryland Action which will be re-opened—despite StemCells' gamesmanship in attempting to

keep the case it filed closed.[9]  As a result, StemCells has already committed itself to producing witnesses and discovery in the Maryland.  Therefore, the Court should give no weight to any argument from StemCells that the District of Maryland is an "inconvenient" forum.

Finally, this action and the Maryland Actions will require the testimony of identical witnesses on the issues of infringement and validity of the same patents.  Specifically, both actions will likely require the same witnesses from Neuralstem to testify about its stem cell line and clinical research activities and from StemCells to testify as regarding the patents-in-suit and alleged damages from infringement.  Should both actions proceed, the same witnesses will be required to appear multiple times in separate courts on opposite sides of the country.  Transferring this action to Maryland would allow this case to be consolidated with the Maryland Actions, therefore greatly reducing the burden on these witnesses.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted. In the alternative, this action should be transferred to the District of Maryland or stayed.

Dated: May 30, 2008                    Respectfully submitted,

                                       BELL, BOYD & LLOYD LLP

                                       By: /s/ Sanjay K. Murthy_____
                                       Alan L. Barry (*pro hac vice* pending)
                                       abarry@bellboyd.com
                                       Michael J. Abernathy (*pro hac vice* pending*)*
                                       mabernathy@bellboyd.com
                                       Sanjay K. Murthy (SBN 212097)
                                       smurthy@bellboyd.com
                                       70 West Madison, Suite 3100
                                       Chicago, Illinois 60602-4207
                                       (312) 372-1121
                                       (312) 827-8000

                                       Clark S. Stone (SBN 202123)
                                       cstone@macpherson-kwok.com
                                       MACPHERSON KWOK CHEN & HEID LLP
                                       2033 Gateway Place, Suite 400
                                       San Jose, CA 95110

---

[9]    If StemCells truly desires to keep the case it filed closed indefinitely, it should dismiss the case with prejudice.

1

Telephone:  (408) 392-9250
Facsimile:  (408) 392-9262

2

Attorney for Defendants
NEURALSTEM, INC., KARL K. JOHE, and
I. RICHARD GARR

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

UNITED STATES DISTRICT COURT

6

NORTHERN DISTRICT OF CALIFORNIA

7

8

OAKLAND DIVISION

9

10

11

12

STEMCELLS, INC., a Delaware corporation, and STEMCELLS CALIFORNIA, INC., a California corporation,

**Case No. C 08-02364 CW**

13

14

Plaintiffs,

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

15

v.

16

NEURALSTEM, INC., a Maryland corporation, KARL K. JOHE, an individual, and I. RICHARD GARR, an individual,

17

Judge:        Hon. Claudia Wilken
Date:          July 10, 2008
Time:         2:00 p.m.
Courtroom:  Courtroom 2, 4th Floor

18

19

Defendants.

20

21

22

23

24

25

26

27

28

1    Defendant Neuralstem, Inc. ("Neuralstem") moves to dismiss or stay this action, or in the
2    alternative, to transfer it to the District of Maryland.  Having considered all of the papers filed by
3    the parties, the Court finds this matter appropriate for resolution without a hearing.  For the reasons
4    that follow, the Court GRANTS Neuralstem's Motion to Dismiss.

5                                          BACKGROUND

6    The parties have a history of litigation over a number of patents related to stem cell
7    technology.  Accordingly, a brief history of the events leading up to this action is provided below.

8    **A.    The StemCells Maryland Action**

9    On October 6, 2006, StemCells filed its Second Amended Complaint alleging that
10   Neuralstem infringes U.S. Patent Nos. 6,294,346 ("'346 patent"); 6,497,872 B1 ("'872 patent");
11   5,851,832 ("'832 patent"); and 7,101,709 ("'709 patent") (collectively, the "patents-in-suit,"
12   hereinafter referred to as the "StemCells Maryland Action").  On October 30, 2006, Neuralstem
13   Answered the Second Amended Complaint and asserted, *inter alia*, affirmative defenses that (1)
14   Neuralstem does not infringe any valid or enforceable claim of the patents-in-suit; (2) its activities
15   are protected from infringement under 35 U.S.C. § 271(e)(1); and (3) each claim of the patents-in-
16   suit is invalid.  Additionally, Neuralstem filed counterclaims of non-infringement and invalidity of
17   the patents-in-suit, as well as a counterclaim for a violation of Section 2 of the Sherman Antitrust
18   Act.

19   On October 13, 2006, Neuralstem filed a Motion to Dismiss, or in the Alternative, for
20   Summary Judgment asserting that all of Neuralstem's allegedly infringing activities are exempt
21   from infringement by both statute and Supreme Court precedent.  On October 30, 2006, Judge
22   Williams granted a joint motion to stay substantive patent discovery pending resolution of
23   Neuralstem's motion to dismiss.

24   On February 16, 2007, in response to requests by Neuralstem, the United States Patent &
25   Trademark Office ("PTO") ordered reexamination of the '346 patent and '709 patent based on a
26   substantial new question of patentability raised by the prior art.  On May 10, 2007, the PTO also
27   ordered reexaminations of the claims of the other two patents involved in this lawsuit, the '872
28   patent and the '832 patent.  Because all four of the patents-in-suit were undergoing reexamination

1   at the PTO, on June 25, 2007, upon a joint motion by both parties, this Court stayed and

2   administratively closed the litigation pending the reexamination proceedings in the PTO.

3   　　　　On May 6, 2008, Neuralstem filed a motion to reopen the case and lift the stay.  A decision

4   on the motion to reopen the case and lift the stay is pending.

5   　　　　**B.**　　　**The Neuralstem Maryland Action**

6   　　　　On April 22, 2008, the PTO issued United States Patent No. 7,361,505 (the "'505 patent")

7   for "Multipotent Neural Stem Cell Compositions" to Neurospheres Holdings Ltd.

8   ("Neurospheres").　The day after issuance, StemCells, Neurospheres' exclusive licensee for the

9   '505 patent, issued a press release regarding and touting the issuance of the '505 patent.

10  　　　　Based on StemCells' press release and its history of suing companies that refuse to take a

11  license, on May 7, 2008, Neuralstem filed a Complaint for Declaratory Judgment that the '505

12  patent was invalid, not infringed, and unenforceable (hereinafter referred to as the "Neuralstem

13  Maryland Action").  On May 13, 2008, Neuralstem filed its First Amended Complaint and added

14  invalidity and non-infringement claims against U.S. Patent No. 7,115,418 (the "'418 patent").

15  Neuralstem also added declaratory judgment claims that certain statements made about the status

16  of the reexaminations relating to the patents involved in the StemCells Maryland Action were

17  not "trade libel" or "unfair competition."

18  　　　　**C.**　　　**The StemCells California Action**

19  　　　　On May 7, 2008, but after the Neuralstem Maryland Action was filed, StemCells filed this

20  Complaint alleging patent infringement of the '418 patent and the '505 patent.  On May 9, 2008,

21  StemCells filed an Amended Complaint adding claims for Trade Libel and Unfair Competition in

22  violation of California Business & Professions Code § 17200 *et seq*.  StemCells admits that these

23  state law claims, which it claims are based on statements made by Neuralstem's CEO concerning

24  the reexamination of patents involved in the StemCells Maryland Action and the Neuralstem

25  Maryland Action, have "common operative facts" to its patent infringement claims here.

26  (Amended Complaint at ¶¶ 2 and 22-37.)

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCUSSION**

**A.    The First-To-File Rule**

As the Supreme Court has stated, "[a]s between federal district courts . . . the general principal is to avoid duplicative litigation." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976).  In virtually every circuit a strong presumption exists that an action should be decided by the court in which the action was first filed.  *See, e.g., Smith v. S.E.C.*, 129 F. 3d 356, 361 (6th Cir. 1997); *Manuel v. Cevergys Corp.*, 430 F. 3d 1132, 1135 (11th Cir. 2005); *Asset Allocation & Management Co. v. Western Employers Ins. Co.*, 892 F. 2d 566, 573 (7th Cir. 1989).  Where, as here, a court is addressing jurisdictional issues relating to first-filed declaratory judgment actions, the Federal Circuit applies its own law which strongly endorses the first-to-file rule:  "[w]e prefer to apply in patent cases the general rule whereby the forum of the first-filed case is favored unless considerations of judicial economy, and the just and effective disposition of disputes require otherwise." *Genentech, Inc. v. Eli Lilly Co.*, 998 F. 2d 931, 937 (Fed. Cir. 1993); *see also Electronics for Imaging, Inc. v. Coyle*, 394 F. 3d 1341, 1345-46 (Fed. Cir. 2005).

As the court in *Genentech* explained, the fact that the first filed suit is for declaratory judgment does not change the analysis:

> The considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action.  When the declaratory action can resolve the various legal relations in dispute and afford relief from the controversy that gave rise to the proceeding, and absent sound reason for a change of forum, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action.

*Genentech*, 998 F.2d at 938.

In applying the first-to-file rule, a court looks to three threshold factors: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Z-Line Designs, Inc. v. Bell'O Int'l L.L.C.*, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (Whyte, J.).  All three of these factors support the application of the first-to-file rule.

### 1.    Chronology of the Two Actions

Neuralstem filed its declaratory judgment action first.  As this Court recently explained, the fact that StemCells filed its patent infringement complaint a "few hours" later on the same day does not change the first-to-file analysis:

> The Court finds that the first-to-file rule is applicable and requires deference to the first-filed court, notwithstanding the near simultaneous nature of the filings.  The Court is persuaded that applying the first-to-file rule in this case furthers the sound policy rationale underlying it.

*Intuitive Surgical, Inc., v. California Institute Of Tech.*, 2007 WL 1150787, *3 (N.D. Cal. April 18, 2007) (Wilken, J.) (applying first-to-file rule when actions filed a "few hours" apart).  Not applying the first-to-file rule here would sanction reactionary lawsuits filed only to destroy the plaintiff's chosen forum.

### 2.    Similarity of the Parties

StemCells, Inc., StemCells California, Inc., and Neuralstem are all parties to this action and the Neuralstem Maryland Action.  The only difference is that StemCells has named Neuralstem's CEO and Chief Scientific Officer as parties to this action.  Nevertheless, this factor also favors application of the first-to-file rule.

### 3.    Similarity of the Issues

The Neuralstem Maryland Action involves the same patents, the same accused infringing activity, and the same legal issues of infringement, including application of the 35 U.S.C. § 271(e)(1) safe harbor provision, validity, and unenforceability.  The Neuralstem Maryland Action and this suit would involve the same claim construction issues and the same documents and records, and certainly the same witnesses will be deposed during discovery and called to trial.  There appears to be no difference in the issues between the two cases.

### 4.    The Court in the First Filed Action Determine Exceptions To The First-To-File Rule

"Circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit and forum shopping." *Alltrade, Inc. v. Uniweld Products*,

1   *Inc.*, 946 F. 2d 622, 628 (9th Cir. 1991)(internal citations omitted).  However, The court in the

2   first-filed action should decide whether there is an exception to the first-to-file rule.  *Intuitive,*

3   2007 WL 1150787, at *3.  Therefore, this Court will not address arguments that Neuralstem

4   engaged in forum shopping, or that a balancing of convenience factors weighs in favor of

5   litigating in Northern California.   The Court defers to the District of Maryland to decide

6   whether an exception to the first-to-file rule is applicable.

7                                          CONCLUSION

8        For the foregoing reasons, the Court GRANTS Neuralstem's Motion to Dismiss and

9   DENIES Neuralstem's Motion to Stay or Transfer as moot.

10

11        IT IS SO ORDERED:

12   DATED:                        _____

13                                 CLAUDIA WILKEN
                                   United States District Court Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28