MCDERMOTT WILL & EMERY LLP
Terrence P. McMahon (71910)
tmcmahon@mwe.com
William G. Gaede III (136184)
wgaede@mwe.com
Andrew A. Kumamoto (178541)
akumamoto@mwe.com
3150 Porter Drive
Palo Alto, CA  94304-1212
Telephone:    (650) 813-5000
Facsimile:    (650) 813-5100

MCDERMOTT WILL & EMERY LLP
John R. Fuisz (*pro hac vice*)
jfuisz@wme.com
Stephen Shahida (*pro hac vice*)
sshahida@wme.com
600 13th Street, N.W.
Washington, DC 20005-3096
Telephone:    (202) 756-8000
Facsimile:    (202) 756-8087

Attorneys for *StemCells, Inc. and
StemCells California, Inc.*

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STEMCELLS, INC., a Delaware corporation, and STEMCELLS CALIFORNIA, INC., a California corporation, <br><br> Plaintiffs, <br><br> v <br><br> NEURALSTEM, INC., a Delaware corporation, KARL K. JOHE, an individual, and I. RICHARD GARR, an individual, <br><br> Defendants. | Case No.  C-08-02364 CW <br><br> **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, STAY OR TRANSFER** <br><br> Date:    July 10, 2008 <br> Time:    2:00 p.m. <br> Courtroom 2, 4th Floor <br><br> **Hon. Claudia Wilken** |

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................. 3

A.   The Companies ....................................................................................... 3
B.   The StemCells April 23 Press Release on the '505 Patent and the Neuralstem May 7 Press Release ........................................................... 4
C.   The Maryland and California Litigations Filed on May 7, 2008 ........... 5
D.   Defendants' May 30 Motion To Dismiss, Stay or Transfer and the Maryland Court's Action To Enlarge Time Permitting This Action To Proceed First ......................................................................................... 6
E.   The Closed StemCells 2006 Maryland Infringement Action................. 7

III. ARGUMENT .................................................................................................... 8

A.   The Federal Circuit's 2008 *Micron* Decision Reconfirms That the Court Must Assess Four Suitability and Convenience Factors of the Competing Forums, Giving Little Weight to First-To-File ................... 8
B.   Application of the Four *Micron* Convenience and Suitability Factors of Jurisdiction, Consolidation, Convenience of Parties and Witnesses and Interests of Justice Confirms That California Is the Most Suitable and Convenient Forum Because It Suffers From None of the Defects That Maryland Has On Each Factor ..................................................... 11
     1.   Only the California Court Can Properly Exercise Personal Jurisdiction and Venue Over all Necessary and Desired Parties because Maryland Lacks Personal Jurisdiction and Venue Over StemCells and NeuroSpheres ....................................... 11
     2.   Only the California Court Has Had Proper Subject Matter Jurisdiction Over the Patent Claims Since Their Inception ..... 14
          a.   The original Maryland complaint failed to properly invoke subject matter jurisdiction on the '505 patent reflecting its improper and anticipatory nature .............................. 14
          b.   Only the California Court has proper subject matter jurisdiction for the two state law causes of action ....... 15
     3.   Consolidation of These New Actions With the Closed Maryland Action Would Be Improper and Would Inequitably Delay the Trial and Confuse the Issues under Consideration ......................... 16
     4.   The Convenience and Availability of Witnesses Favors the California Forum for These Actions ......................................... 18
     5.   The Interests of Justice Strongly Favor California as the Proper Forum for These Actions ........................................................ 19
C.   Neuralstem May Not Claim Whatever Residual Benefit Exists Under the First-To-File Rule Because the Actions Differed in Parties and Subject Matter, and the Maryland Action Is A Bad Faith, Anticipatory Suit.......... 20

IV.  CONCLUSION ................................................................................................ 22

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS, STAY OR TRANSFER
CASE NO. C-08-2364 CW

# TABLE OF AUTHORITIES

**Page**

CASES

Aetna Cas. & Sur. Co. v. Quarles
  92 F.2d 321 (4th Cir. 1937)....................................................................................... 22

Allen v. County of Monterey
  2007 U.S. Dist. LEXIS 80012 (N.D. Cal. Oct. 19, 2007) ........................................ 21

Am. Assoc. Naturopath. Phys. v. Hayhurst
  227 F.3d 1104 (9th Cir. 2000).................................................................................. 11

Ammerman v. Sween
  54 F.3d 423 (7th Cir. 1995)...................................................................................... 21

Bigg Wolf Disc. Video Movie Sales, Inc. v. Montgomery County
  256 F. Supp. 2d 385 (D. Md. 2003) ......................................................................... 16

Bridgelux, Inc. v. Cree, Inc.
  2007 U.S. Dist. LEXIS 53137 (N.D. Cal. July 9, 2007).......................................... 14

Cardtoons, L.C., v. Major League Baseball Players Assoc.
  95 F.3d 959 (10th Cir. 1996).................................................................................... 16

Chandler v. O'Bryan
  445 F.2d 1045 (10th Cir. 1971), cert. denied, 405 U.S. 964
  31 L. Ed. 2d 241, 92 S. Ct. 1176 (1972) ................................................................. 16

Citigroup Inc. v. City Holding Co.
  97 F. Supp. 2d 549 (S.D.N.Y. 2000) ....................................................................... 22

Cronos Containers, Ltd. v. Amazon Lines, Ltd.
  121 F. Supp. 2d 461 (D. Md. 2000) ......................................................................... 18

Document Sec. Sys., Inc. v. Adler Techs., Inc.
  2008 U.S. Dist. LEXIS 15744 (W.D.N.Y. Feb. 29, 2008) ...................................... 15

Factors Etc., Inc. v. Pro Arts, Inc.
  579 F.2d 215 (2d Cir. 1978)...................................................................................... 22

Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.
  292 F.3d 1363 (Fed. Cir. 2002)................................................................................ 12

Genentech, Inc. v. Eli Lilly & Co.
  998 F.2d 931 (Fed. Cir. 1993)........................................................................ 1, 8, 10

General Contracting & Trading Co., LLC v. Interpole, Inc.
  940 F.2d 20 (1st Cir. 1991) ...................................................................................... 12

Insituform Tech, Inc. v. Cat Contracting, Inc.
  385 F.3d 1360 (Fed. Cir. 2004)................................................................................... 5

Intuitive Surgical Inc., v. Caltech
  2007 U.S. Dist. LEXIS 31753 (N.D. Cal. Apr. 18, 2007) .................................. 9, 10

Janakes v. United States Postal Service
  768 F.2d 1091 (9th Cir. 1985).................................................................................. 16

Kearns v. Chrysler Corp.
  32 F.3d 1541 (Fed. Cir. 1994)................................................................................... 13

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS, STAY OR TRANSFER
CASE NO. C-08-2364 CW

**TABLE OF AUTHORITIES**
(continued)

Page

*Kearns v. General Motors Corp.*
  94 F.3d 1553 (Fed. Cir. 1996) ............................................................ 12, 13, 21

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*
  342 U.S. 180 (1952) .................................................................................... 1, 8

*London and Hull Maritime Ins. Co. Ltd. v. Eagle Pacific Ins. Co.*
  1996 WL 479013, *5 (N.D. Cal. August 14, 1996) (Wilken, J.) ........... 19, 20

*Malinckrodt Med. Inc. v. Sonus Pharm. Inc.*
  989 F. Supp. 265 (D.D.C. 1998) ................................................................... 12

*Mann Design, Ltd. v. Bounce, Inc.*
  138 F. Supp. 2d 1174 (D. Minn. 2001) ......................................................... 21

*MedImmune, Inc. v. Genentech, Inc.*
  127 S. Ct. 764 (2007) .................................................... 1, 2, 3, 8, 9, 14, 20

*Micron Tech., Inc. v. MOSAID Techs., Inc.*
  518 F.3d 897 (Fed. Cir. 2008) .................... 1, 8, 9, 10, 11, 15, 16, 18, 19, 20, 22

*Monsanto Co. v. Syngenta Crop Protection, Inc.*
  2008 U.S. Dist. LEXIS 7236 (E.D. Mo. January 31, 2008) .......................... 14

*Nilssen v. Osram Sylvania, Inc.*
  440 F. Supp. 2d 884, 902 (N.D. Ill. 2006),
  *aff'd.*, 504 F.3d 1223 (Fed. Cir. 2007) ................................................... 13, 17

*Rates Techn. Inc. v. Nortel Networks Corp.*
  399 F.3d 1302 (Fed. Cir. 2005) ..................................................................... 12

*Redwing Shoe Company v. Hockerson-Halberstadt*
  148 F.3d 1355 (Fed. Cir. 1998) ..................................................................... 13

*SanDisk Corp. v. STMicroelectronics Inc.*
  480 F.3d 1372 (Fed. Cir. 2007) ............................................................. 9, 14, 15

*Serco Servs. Co., L.P. v. Kelley Co., Inc.*
  51 F.3d 1037 (Fed. Cir. 1995) ......................................................................... 8

*Skelly Oil Co. v. Phillips Petroleum Co.*
  339 U.S. 667 (1950) ....................................................................................... 16

*Southwest Marine, Inc. v. Triple a Machine Shop, Inc.*
  720 F. Supp. 805 (N.D. Cal. 1989) ............................................................... 17

*State Contr. & Eng'g Corp. v. Condotte Am., Inc.*
  346 F.3d 1057 (Fed. Cir. 2003) ..................................................................... 16

*Z-Line Designs, Inc. v. Bell'O Int'l LLC*
  218 F.R.D. 663 (N.D. Cal. 2003) ................................................................... 10

**STATUTES**

28 U.S.C. § 1404(a) ......................................................................................... 6, 9

35 U.S.C. § 271(e)(1) ...................................................................................... 7, 17

Cal. Bus. and Prof. Code § 17200 ....................................................... 2, 5, 15, 19, 20

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

**OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS, STAY OR TRANSFER
CASE NO. C-08-2364 CW**

**TABLE OF AUTHORITIES**
**(continued)**

Page

**OTHER AUTHORITIES**

9 Wright & Miller § 2382 ............................................................................ 17

**RULES**

Fed. R. Civ. P. 12 ...................................................................................... 6

Fed. R. Civ. P. 12(b) ............................................................................ 6, 11

Fed. R. Civ. P. 12(b)(2) ............................................................................ 21

Fed. R. Civ. P. 12(b)(6) ................................................................ 5, 6, 7, 19

Fed. R. Civ. P. 12(b)(7) .............................................................................. 6

Fed. R. Civ. P. 12(h) ................................................................................ 21

Fed. R. Civ. P. 12(h)(1) ............................................................................ 11

Fed. R. Civ. P. 19 .................................................................................... 11

Fed. R. Civ. P. 4 ...................................................................................... 6

Fed. R. Civ. P. 42 .................................................................................... 17

Fed. R. Civ. P. 56 ...................................................................................... 7

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS, STAY OR TRANSFER
CASE NO. C-08-2364 CW**

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

1

## I.    INTRODUCTION

2        In their motion to dismiss, stay or transfer this case, Defendants rely too heavily on

3   applying a rigid, formulaic first-to-file approach that the federal courts have never agreed with.

4   *See, e.g., Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952).  In doing so,

5   Defendants seek to shoehorn the analysis of proper forum into a narrow first-to-file test limited to

6   three exceptions.  Defendants' Br. at 5:13-7:24.  Defendants reach this result only through a

7   strained reading of the Federal Circuit's 1993 *Genentech* decision and by ignoring altogether the

8   Federal Circuit's 2008 *Micron* decision, which expressly rejected formulaic application of first-

9   to-file rules.

10       As the Federal Circuit held in *Micron*, it is wrong to apply the first-to-file rule

11  mechanically, especially in light of the "newly understood legal environment" articulated by the

12  U.S. Supreme Court in its 2007 *MedImmune* decision, which lowered the bar for declaratory

13  relief jurisdiction.  *Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897, 905 (Fed. Cir.

14  2008); *see MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007).  The Federal Circuit

15  recognized that under *MedImmune*, potential defendants had "greater opportunity to race to the

16  courthouse" in the hope of forcing patent holders to defend their patents in deficient forums,

17  which is precisely what Defendants are trying to do here.  *Micron*, 518 F.3d at 905.

18       To address this, the *Micron* decision mandates consideration of each competing forums'

19  suitability through "robust consideration" of four convenience factors:    (1) jurisdiction,

20  (2) consolidation, (3) convenience of the witnesses and parties, and (4) the interests of justice.  *Id*.

21  In other words, to discourage litigants from racing to federal court to claim first-to-file status, and

22  the injustices and waste that would surely follow, *Micron* reaffirmed that a proper forum analysis

23  requires the courts to focus on the suitability and convenience of the competing forums, not the

24  actions of the parties.

25       Defendants presumably gloss over this analysis and this new legal environment because

26  their chosen forum, Maryland, presents fundamental jurisdictional and procedural issues that are

27  wholly absent in California:

28

- 1 -

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, STAY OR TRANSFER CASE NO. C-08-2364 CW**

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

- For example, this Court has proper personal jurisdiction and venue over all the parties. The Maryland District Court, in contrast, lacks personal jurisdiction and venue over both StemCells and NeuroSpheres because both entities, having insufficient contact with Maryland, have not consented to suit in Maryland.

- This Court also has subject matter jurisdiction over the entire dispute. The Maryland District Court, in contrast, lacks subject matter jurisdiction over both the patent claims, because no case and controversy existed under *MedImmune* when Defendants filed their declaratory judgment suit, as well as the declaratory state law causes of action, because both diversity and federal question jurisdiction are lacking with respect to these California state law claims.

- Meanwhile, any argument of consolidation in Maryland is illusory as the earlier Maryland case is based on different patents and facts and raises different legal considerations not presented here; moreover, the earlier case is administratively closed and will remain so for the foreseeable future.

- The convenience of third party witnesses also weighs in favor of California. Witnesses in California will be important to establishing California acts of infringement and violations of California state and common law. In contrast, Neuralstem has not identified any material third-party witnesses in Maryland.

- Litigating in California poses no undue difficulty to Defendants, as evidenced by Neuralstem's initiating suit against another company in California a few months ago.

- Finally, interests of justice all weigh in favor of this Court because, among other things, only this Court has jurisdiction over both Plaintiffs' infringement and California state law claims (transferring this case would presumably require Plaintiffs to file a second suit in California state court), and the expertise to efficiently decide these issues.

While the foregoing is dispositive, even if a rigid application of the first-to-file rule should apply here, the declaratory Maryland action is not entitled to claim first-to-file status with respect to the substance of the California action. It is undisputed that StemCells filed first in California on: (1) infringement claims of the '418 patent against all three Defendants; (2) infringement claims on the '505 patent against two of the three Defendants; (3) violation of California trade libel laws; and (4) violation of California Business and Professions Code Section 17200. Each of these causes of action invokes separate and distinct legal issues that were first-filed in California. Defendants' contention that they have the right to choose the forum based on first-to-file simply does not withstand scrutiny.

Furthermore, the Maryland action as originally filed was aimed primarily at alleged inequitable conduct on just the '505 patent and is an anticipatory bad faith suit seemingly designed to harm StemCells publicly. Defendants presaged their suit, for example, through a

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS, STAY OR TRANSFER
CASE NO. C-08-2364 CW

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1    press release accusing StemCells of inequitable conduct – all the while admitting in that same

2    press release that StemCells had not accused Neuralstem of patent infringement on the '505

3    patent.  *MedImmune* lowered the bar, but not so low as to permit declaratory complainants to

4    claim the right to choose a forum when the complainant admits no specific charge of infringement

5    has been made.  Here, Neuralstem conjured up a threat of suit from the benign '505 patent press

6    release, filed a declaratory action against the '505 patent, amended that action to mirror

7    StemCells' California action, and is now attempting to portray itself as having therefore filed first

8    in Maryland for all of the actions before this Court. As explained below, Defendants are not the

9    first to file, and having such anticipatory and bad faith actions dictate forum choice should not be

10   permitted, especially given the new legal environment post-*MedImmune*.

11          For all these reasons, the Northern District of California is the highly favored court for

12   StemCells' infringement and pendent California state law causes of action.  StemCells therefore

13   respectfully requests that this Court deny Defendants' motion to dismiss, transfer or stay this

14   case.

15   **II.    STATEMENT OF FACTS**

16          **A.    THE COMPANIES**

17          StemCells[1] is a Delaware corporation located in Palo Alto, California that

18   discovers and develops stem cell therapeutics.  StemCells has approximately sixty employees (all

19   located in California), has been in business since 1988 and has a broad suite of intellectual

20   property relating to the field of stem and progenitor cells, including patents covering the

21   purification, proliferation and use of human neural stem cells.  StemCells has also licensed

22   intellectual property from other early players in the stem cell field, including the exclusive right,

23   title and interest to a portfolio of patents from NeuroSpheres Holding Ltd. ("NeuroSpheres"), a

24   Canadian entity located in Alberta, Canada.

25          StemCells relies upon its pioneering intellectual property to protect its proprietary

26   therapeutic drug programs, and to monetize other aspects of its technology with third parties such

27

28   [1] "StemCells" refers collectively to StemCells, Inc. and StemCells California, Inc.

**OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS, STAY OR TRANSFER
CASE NO. C-08-2364 CW**

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

as by entering into license agreements. This year, StemCells completed enrollment for a Phase I clinical trial using neural stem cells to treat infantile Neuronal Ceroid Lipofuscinosis.

Neuralstem is a Delaware corporation located in Rockville, Maryland. Neuralstem was formed in 1996, five years after the priority date for the patents-in-suit, and it currently has approximately seven employees. (Kumamoto Decl., Ex. 1 at p. 11.)[2] Neuralstem publicly describes itself as essentially a virtual company because it outsources its research on stem cells to third parties, including its collaborators at UC San Diego. (*Id*. at p. 19.)

**B.**    **THE STEMCELLS APRIL 23 PRESS RELEASE ON THE '505 PATENT AND THE NEURALSTEM MAY 7 PRESS RELEASE**

On October 3, 2006, U.S. Patent No. 7,115,418 (the "'418 patent") issued to NeuroSpheres with StemCells as its exclusive licensee. StemCells did not issue a press release on the issuance of the '418 patent. On April 22, 2008, U.S. Patent No. 7,361,505 (the "'505 patent") issued to NeuroSpheres with StemCells as its exclusive licensee. StemCells issued a press release on April 23, 2008, on the issuance of the '505 patent. In this press release, StemCells stated:

> 'The issuance of this patent rounds out and strengthens our neural stem cell portfolio, which we believe is unparalleled in its breadth, depth and completeness,' said Martin McGlynn, President and CEO of StemCells, Inc. 'We are confident that any third party wishing to commercialize neural stem cells as potential therapeutics or to use them as drug screening tools will have to seek a license from us irrespective of how they derive the cells. We have already granted licenses to several companies and are currently considering licensing others.'

(Kumamoto Decl., Ex. 2.) No communications occurred between StemCells and Neuralstem regarding the '418 or the '505 patents, either before or after this press release.

On May 7, Neuralstem issued a press release stating that the '505 patent was procured by inequitable conduct and that Neuralstem was "filing suit" that day for declaratory relief. (Kumamoto Decl., Ex. 3.) The press release went on to contain the following quote from Neuralstem's CEO:

---

[2] "Kumamoto Decl." refers to the Declaration of Andrew A. Kumamoto in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss, Stay or Transfer, filed herewith.

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, STAY OR TRANSFER CASE NO. C-08-2364 CW**

1
2
3
4
5

'While we believe that it is clear that we are not infringing this patent, **and we have not yet been directly accused by StemCells, Inc. of infringing this patent**, the threatening statements in their press release of April 23rd leave the misleading impression that we would require a license from them as a result of the issuance of this patent. Nothing could be further from the truth,' said Neuralstem President & CEO Richard Garr. 'And, in addition to finding that the patent is unenforceable against us, or anyone else for that matter, as a result of their actions, we are asking that the Court also declare that we are not infringing the patent and that the patent is also invalid.'

6

Neuralstem May 7, 2008, Press Release (emphasis added). (Kumamoto Decl., Ex. 3.)

7

**C.    THE MARYLAND AND CALIFORNIA LITIGATIONS FILED ON MAY 7, 2008**

8
9
10
11
12

Sometime later that day, on May 7, 2008, Neuralstem filed a declaratory judgment action in the U.S. District Court for the District of Maryland against StemCells and NeuroSpheres seeking a finding that the '505 patent was unenforceable, not infringed and invalid (the "Maryland action"). (Kumamoto Decl., Ex. 4.) The action as filed did not mention the '418 patent.

13
14
15
16
17
18
19
20
21
22
23

On May 7, 2008, StemCells filed a complaint in this Court against Neuralstem and its founders, Karl L. Johe and I. Richard Garr, for patent infringement of both the '418 and '505 patents (collectively, the "California patents"). (Kumamoto Decl., Ex. 5.)[3] StemCells amended its complaint on May 9, 2008, to allege two California state law causes of action, namely Neuralstem's violation of (i) California Business and Professions Code Section 17200 and (ii) California common law trade libel (the "California action"). (Kumamoto Decl., Ex. 6.) These two California causes of action arise out of Neuralstem's repeated derogatory statements to the public about StemCells' patent portfolio (*viz.*, inaccurate claims about the reexaminations pending before the U.S. Patent Office, allegations of fraud before the Patent Office in procuring the '505 patent) in an attempt to debase the value of StemCells' intellectual property. This has had real world consequences, as alleged in StemCells' First Amended Complaint, by driving

24
25
26
27
28

---

[3] Defendants question the sufficiency of Plaintiffs' infringement allegations against Defendants Johe and Garr. Such specifics are premature under the local rules, and notably Defendants have not moved under Rule 12(b)(6) to contest the sufficiency of these allegations. Nonetheless, these two principal officers of Neuralstem, a virtual company, may be held liable, at a minimum, for inducing infringement. *See Insituform Tech, Inc. v. Cat Contracting, Inc.*, 385 F.3d 1360 (Fed. Cir. 2004). Indeed, Defendant Johe is on publications with authors from the UC San Diego that serve, in part, as support for the basis of Plaintiffs' claims. (Kumamoto Decl., Ex. 7.)

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, STAY OR TRANSFER CASE NO. C-08-2364 CW**

1    away potential licensees, including two California companies.  (Kumamoto Decl., Ex. 6.)

2           On May 12, 2008, this Court entered an order scheduling a Case Management Conference

3    for August 26, 2008, and directed the parties to prepare a Joint Case Management Conference

4    Statement.  (Kumamoto Decl., Ex. 8.)

5           On May 13, 2008, Neuralstem filed in the Maryland action an amended declaratory

6    judgment complaint alleging declaratory relief of no infringement of the '418 patent and also

7    seeking a declaration that Neuralstem's conduct did not constitute violations of trade libel or

8    unfair competition, thereby mirroring further the First Amended Complaint filed by StemCells on

9    May 9 in the California action.[4]  As of now, Defendants Garr and Johe have not sought to

10   intervene in the Maryland action, and thus are only parties to the California action.

11           **D.    DEFENDANTS' MAY 30 MOTION TO DISMISS, STAY OR TRANSFER AND THE**
             **MARYLAND COURT'S ACTION TO ENLARGE TIME PERMITTING THIS ACTION**
12           **TO PROCEED FIRST**

13           On May 30, 2008, Defendants filed a motion to dismiss this case under Rule 12

14   "based on the first-to-file rule" and alternatively sought to transfer under 28 U.S.C. § 1404(a).

15   Defendants' Br. at 1:2-11.  The motion does ***not*** move to dismiss the California action for any

16   alleged subject matter, personal jurisdiction or venue defects under Rule 12(b)(1)-(3), or any

17   other alleged defects under Rule 12(b)(6) or 12(b)(7).

18           On June 2, 2008, StemCells moved the Maryland Court to enlarge the time to respond to

19   the Maryland action to September 1 because Neuralstem had not served co-defendant

20   NeuroSpheres.  (Kumamoto Decl., Ex. 9.)  That same day, NeuroSpheres filed a waiver of service

21   under Rule 4.  (Kumamoto Decl., Ex. 10.)  In that motion to enlarge time, StemCells informed the

22   Maryland Court of Defendants' pending motion to dismiss and that a hearing on the merits was

23   set for July 10 before this Court.  (Kumamoto Decl., Ex. 9.)  Neuralstem opposed StemCells'

24   motion to enlarge time.  (Kumamoto Decl., Ex. 11.)  Even so, on June 4, the Maryland Court

25   enlarged time to July 15, 2008, for StemCells and NeuroSpheres to respond to the Maryland

26

27   [4] Neuralstem did not specify in its amended complaint under what law it is seeking a declaration
     that its conduct did not constitute trade libel or that it did not engage in unfair competition.
     StemCells' trade libel and unfair competition causes of action arise under California law.

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

**OPPOSITION TO DEFENDANTS' MOTION TO**
                                                                  **DISMISS, STAY OR TRANSFER**
                                                                  **CASE NO. C-08-2364 CW**

1    action.  (Kumamoto Decl., Ex. 12.)

2         **E.**     **THE CLOSED STEMCELLS 2006 MARYLAND INFRINGEMENT ACTION**

3         Almost two years ago, in July 2006, StemCells filed suit against Neuralstem in

4    Maryland alleging infringement of four StemCells patents, namely U.S. Patent Nos. 5,851,832,

5    6,294,346, 6,497,872, and 7,101,709 (the "Maryland patents").  These older Maryland patents

6    arise out of the complex prosecution history that recently resulted in the issuance of the '505 and

7    '418 California patents.  On December 7, 2006 and April 5, 2007, Neuralstem petitioned the

8    Patent Office to reexamine these older Maryland patents based on eleven prior art references.

9    After the Patent Office granted these petitions for reexamination, StemCells and Neuralstem

10   voluntarily agreed to stay and administratively close the Maryland infringement action until the

11   reexaminations were completed (the "closed Maryland action").[5]  (Kumamoto Decl., Ex. 13.)

12   Recent statistics published by the U.S. Patent Office show that the average pendency for a

13   reexamination proceeding is two years.  (Kumamoto Decl., Ex. 14.)  None of the current

14   reexamination proceedings have been completed resulting in a reexamination certificate, and two

15   of the reexaminations are still awaiting further substantive action from the Patent Office.

16   (Kumamoto Decl., Ex. 15.)  None of the California patents are at issue in the closed Maryland

17   action.  Defendants Garr and Johe are not parties to the closed Maryland action.

18        On May 6, 2008, Neuralstem moved to administratively open the closed Maryland action

19   and lift the stay.  (Kumamoto Decl., Ex. 16.)  StemCells has opposed this motion on the grounds

20   that (i) Neuralstem's motion violates that court's stipulated Order closing the case, and (ii) the

21   motion would, if granted, result in fractured and piecemeal litigation because the Patent Office

22

23   _____

     [5] Defendants' motion attempts to paint the picture that the closed Maryland action had progressed

24   significantly prior to the voluntary stay and its closure.  Defendants Br. at 9:19-25.  However,
     based on the limited record of the closed Maryland action, Defendants are clearly stretching when

25   they characterize Judge Williams as "already familiar with the issues *in this case*" and "the
     technology described in the patents."  Defendants' Br. at 9:18-20.  In truth, the pleadings are not

26   yet fully settled, there have been no dispositive motions heard by the Maryland Court, StemCells
     has not yet replied to Neuralstem's motion to dismiss, no claim construction has occurred before

27   the Maryland Court, and the only discovery conducted to date has been partial limited discovery
     solely on the issue of Section 271(e)(1) to meet Neuralstem's motion under Rule 12(b)(6) or in

28   the alternative, Rule 56.  (Kumamoto Decl., Ex. 21.)

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

**OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS, STAY OR TRANSFER
CASE NO. C-08-2364 CW**

1    has not yet finished its reexamination of the four Maryland patents.  (Kumamoto Decl., Ex. 17.)

2    The motion is fully-briefed and pending before Judge Williams.

3    **III.    ARGUMENT**

4    **A.    THE FEDERAL CIRCUIT'S 2008 *MICRON* DECISION RECONFIRMS THAT THE
         COURT MUST ASSESS FOUR SUITABILITY AND CONVENIENCE FACTORS OF THE

5         COMPETING FORUMS, GIVING LITTLE WEIGHT TO FIRST-TO-FILE**

6             Defendants' motion to dismiss or transfer this case rests on a rigid, formulaic first-

7    to-file approach that the Federal Circuit has never "strongly endorsed," as Defendants contend.[6]

8    Defendants' Br. at 4:27.  In doing so, Defendants seek to shoehorn the analysis of proper forum

9    into a narrow first-to-file test limited to three exceptions.  Defendants' Br. at 6:18 – 8:6.

10   Defendants reach this result only through a strained reading of the Federal Circuit's 1993

11   *Genentech* decision and by ignoring altogether the Federal Circuit's 2008 *Micron* decision that

12   reaffirms law stretching back to *Kerotest* in 1952.  Then, as now, judicial administration of

13   competing cases brought in different forums does not allow rigid mechanical rules.  As the

14   Supreme Court explained:

15           The Federal Declaratory Judgment Act, facilitating as it does the initiation of
             litigation by different parties to many-sided transactions, has created complicated
16           problems for coordinate courts.  Wise judicial administration, giving regard to
             conservation of judicial resources and comprehensive disposition of litigation,
17           does not counsel rigid mechanical solution of such problems.  The factors relevant
             to wise administration here are equitable in nature.
18

19   *Kerotest*, 342 U.S. at 183.

20             As recently as four months ago, the *Micron* decision reaffirmed that categorical rules

21   deferring to the first-to-file forum would be inappropriate, particularly in light of the "newly

22   understood legal environment" for declaratory relief jurisdiction articulated in the Supreme

23   Court's *MedImmune* decision.  *See Micron*, 518 F.3d 897; *see generally*, *MedImmune, Inc.*,

24   127 S. Ct. at 771.  Before *MedImmune*, declaratory judgment jurisdiction did not arise in patent

25

26   ----------

     [6] Federal Circuit law governs where a court is being called upon to decide, as in this case,
27   whether to retain jurisdiction over a declaratory judgment action in favor of a forum where a
     patent infringement action is pending.  *See, e.g., Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d
28   1037, 1038 (Fed. Cir. 1995).

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

**OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS, STAY OR TRANSFER
CASE NO. C-08-2364 CW**

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

1  cases until there was an objectively reasonable threat of imminent suit. *Micron*, 518 F.3d at 901-

2  02. *MedImmune* lowered the bar to whether "all the circumstances show a controversy."

3  *Id*. at 902. Thus, *MedImmune*, like the Federal Circuit's subsequent *SanDisk* opinion, establishes

4  a "now more lenient legal standard" giving potential defendants "greater opportunity to race to

5  the courthouse" in the hope of forcing patent holders to defend their patents in deficient forums.

6  *Id*. at 905; *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007).

7  That categorical rules deferring to first-to-file forums are inappropriate equally applies to

8  procedural rules concering first-to-file disputes.[7]

9  Recognizing that this new environment could promote litigants to race to the courthouse,

10  the *Micron* Court *cautioned* that rather than "automatically going with the first filed action," the

11  more appropriate analysis takes account of the convenience factors under 28 U.S.C. § 1404(a),

12  explaining "where the two actions were filed almost simultaneously, this court detects that the

13  transfer analysis essentially mirrors the considerations that govern whether [a] court could decline

14  to hear the case." *Micron*, 518 F.2d at 904. In other words, whatever weight first-to-file has as a

15  rule is greatly diminished in this new lenient environment where the actions, as here, were filed

16  almost simultaneously.

17  Having noted that the convenience factors "take on added significance" in light of the

18  newly understood *MedImmune* legal environment surrounding declaratory judgment jurisdiction,

19  the Federal Circuit in *Micron* held that district courts "***must*** consider the real underlying dispute:

20  The convenience and suitability of competing forums." *Id*. at 905 (emphasis added). The Federal

21  Circuit went on to articulate the controlling standard for review:

22

23

---

[7] Defendants ask for the Court to apply a categorical rule and defer to Maryland on this analysis, citing this Court's 2007 *Intuitive Surgical* decision as support. Defendants' Br. at 8:1-6. There is no reason in equity to defer to such a categorical rule in this case because, as established by this brief, (1) this Court is the first-to-file Court on most of the claims, (2) the Maryland Court was aware of this motion's pendance when it deferred StemCells' appearance until after the scheduled July 10 hearing date, thereby essentially deferring to this Court, (3) the changed legal environment post-*MedImmune* warrants this Court examining the *Micron* factors, and (4) even under the older legal environment, deference to the first filed court was not required. Based on these equities, deference to Maryland following the old categorical rule is not warranted.

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

> The convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations relating to the interest of justice ***must be evaluated*** to ensure the case receives attention in the most appropriate forum. Eventually, robust consideration of these factors will reduce the incentives for a race to the courthouse because both parties will realize that the case will be heard or transferred to the most convenient or suitable forum.

*Id.* at 905 (emphasis added).

The older (*i.e.*, pre-*MedImmune*) decision of *Genentech v. Eli Lily & Co.* relied on by Defendants is not to the contrary. While noting a general rule favoring the first-to-file forum, the *Genentech* Court stressed that exceptions to this preference "are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *E.g.*, *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993). Noteworthy, and consistent with the Federal Circuit's emphasizing them in the first instance in *Micron*, this Court recognized that the convenience factors are also an exception to the first-to-file rule. *Intuitive Surgical, Inc. v. Caltech*, 2007 U.S. Dist. LEXIS 31753 (N.D. Cal. Apr. 18, 2007). Thus, the Defendants are simply wrong under the law by suggesting in their moving brief that first-to-file is a restrictive and categorical analysis with only three exceptions—bad faith, anticipatory suit and forum shopping. *See, e.g., Z-Line Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003) ("A court may also refuse to apply the first to file rule if the balance of convenience weighs in favor of the later-filed action.").

In sum, the rigid inquiry that Defendants advance is not well-grounded in either old or new Supreme Court and Federal Circuit precedent, all of which equitably focuses on the forums and the nature of the suits. Only through "robust consideration" of the four *Micron* factors will the courts reduce the waste of having parties on either side file premature suits merely to claim first-to-file status. *Micron*, 518 F.3d at 904. Parties will come to realize that cases will be heard in the "most convenient and suitable forum" irrespective of who reaches the courthouse steps first. *Id.*

Here, as explained below, the Maryland action raises significant issues under the Due Process Clause, Article III and subject matter jurisdiction, judicial economy, the convenience of

the parties and witnesses and even entitlement under the law to claim that it was the first suit filed. Close scrutiny of the two dueling actions confirms that California is the most suitable forum and shows the Maryland action to be an anticipatory, bad faith suit – presumably designed to harm StemCells publicly by making unfounded allegations of fraud in the most sensational way possible.

**B.     APPLICATION OF THE FOUR *MICRON* CONVENIENCE AND SUITABILITY FACTORS OF JURISDICTION, CONSOLIDATION, CONVENIENCE OF PARTIES AND WITNESSES AND INTERESTS OF JUSTICE CONFIRMS THAT CALIFORNIA IS THE MOST SUITABLE AND CONVENIENT FORUM BECAUSE IT SUFFERS FROM NONE OF THE DEFECTS THAT MARYLAND HAS ON EACH FACTOR**

**1.     Only the California Court Can Properly Exercise Personal Jurisdiction and Venue Over all Necessary and Desired Parties because Maryland Lacks Personal Jurisdiction and Venue Over StemCells and NeuroSpheres**

Turning first to jurisdiction under *Micron*, personal jurisdiction and venue are proper for all parties in StemCells' California lawsuit.[8] Defendants have not challenged personal jurisdiction and venue in California in their motion to dismiss under Rule 12(b). *See* Rule 12(h)(1); Defendants' Br. at 1:2-11; *see Am. Assoc. Naturopath. Phys. v. Hayhurst*, 227 F.3d 1104, 1106-07 (9th Cir. 2000) ("A fundamental tenet of the Federal Rules of Civil Procedure is that certain defenses under Fed. R. Civ. P. 12 must be raised at the first available opportunity or, if they are not, they are forever waived.") In any event, this Court has personal jurisdiction over Defendants as their accused infringing acts occurred in large part in California. (Kumamoto Decl., Ex. 7.)

Defendants' unsupported representation that Maryland is a venue "where personal jurisdiction issues are avoided," is simply incorrect. Defendants' Br. at 6:8-10. Maryland lacks personal jurisdiction and venue over both StemCells and NeuroSpheres.

Because StemCells has insufficient contacts for jurisdiction in Maryland to be properly exercised in the declaratory judgment claim, Neuralstem's First Amended Complaint unavailingly

---

[8] Though not a necessary party under Rule 19, NeuroSpheres can be properly named in California because it has exclusively licensed the '505 patent to StemCells in California.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

1    alleges that StemCells consented to personal jurisdiction by filing the closed Maryland action in

2    2006.  But the filing of one suit by a party in a particular jurisdiction does not subject that party to

3    future cases on a different transaction or occurrence, even ones involving the same parties.

4    *See, e.g.*, *General Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 23-24 (1st Cir.

5    1991); *Malinckrodt Med. Inc. v. Sonus Pharm. Inc.*, 989 F. Supp. 265, 271 (D.D.C. 1998) ("The

6    initiation of [the other] action neither implies consent to be sued [in a new action], nor does it 'in

7    and of itself constitute doing business in the jurisdiction where the suit [was] brought.'").[9]

8    StemCells did not consent to being sued on all of the patents in its portfolio in Maryland simply

9    because it sued Neuralstem in Maryland in 2006 for infringement of the four Maryland patents –

10   the two actions, the closed Maryland action and the recent declaratory judgment action, do not

11   arise from the same transaction or occurrence.

12       As the Federal Circuit held in *Kearns*, it is fundamental that each patent raises an

13   independent and distinct cause of action that does not arise from the same transaction and

14   occurrence so as to subject a later patent to *res judicata* from prior suits on other patents.

15   *See Kearns v. General Motors Corp.*, 94 F.3d 1553, 1555-56 (Fed. Cir. 1996).  The Federal

16   Circuit reached this holding because proof of infringement or invalidity on one patent does not

17   prove infringement or invalidity of a different patent.  *Id*.  Each patent is a separate transaction or

18   occurrence.  *Id*.

19       Indeed, the main thrust of Neuralstem's Maryland declaratory judgment complaint is that

20   StemCells committed inequitable conduct during the prosecution of the '505 patent by failing to

21   cite art that was submitted in the reexamination of the four patents at issue in the closed Maryland

22   action.  (Kumamoto Decl., Exs. 4 and 18.)  But that affirmative defense is limited to the '505

23   patent and does not apply to the four Maryland patents stayed pending reexam in the closed

24

25   [9] StemCells is unaware of any Federal Circuit authority that addresses the fact pattern now before
     this Court.  However, the Federal Circuit has cited with approval the First Circuit's *Interpole*

26   decision.  *See Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd*., 292 F.3d 1363,
     1372 (Fed. Cir. 2002); *Rates Techn. Inc. v. Nortel Networks Corp*., 399 F.3d 1302, 1308 fn 5

27   (Fed. Cir. 2005) (citing with approval the First Circuit's holding that consent derived from
     another suit is limited to action arising from the same transactions).

28

Maryland action *because the Patent Office expressly considered the art in those patents'*
*reexaminations*. (*Id*.) *See Nilssen v. Osram Sylvania, Inc.*, 440 F. Supp. 2d 884, 902 (N.D. Ill.
2006), *aff'd*., 504 F.3d 1223 (Fed. Cir. 2007) (doctrine of infectious inequitable conduct not
applicable where only common parent application is shared). For this reason, too, the Maryland
and California actions did not arise from the same transaction or occurrence.[10] StemCells did not
consent to suit in Maryland.

Likewise, personal jurisdiction and venue does not exist against Maryland defendant
NeuroSpheres. Neuralstem's First Amended Complaint in the Maryland action alleges personal
jurisdiction over NeuroSpheres on the basis of StemCells' filing the closed Maryland action,
because NeuroSpheres has licensed the '505 and '418 patents exclusively to StemCells.
NeuroSpheres, however, is not a party to that closed Maryland action and NeuroSpheres cannot
be held to consent to personal jurisdiction based on the actions of StemCells. *See Redwing Shoe
Company v. Hockerson-Halberstadt*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("[T]he Supreme
Court has made clear that contacts resulting from 'the unilateral activity of another party or third
person' [licensee] are not attributable to a defendant."). Even if it could be so held, as discussed
above, StemCells never consented to jurisdiction on a separate suit based on separate patents.[11]

In sum, personal jurisdiction and venue is lacking in Maryland while it is established in
California.

---

[10] Moreover, StemCells' infringement claims on the California '505 and '418 patents did not exist
at the time the closed Maryland action was filed on the earlier Maryland patents because the '505
and the '418 patents had not yet issued. *See Kearns v. Chrysler Corp.,* 32 F.3d 1541, 1550 (Fed.
Cir. 1994) ("[T]he rights flowing from a patent exist only for the term of the patent . . .").

[11] StemCells' press release is also insufficient to create personal jurisdiction under Federal Circuit
law. *See Red Wing Shoe Co.*, 148 F.3d at 1360-61 ("Principles of fair play and substantial justice
afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to
jurisdiction in a foreign forum."). In *Red Wing*, three notice letters alleging infringement were
held to be insufficient to create personal jurisdiction over a patentee in the forum to which the
letters were sent, even though the letters were sufficient, in combination with other facts, to give
rise to a declaratory judgment action. *Id.*

**OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS, STAY OR TRANSFER
CASE NO. C-08-2364 CW**

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

### 2.    Only the California Court Has Had Proper Subject Matter Jurisdiction Over the Patent Claims Since Their Inception

#### a.    The original Maryland complaint failed to properly invoke subject matter jurisdiction on the '505 patent reflecting its improper and anticipatory nature

As with personal jurisdiction, Defendants' Maryland action raises significant concerns about subject matter jurisdiction that are not present in California.

As of May 7, when Defendants' filed the Maryland declaratory judgment action, there was not a "substantial controversy" between Neuralstem and StemCells concerning the '505 patent "of sufficient immediacy and reality" to warrant the filing for declaratory judgment.  *See MedImmune,* 127 S. Ct. at 771; *SanDisk Corp.*, 480 F.3d at 1380-81; *Monsanto Co. v. Syngenta Crop Protection, Inc.*, 2008 U.S. Dist. LEXIS 7236, *16-18 (E.D. Mo. January 31, 2008) (despite acknowledging *MedImmune* lowered the standard for filing declaratory judgment actions, the court still found no jurisdiction existed where there were no specific accusations that the declaratory judgment plaintiff was infringing patents).  Neuralstem's press release of May 7, 2008 admits that no such direct charge of infringement on the '505 patent had been made by StemCells prior to Neuralstem filing the Maryland action, nor is one pled in Neuralstem's amended complaint.  (Kumamoto Decl., Ex. 3.)

Faced with these admissions, Defendants attempt to justify subject matter jurisdiction in Maryland based on a press release statement by StemCells unrelated to the '505 patent and by alleging a pattern and practice of threatening and enforcing patents against parties.  Such allegations are insufficient to create declaratory judgment jurisdiction, however.  First, Defendants point to StemCells' April 15 press release stating that StemCells may move forward on the closed Maryland action.  Defendants' Br. at 7:3-11.  However, that press release plainly refers to the Maryland patents in the closed case and does not mention the '505 patent or any other patent outside the closed Maryland action.  S*ee Bridgelux, Inc. v. Cree, Inc*., 2007 U.S. Dist. LEXIS 53137 at *23-24 (N.D. Cal. July 9, 2007) (dismissing a declaratory action against two of six patents as the patentee had never sued or threatened to sue the plaintiff on those specific two patents, despite the existence of pending lawsuits between the parties on the other four

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

patents).

Next, Neuralstem attempts to buttress subject matter jurisdiction by pointing to three prior StemCells lawsuits, arguing a possible pattern of enforcement. However, these allegations do not justify Neuralstem's rush to the courthouse to unilaterally "take matters into its own hands." Defendants' Br. at 7:13-16. In point of fact, the 2004 and 2005 Maryland actions that Defendants identify in footnote 5 of their brief were (1) against the same third party (ReNeuron Limited., which is now a StemCells licensee), (2) never served, and (3) dismissed without prejudice. (Kumamoto Decl., Ex. 19.) The third action identified, the closed Maryland action, was brought against Neuralstem and voluntarily closed by StemCells to permit the Patent Office to perform its reexamination work. None of these prior lawsuits involved the '505 patent issued in 2008. Such dismissed and closed suits on different patents does not create a justiciable controversy over the '505 patent.[12]

Neuralstem's Maryland action represents an unwarranted attempt to extend declaratory judgment authority to wrest further control from StemCells, as patentee, over its property.[13] By contrast, the California action poses no such fundamental jurisdictional issues, and so this *Micron* factor also strongly favors the California action.

> **b.    Only the California Court has proper subject matter jurisdiction for the two state law causes of action**

The California action properly states California state law claims for trade libel and violation of California Business and Professions Code Section 17200. By contrast, the Maryland

---

[12] To the extent that Defendants rely on a pattern or practice of enforcement to justify the ill-conceived Maryland action, in line with *SanDisk*, *Micron* applied such an analysis only where the patentee had made direct threats of infringement on the at-issue patent, demanded a license on the at-issue patent and had sued the competitors on the same at-issue patent. *Micron*, 518 F.3d at 901. That is not the case here where the patents differ and Defendants admit there had not been a direct threat of infringement against Neuralstem or others on the '505 or the '418 patents. *See Document Sec. Sys., Inc. v. Adler Techs., Inc.*, 2008 U.S. Dist. LEXIS 15744 at *37-39 (W.D.N.Y. Feb. 29, 2008) (holding that patent infringement litigation against a third party did not warrant the issuance of a declaratory judgment of invalidity and unenforceability).

[13] Even if first-to-file is relevant to this Court's analysis, Defendants' amended complaint at Paragraph 14 admits that the Maryland declaratory relief claims on the '418 patent and the two state law claims were not justiciable until *after* StemCells filed its California action. (Kumamoto Decl., Ex. 18.) By Defendants' admission, this Court had subject matter over these claims first.

OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS, STAY OR TRANSFER
CASE NO. C-08-2364 CW

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1    action's declaratory state law claims raise serious subject matter issues.

2    The Maryland action's stated basis for subject matter jurisdiction of state law claims

3    Count VI (declaratory relief of non-liability for trade libel) and Count V (Declaratory judgment of

4    non-liability for unfair competition) rests on the Declaratory Judgment Act.  However, "the power

5    to issue declaratory judgments must lie in some independent basis of jurisdiction." *Cardtoons,*

6    *L.C. v. Major League Baseball Players Assoc.,* 95 F.3d 959, 964 (10th Cir. 1996) (citing *Skelly*

7    *Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950) and *Chandler v. O'Bryan,* 445 F.2d

8    1045, 1054 (10th Cir. 1971), *cert. denied,* 405 U.S. 964 (1972)); *Janakes v. United States Postal*

9    *Service*, 768 F.2d 1091, 1093 (9th Cir. 1985).

10    Neuralstem's Maryland action fails to allege such an independent basis.  "[I]n the absence

11    of any pleading that invokes diversity jurisdiction, the relevant basis is federal question

12    jurisdiction under 28 U.S.C. § 1331." *Cardtoons,* 95 F.3d at 964.  As these two causes of action

13    are both rooted in California state law, there is no federal question present.  The Maryland Court

14    therefore lacks subject matter jurisdiction over the claims as plead, and this factor weighs against

15    Defendants' motion.[14]

16        **3.    Consolidation of These New Actions With the Closed Maryland Action**
17        **Would Be Improper and Would Inequitably Delay the Trial and**
     **Confuse the Issues under Consideration**

18    Defendants argue that this California action should be transferred to Maryland so that it

19    can be consolidated with the Maryland actions to avoid piecemeal litigation.  Close scrutiny

20    shows the opposite will occur, and therefore this *Micron* factor also weighs in favor of California.

21    This pending California patent case should not be consolidated with the closed Maryland

22    patent case as that would be highly prejudicial by delaying StemCells' enforcement of its rights

23    under the '505 and '418 patents which are not under reexamination.  *See Bigg Wolf Disc. Video*

24    *Movie Sales, Inc. v. Montgomery County*, 256 F. Supp. 2d 385, 390 (D. Md. 2003) (denying

---

[14] Neuralstem does not and cannot plead diversity jurisdiction given that StemCells and Neuralstem are both Delaware corporations.  NeuroSpheres is a foreign corporation, but it is not a necessary party to the litigation given that it has exclusively licensed all its patent rights to StemCells, other than the right to receive royalties and milestones.  *See State Contr. & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1062 (Fed. Cir. 2003).

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

1  motion to consolidate on the grounds that there had been delays in one of the cases to be

2  consolidated); *Southwest Marine, Inc. v. Triple a Machine Shop, Inc.*, 720 F. Supp. 805, 807

3  (N.D. Cal. 1989) ("To determine whether to consolidate, a court weighs the interest of judicial

4  convenience against the potential for delay, confusion and prejudice caused by consolidation.");

5  *see generally* Fed. R. Civ. P. 42; *see* 9 Wright & Miller § 2382.

6       Perhaps recognizing the problems that would arise if the courts were to consolidate an

7  active case into a closed case, Defendants intimate that StemCells is now trying to wrongfully

8  delay opening the closed Maryland action.  Defendants' Br. at 10:5-7.  Not so.  StemCells

9  opposed Neuralstem's attempt to re-open prematurely the closed case, in part, because StemCells

10  bargained for benefits in the stipulated court order which will not accrue until the reexaminations

11  have been completed.  *See generally* Plaintiffs' Opposition to Defendant's Motion to Re-Open

12  Case and Lift Stay; (Kumamoto Decl., Ex. 17.)  Moreover, as explained in StemCells' opposition

13  to Neuralstem's motion, the case cannot be fully opened, and if opened, will proceed in piecemeal

14  fashion because certain of the patents are still in reexamination and their scope is not yet resolved.

15       Moreover, the California action and the closed Maryland action also present different

16  patents, distinct operative facts and legal issues, which would result in substantial confusion were

17  the cases consolidated.  For example, Neuralstem has stated publicly and in its motion to lift the

18  stay that it will raise the defense of intervening rights in the closed Maryland action.  (Kumamoto

19  Decl., Ex. 16.)  That issue is not present on the two California patents, where no reexamination

20  request is pending.  Also, under Neuralstem's alleged intervening rights argument, the two

21  actions likely involve different safe harbor issues under 35 U.S.C. § 271(e)(1).

22       In addition, central to Neuralstem's May 7, Maryland action is its affirmative defense of

23  inequitable conduct with respect to the '505 patent.  The four older Maryland patents under

24  reexamination, which merely share a common parent application with the newly issued '505

25  patent, cannot possibly be tainted by the alleged inequitable conduct under the doctrine of

26  infectious unenforceability.  *See*, *e.g.*, *Nilssen*, 440 F. Supp. 2d at 902 (holding doctrine only

27  applies to patents with "immediate and necessary relation;" sharing a common parent application

28  is not sufficient to establish relatedness).

1    For these reasons, any argument of consolidation is illusory because of the different

2    procedural postures of the cases, the different patents and the variability and differences in the

3    issues.  To the contrary, the risk of prejudicial delays and case confusion in Maryland are very

4    real.  This factor therefore weighs against Maryland under *Micron* because transfer will not

5    engender judicial efficiency, but the exact opposite.

6    **4.    The Convenience and Availability of Witnesses Favors the California
        Forum for These Actions**

7

8    There is no debate that this action can proceed conveniently in California.  Neuralstem has

9    only a limited presence in Maryland and is a virtual company that outsources all its substantive

10   functions, including research activities in California.  (Kumamoto Decl., Ex. 1.)  StemCells is not

11   a virtual company and is located in California where the corporate witnesses reside.  Both parties

12   have litigated in both forums already.  In fact, just a few months ago, Neuralstem filed suit in

13   California against another California entity.  (Kumamoto Decl., Ex. 20.)  Litigation in California

14   poses no hardship to Neuralstem.

15   In contrast, the convenience of the third-party witnesses weighs heavily in favor of the

16   California forum.  *See Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466

17   (D. Md. 2000) ("Perhaps the most important factor to be considered by a court in passing on a

18   motion to transfer is the convenience of the witnesses.").  Many of the key third-party witnesses

19   reside either in California or are significantly closer to California than Maryland.  Two of the

20   inventors of the California patents, for example, reside in Alberta, which is approximately 800

21   miles closer to this Court than the Maryland Court.  Moreover, as alleged in StemCells'

22   California action, Neuralstem's trade libel and violations of California Business and Professions

23   Code involve lost licenses with BrainCells, Inc. and NeuroGeneration, both California companies,

24   and perhaps others in California given its established biotechnology industry.  (Kumamoto Decl.,

25   Ex. 6 at ¶ 27.)  Further, many of the infringing activities arise out of work done in California at

26   UC San Diego and will necessarily involve witnesses located in Southern California. (Kumamoto

27   Decl., Ex. 7.)  While Defendants express concern that Neuralstem employees in Maryland would

28   have to appear twice (*i.e.*, in separate and distinct legal proceedings in different states),

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

**OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS, STAY OR TRANSFER
CASE NO. C-08-2364 CW**

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

1   Defendants' Br. at 11:4-8, Defendants motion fails to identify a single third party witness that is

2   in Maryland, and StemCells is unaware of any such witness.[15]

3       The location of the parties and the third-party witnesses clearly favors proceedings in

4   California.

5           **5.    The Interests of Justice Strongly Favor California as the Proper
            Forum for These Actions**

6

7       The *Micron* "interest of justice" factor also favors the California forum on several

8   grounds.  First, personal jurisdiction, venue and subject matter jurisdiction are established in the

9   California case permitting this Court to reach the merits.  In contrast, the Maryland action's

10  defects in personal jurisdiction, venue and subject matter jurisdiction would almost certainly

11  delay that action.

12      Second, Maryland lacks subject matter jurisdiction over the declaratory claims aimed at

13  the California state law causes of action, and those would likely be dismissed.  *See* Section

14  III.B.2.b, *supra*.  Thus, if the Maryland action proceeds on just the '418 and '505 patents, there

15  would likely be two suits, not one – one in California state court on the California causes of

16  action and one before the Maryland District Court – between the parties.  Maintaining the entire

17  California action lessens the burden on the judicial system as a whole.

18      Third, this Court has experience with the uniquely California claim for unfair competition

19  under Business & Profession Code Sec. 17200, and thus adjudication of the state law claims

20  would be more efficient in California.[16]

21      Against this, Defendants argue that this Court would be wasting judicial resources by

22  keeping this case, citing *London and Hull Maritime Ins. Co. Ltd. v. Eagle Pacific Ins. Co.*, 1996

23  WL 479013, *5 (N.D. Cal. August 14, 1996) (Wilken, J.).  Unlike in *London and Hull*, however,

24

25  [15] Neuralstem's convenience of the witness argument also presupposes consolidation and delay of
    this suit with the closed Maryland suit.  The convenience factors, however, do not consider
    witnesses in other lawsuits, for if they did, the convenience of witnesses in Neuralstem's
26  California lawsuit would be a factor favoring California.

27  [16] It bears emphasis that Defendants failed to challenge under Rule 12(b)(6) the adequacy of any
    of the California causes of action, and thus do not dispute that StemCells has properly pled such
    claims.
28

1    there is no immediate concern of inconsistent judgments between this Court and the Maryland

2    District Court.  The closed Maryland action involves completely different patents, and is not

3    presently pending.  While Defendants assert that there could be inconsistent rulings on its "safe

4    harbor" affirmative defense, this defense too has been stayed.  As this Court held in *London and*

5    *Hull*, "[t]he most important factor to consider is the interests of justice."  *Id.*  Justice requires that

6    a unified case proceed forward in a forum that poses no issues under Article III, the Due Process

7    Clause, the United States Code and to the witnesses and the parties.  That forum is California.

8        **C.    NEURALSTEM MAY NOT CLAIM WHATEVER RESIDUAL BENEFIT EXISTS UNDER
              THE FIRST-TO-FILE RULE BECAUSE THE ACTIONS DIFFERED IN PARTIES AND**

9             **SUBJECT MATTER, AND THE MARYLAND ACTION IS A BAD FAITH,
              ANTICIPATORY SUIT**

10

11         Defendants' motion rests on earlier decisions that did not reflect the new legal

12    environment under the 2007 *MedImmune* decision.  As a result, Defendants fail to give proper

13    weight to the convenience factors and the role of the Court to look to the "convenience and

14    suitability of competing forums."    *Micron*, 518 F.3d at 904.    Perhaps ironically, given

15    Defendants' failure to even cite the *Micron* case, Defendants' race to the courthouse in Maryland

16    is the exact situation that *Micron* warned against when it held that a rigid view of the first-to-file

17    rule "cannot be given undue weight because it is easily manipulated."  *Id.*

18         However, even assuming that a rigid application of the first-to-file rule should apply here

19    – it does not – Defendants' declaratory Maryland action is not entitled to claim first-to-file as to

20    the substance of the California action.  It is undisputed that StemCells filed first in California on:

21    (1) infringement claims of the '418 patent against all three Defendants; (2) infringement claims

22    on the '505 patent against two of the three Defendants; (3) violation of California trade libel laws;

23    and (4) violation of California Business and Professions Code Section 17200.  Each of these

24    causes of action invokes separate and distinct legal issues and in no way can be considered to

25

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

**OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS, STAY OR TRANSFER
CASE NO. C-08-2364 CW**

1    mirror Neuralstem's original Maryland action limited to just the '505 patent.[17]  *See Kearns*,

2    94 F.3d at 1555-56.  In fact, effectively conceding first-to-file, Neuralstem's amended Maryland

3    Complaint expressly acknowledges that the Maryland Court lacked subject matter jurisdiction

4    over the '418 patent and state law declaratory claims until **after** StemCells filed suit in

5    California.[18]

6         Defendants claim first-to-file only on the '505 patent between the corporate parties.  But

7    as discussed above, that claim is illegitimate as it lacked subject matter jurisdiction and personal

8    jurisdiction when filed.  Moreover, it was an anticipatory bad faith suit designed to harm

9    StemCells publicly, as demonstrated by Neuralstem presaging the suit with a press release

10   accusing StemCells of defrauding the U.S. Patent Office.  When Neuralstem issued this press

11   release and filed its Maryland action, it was aware that StemCells had spent considerable sums

12   developing and protecting its patent estate and that its IP portfolio and licensing opportunities

13   have been, as for any biotechnology company, of critical importance to StemCells' business,

14   employees and prospects.  And yet, when Neuralstem filed its suit, there was no "substantial

15   controversy" between the parties over either the '505 or '418 patents – indeed, there was no

16   controversy about this at all.  Compounding this illegitimacy, Neuralstem then attempted to game

17   the federal system by amending its complaint so that it could argue that its action mirrors

18   StemCells' first filed California suit – all the while avoiding the serious jurisdictional issues

---

[17] Defendants point to StemCells' pendant jurisdiction statement that there are "common issues" of fact to somehow argue for first-to-file on its later state claims.  Defendants lean too heavily on this language in the first amended complaint.  Plaintiffs have pled nothing more than that there exists a "loose factual connection" between the claims sufficient to establish supplemental jurisdiction.  *See Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995) ("A loose factual connection between the claims is generally sufficient" for supplemental jurisdiction.); *Allen v. County of Monterey,* 2007 U.S. Dist. LEXIS 80012, at *14-15 (N.D. Cal. Oct. 19, 2007) (granting supplemental jurisdiction where events underlying state claims and federal claims had no overlap but were merely "factually connected" in a loose way).  A loose factual connection on non-compulsory state claims is an insufficient basis to grant Defendants first-to-file status.  *See, e.g., Mann Design, Ltd. v. Bounce, Inc.*, 138 F. Supp. 2d 1174, 1178-79 (D. Minn. 2001).

[18] To this day, Defendants Garr and Johe have not sought to intervene in the Maryland action to assert Declaratory Relief Claims, highlighting once again a difference between the suits.  Defendants' motion references that this Court may lack personal jurisdiction over them.  While the claim is meritless, the simple answer to such rhetoric is that Defendants Garr and Johe have waived any right to contest personal jurisdiction by failing to move this Court under Rule 12(b)(2).  Fed. R. Civ. P 12(h).

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, STAY OR TRANSFER
CASE NO. C-08-2364 CW**

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1    underlying the flawed but calculated rush to the Maryland courthouse.

2         To put it bluntly, Neuralstem conjured up a threat of suit from the benign '505 patent

3    press release, filed a declaratory action against the '505 patent, amended that action to mirror

4    StemCells' action, and is now attempting to portray itself as having therefore filed first in

5    Maryland for all of the actions before this Court.  Defendants are not the first to file, and having

6    such anticipatory and bad faith actions dictate forum choice should not be permitted, especially in

7    this new legal environment post-*MedImmune*.[19]

8    **IV.    CONCLUSION**

9         Defendants' sole basis for requesting dismissal of this infringement lawsuit is the first-to-

10   file rule.    As detailed above, the convenience of the parties, jurisdiction over the parties,

11   inequities of consolidation, and other interests of justice all favor California.  Moreover, as to the

12   transfer under Section 1404(a), for the same reasons, the request should be denied as Defendants

13   have failed to establish that Maryland is a more convenient forum.  Defendants' request to

14   dismiss, stay or transfer this case should be denied so that the case may move forward

15   expeditiously to the merits.

16   DATED:    ____June 19, 2008_____          MCDERMOTT WILL & EMERY LLP

17

18                                       By:    _____*/s/ William G. Gaede, III*_____
                                                      William G. Gaede, III

19

20                                              Attorneys for *StemCells, Inc. and*
                                                *StemCells California, Inc.*

21

22

23

24   [19] Even before *Micron*, several circuits have recognized the danger of forum shopping caused by
     declaratory judgment actions.  *See Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir.
25   1937) (holding courts should decline jurisdiction over declaratory judgment actions filed "for the
     purpose of anticipating the trial of an issue in a court of co-ordinate jurisdiction"); *Citigroup Inc.
26   v. City Holding Co.*, 97 F. Supp. 2d 549, 557 (S.D.N.Y. 2000) ("An improper anticipatory filing
     is one made under the apparent threat of a presumed adversary filing the mirror image of that suit
27   in another court."); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978) ("The
     federal declaratory judgment is not a prize to the winner of a race to the courthouses.")

28