Clark S. Stone (SBN 202123) cstone@macpherson-kwok.com
Steven M. Levitan (SBN 148716) slevitan@macpherson-kwok.com
Inchan A. Kwon (SBN 247614) ikwon@macpherson-kwok.com
MACPHERSON KWOK CHEN & HEID LLP
2033 Gateway Place, Suite 400
San Jose, CA 95110
Telephone:  (408) 392-9250
Facsimile:  (408) 392-9262

Alan L. Barry (*pro hac vice*) abarry@bellboyd.com
Michael J. Abernathy (*pro hac vice*) mabernathy@bellboyd.com
Sanjay K. Murthy (SBN 212097) smurthy@bellboyd.com
Brian J. Arnold (*pro hac vice*) barnold@bellboyd.com
BELL, BOYD & LLOYD LLP
70 West Madison Street, Suite 3100
Chicago, Illinois  60602
Telephone:  (312) 372-1121
Facsimile:  (312) 827-8000

Attorneys for Defendants
NEURALSTEM, INC., KARL K. JOHE, and
I. RICHARD GARR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STEMCELLS, INC., a Delaware corporation, and STEMCELLS CALIFORNIA, INC., a California corporation,<br><br>        Plaintiffs,<br><br>      v.<br><br>NEURALSTEM, INC., a Delaware corporation, KARL K. JOHE, an individual, and I. RICHARD GARR, an individual,<br><br>        Defendants. | **Case No. C 08-02364 CW**<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS, STAY OR TRANSFER**<br><br>Judge:     Hon. Claudia Wilken<br>Date:      July 10, 2008<br>Time:      2:00 p.m.<br>Courtroom:  Courtroom 2, 4th Floor |

TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................................1

II.  THE NEURALSTEM MARYLAND ACTION IS THE FIRST-FILED ACTION............3

     A.   The First-To-File Rule Does Not Require Strict Identity .........................................3

     B.   The Micron Decision Does Nothing To Alter Ninth Circuit Precedent ..................4

III. EVEN IF THIS COURT DECIDES TO CONDUCT A BALANCE OF
     CONVENIENCE ANALYSIS, MARYLAND IS THE PROPER FORUM FOR
     THIS DISPUTE .......................................................................................................6

     A.   The StemCells Maryland Action And This Case Present Nearly Identical
          Issues.....................................................................................................................6

     B.   StemCells Is Subject To Personal Jurisdiction In Maryland ....................................7

     C.   StemCells' Assertion That Judge Williams Deferred To This Court Is False.........8

     D.   A Federal Court In Maryland Is Certainly Capable Of Applying California
          Law .......................................................................................................................9

IV.  IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE
     DISTRICT OF MARYLAND .................................................................................10

     A.   Two Actions Are Already Pending In The District Of Maryland. ........................10

     B.   The Interests Of Justice Overwhelmingly Favor Transfer To Maryland...............10

     C.   The Convenience Of The Parties Is Best Served By Transferring This Case .......11

V.   CONCLUSION.....................................................................................................12

TABLE OF AUTHORITIES

Page(s)

<u>CASES</u>

*British Telecomm. v. McDonnell Douglas Corp.*
No. C-93-0677, 1993 WL 149860 (N.D. Cal. May 3, 1993)..................................................3

*Cambridge Filter Corp. v. Int'l Filter Co., Inc.*
548 F. Supp. 1308 (D.Nev. 1982).......................................................................................10

*DataTreasury Corp. v. First Data Corp.*
243 F. Supp. 2d 591 (N.D. Tex. 2003)................................................................................11

*Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County*
542 F. Supp. 1317 (S.D.N.Y. 1982)......................................................................................5

*Fujitsu Ltd v. Nanya Tech. Corp.*
2007 WL 484789 (N.D. Cal. Feb. 9, 2007) ...............................................................1, 2, 4, 5

*General Contracting & Trading Co. v. Interpole, Inc.*
940 F.2d 20 (1st Cir. 1991)..................................................................................................7

*Intuitive Surgical, Inc., v. California Institute Of Tech.*
2007 WL 1150787 (N.D. Cal. April 18, 2007).......................................................................5

*Marini v. Samuel Cabot Inc. Employees' Stock Ownership Plan*
2006 WL 3147690 (N.D. Cal. Nov. 1, 2006) .........................................................................5

*Mattel, Inc. v. Greiner & Hausser GMBH*
354 F.3d 857, 863 (9th Cir. 2003) ........................................................................................7

*MedImmune, Inc. v. Genentech, Inc.*
127 S. Ct. 764 (2007)............................................................................................................5

*O'Bannon v. Friedman's, Inc.*
437 F. Supp. 2d 490 (D. Md. 2006)......................................................................................9

*Optinrealbig.com, L.L.C. v. Ironport Sys., Inc.*
323 F. Supp. 2d 1037 (N.D. Cal. 2004).................................................................................7

*Sanders v. Franklin*
25 F. Supp. 2d 855 (N.D. Ill. 1998)....................................................................................10

*SanDisk Corp. v. STMicroelectronics Inc.*
480 F.3d 1372 (Fed. Cir. 2007) ............................................................................................5

*Shire U.S., Inc. v. Johnson Matthey, Inc.,*
2008 WL 399333 (E.D. Pa. Feb. 14, 2008) ...........................................................................3

*Stash, Inc. v. Palmgard Int'l*
937 F. Supp. 531 (D. Md. 1996)...........................................................................................9

*Time Warner Cable, Inc., v. GPNE Corp.*
497 F. Supp. 2d 584 (D. Del. 2007)......................................................................................3

*Time Warner Cable, Inc., v. USA Video Technology Corp.*
    520 F. Supp. 2d 579 (D. Del. 2007).............................................................................................3

*Van Dusen v. Baraack*
    376 U.S. 612 (1964).............................................................................................................10

## STATUTES

28 U.S.C. § 1331.............................................................................................................................9

28 U.S.C. § 1367.............................................................................................................................9

28 U.S.C. § 1404...........................................................................................................................10

## RULES

Fed. R. Civ. P. 15.............................................................................................................................1

1

## I.    INTRODUCTION

2          StemCells blatantly ignores the controlling precedent of this Circuit and Court and presents

3    numerous arguments that this Court has previously rejected or simply cannot consider.  When

4    StemCells does address the merits it fares no better.  StemCells either mischaracterizes the facts or

5    concedes points necessary for this Court to dismiss, transfer or at the very least stay this action.

6          *First*, StemCells does not dispute that Neuralstem's declaratory judgment action was filed

7    before this case.  Instead, StemCells claims that its infringement lawsuit is first for "most of the

8    claims." (StemCells' Opposition ("Opp.") at 9 n.7, 20-21).  That is wrong under the law and facts.

9    In applying the first-to-file rule, the two cases need not be identical, only substantially similar.

10   Moreover, under Federal Rule of Civil Procedure 15, Neuralstem's amendment adding in the other

11   claims StemCells mentions "relates back" to its original complaint's filing date.  Indeed, although

12   it does not cite the decision, this Court has already considered—and rejected—the identical

13   arguments that StemCells presents.  *Fujitsu Ltd v. Nanya Tech. Corp.*, 2007 WL 484789, at *3

14   (N.D. Cal. Feb. 9, 2007) (Wilken, J.).[1]

15         *Second*, StemCells' repeatedly invokes the Federal Circuit's decision in *Micron* as if that

16   case magically changed the first-to-file analysis.  (Opp. at 8-11).  The Federal Circuit's decision in

17   *Micron* did no such thing.  In *Micron*, the Federal Circuit reversed the district court (which was the

18   first-filed court) for finding declaratory judgment jurisdiction lacking and deferring to a second-

19   filed infringement suit in Texas.  That is the exact opposite of what StemCells is asking this Court

20   to do here; StemCells is requesting that its second-filed infringement action be given priority.

21   Thus, *Micron* hardly supports StemCells' argument that this *second-filed* infringement action

22   should take priority over Neuralstem's *first-filed* declaratory judgment action.  If anything, an

23   entire reading of *Micron* confirms that Neuralstem's declaratory judgment action should proceed

24   and this action should be dismissed.  Moreover, the Federal Circuit in *Micron* certainly did not

25

26   [1]    StemCells' failure to cite this Court's authority is troubling since its counsel was well aware of
           *Fujitsu*—it was cited for many of the same propositions in Neuralstem's Opposition to
27         StemCells' Motion to Extend Time in the Neuralstem Maryland Action filed on June 4, 2008,
           and is even attached as an Exhibit to StemCells' Opposition. (*See* Declaration of Andrew
28         Kumamoto ("Kumamoto Decl."), Exhibit 11 at 5).

1    overrule Ninth Circuit precedent that arguments regarding an exception to the first-to-file rule

2    should be addressed to the court in the first-filed action.  Accordingly, this Court should not even

3    entertain many of StemCells' arguments about "bad faith" and "anticipatory suit."

4        *Third*, StemCells repeatedly (and improperly) requests that this Court resolve a number of

5    issues that are simply not before it.  For instance, StemCells claims declaratory judgment

6    jurisdiction was "lacking" when Neuralstem initiated its first-filed action on May 7, 2008.  (Opp. at

7    14).  But that issue can only be resolved by the court in Maryland.  Nothing in *Micron* suggests

8    otherwise.  StemCells even asserts that—despite filing three separate patent infringement lawsuits

9    in Maryland—neither it nor Neurospheres Holding, Ltd. (the alleged patent owner) are subject to

10   personal jurisdiction in that forum.  (Opp. at 11-12).  No authority exists for this Court to make a

11   personal jurisdiction determination for the District of Maryland.  In *Fujitsu* this Court refused to

12   entertain these very same arguments.[2]

13       *Finally*, even if this Court decides to entertain StemCells' "balance of convenience"

14   arguments, it still loses.  StemCells relies heavily upon its faulty assumption that this action

15   qualifies as the "first filed."  As discussed above, it does not.  StemCells also claims it would be

16   more convenient for it to resolve this dispute in California and that Maryland is apparently a

17   "deficient forum."  Yet Maryland is where ***StemCells chose*** to file suit against Neuralstem in 2006

18   and pursue its infringement claims.  Noticeably absent from its opposition is any explanation from

19   StemCells for its change of heart.  It is simply beyond the pale for StemCells to complain that

20   Maryland is a "deficient" forum or that Neuralstem engaged in "forum shopping" when it has been

21   StemCells' forum of choice since 2004.  Regardless, StemCells fails to adequately address three

22   critical points:  the inconvenience of duplicative litigation, the potential for conflicting judgments

23   on the same issues, and the waste of judicial resources.  For all of these reasons, Neuralstem's

24   motion should be granted.

25

26   [2]   *Fujitsu*, 2007 WL 484789 at *3 ("Likewise, the Court will not address whether the District of
      Guam is a proper venue ***or whether the Guam district court has personal jurisdiction over***
27    ***Fujitsu Limited and FMA.  As Defendants note, that is a determination to be made by the***
      ***Guam district court, not this Court***.") (emphasis added).
28

## II.    THE NEURALSTEM MARYLAND ACTION IS THE FIRST-FILED ACTION.

StemCells half-heartedly disputes that the Neuralstem Maryland Action should be considered the first-filed.[3]  (Opp. at 20-22.)  StemCells' entire argument rests upon two legally incorrect premises:  (1) that the first-to-file rule does not apply unless the same parties are involved and (2) that StemCells' infringement action is the first-filed because it has asserted "additional causes of action."  (*Id.*).  StemCells fails to cite *any* legal authority—not a single case—supporting either of these arguments.  (*Id.*)

### A.    The First-To-File Rule Does Not Require Strict Identity.

The first-to-file rule, especially in patent cases, turns on which court first obtains possession of the subject matter of the dispute, not the parties of the dispute.  *See Time Warner Cable, Inc., v. USA Video Techn. Corp.*, 520 F. Supp. 2d 579, 585 (D. Del. 2007) (applying the first-to-file rule to action involving the same subject matter, "not necessarily the same parties"); *Time Warner Cable, Inc., v. GPNE Corp.,* 497 F. Supp. 2d 584, 588-89 (D. Del. 2007) (same); *British Telecomm. v. McDonnell Douglas Corp.,* No. C-93-0677, 1993 WL 149860 at *4 (N.D. Cal. May 3, 1993) (Patel, J.) (recognizing no "blanket rule that there must be strict identity of parties for the first-to-file rule to apply").   Indeed, as another district court recently noted, courts have universally rejected StemCells' "strict identity" argument:

> *Regarding the instant question, courts within and outside this Circuit have found no requirement that the parties in the concurrent actions be the same in order for the first-to-file rule to apply.*

*Shire U.S., Inc. v. Johnson Matthey, Inc*., 2008 WL 399333, at *3 (E.D. Pa. Feb. 14, 2008) (rejecting argument that first-to-file rule in patent cases requires identical parties *citing* decisions of the Second, and Third Circuits and other district courts) (emphasis added).

Similarly misplaced is StemCells' argument that because it asserted one additional patent and related state law claims here, Neuralstem's declaratory judgment action is not entitled to claim

---

[3]    As in its opening brief, Neuralstem refers to Civil Action No. 06-1877 as the "StemCells Maryland Action" and Civil Action No. 08-cv-1173 as the "Neuralstem Maryland Action."

first-filed status.  This Court, however, rejected that very argument in *Fujitsu*:

> **It makes no difference that the Guam complaint contains additional causes of action and additional patents.** *See Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D.Cal.2006) (noting that two actions need not be identical, only "substantially similar").

*Fujitsu*, 2007 WL 484789, at *3.

Moreover, as StemCells concedes Neuralstem amended its complaint to seek declaratory judgment relief regarding the one additional patent and related state law claims.  (Opp. at 3).  As this Court explained in *Fujitsu*:

> Federal Rule of Civil Procedure 15 explains that an amended complaint "relates back" for purposes of the filing date, if "the claims or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

*Id.*

By StemCells' own admission its state law claims of trade libel and unfair competition "have common operative facts" to its infringement claims.  (Amended Complaint ¶ 2).  Thus, Neuralstem's Amended Complaint certainly meets Rule 15's standard.

Finally, this Court will look in vain for anything within *Micron* that changes any of the well-settled rules discussed above.  Accordingly, Neuralstem's declaratory judgment action is unquestionably the first-filed action.

**B.    The *Micron* Decision Does Nothing To Alter Ninth Circuit Precedent.**

StemCells hinges almost its entire brief on the mistaken assumption that the Federal Circuit's decision in *Micron* altered the manner in which district courts can decide issues concerning the first-to-file rule.  (Opp. at 8-11).  Even a cursory review of *Micron* demonstrates that StemCells is grossly overstating the significance of that decision.  Nevertheless, *Micron* certainly did not overrule established Ninth Circuit precedent which requires that any argument about an exception to the first-to-file rule must be decided by the first-filed court.  Indeed, this Court, based on Ninth Circuit precedent, has repeatedly held that arguments about exceptions to the

first-to-file rule can only be directed to the first filed court:

> Arguments that the first-to-file rule should not be applied, however, should be addressed to the court in the first-filed action. *Alltrade Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982).

*Fujitsu*, 2007 WL 484789, at *3 (N.D. Cal. Feb. 9, 2007) (Wilken, J.); *Intuitive Surgical, Inc., v. California Institute Of Tech.*, 2007 WL 1150787, at *3 (N.D. Cal. April 18, 2007) (Wilken, J.); *Marini v. Samuel Cabot Inc. Employees' Stock Ownership Plan,* 2006 WL 3147690, at *1 (N.D. Cal. Nov. 1, 2006) (Wilken, J.) (same).

The reasons for such a policy are apparent:  "[a]bsent such a rule, there exists the possibility of inconsistent rulings on discretionary matters as well as duplication of judicial effort."  *Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County*, 542 F. Supp. 1317, 1321 (S.D.N.Y. 1982).[4]  *No* authority—including *Micron*—mandates that two district courts must entertain and decide the same issues concurrently.  Indeed, that is exactly the sort of wasteful practice that applying the first-to-file rule prevents.

StemCells mischaracterizes the Supreme Court's *MedImmune* holding as effectively establishing a new, lower standard for declaratory judgment jurisdiction.  (Opp. at 9).  To the contrary, recognizing that the Federal Circuit had incorrectly imposed a heightened burden on potential declaratory judgment plaintiffs, the Supreme Court reaffirmed that the same standard courts had been applying for years in non-patent cases also applied in the patent context.  *See MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 772-75 (2007).  Likewise, the Federal Circuit in *SanDisk* noted that its revised standard was consistent with other courts in contexts unrelated to patent licensing, including copyright and trademark.  *SanDisk Corp. v. STMicroelectronics Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) ("Our holding is consistent with decisions of other courts in various cases unrelated to patent licensing.").  Thus, *MedImmune* and *SanDisk* did not alter the traditional rule that the court of the ***original*** filing, here the District Court of Maryland, should

---

[4]  *See also Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 556 n.4 (S.D.N.Y. 2000) ("Indeed, it is the court in which the first-filed action was brought that should decide whether an exception to the first-filed rule applies.").

1    determine whether it is the proper forum for the suit to proceed.

2        In light of the above, this Court should not consider StemCells' arguments regarding an

3    exception to the first-to-file rule concerning "bad faith" and "anticipatory suit."[5]

4  **III.  EVEN IF THIS COURT DECIDES TO CONDUCT A "BALANCE OF
5        CONVENIENCE" ANALYSIS, MARYLAND IS THE PROPER FORUM FOR THIS
        DISPUTE.**

6        In order to justify its decision to disagree with itself over the previous forum selection for

7    this dispute, StemCells now remarkably claims that:  (1) the StemCells Maryland case has nothing

8    to do with this dispute; (2) StemCells is not subject to personal jurisdiction in Maryland; (3) Judge

9    Williams agreed to defer to this Court; and (4) only a California court can decide StemCells' trade

10   libel and unfair competition claims.  All of these arguments are meritless.

11     **A.    The StemCells Maryland Action And This Case Present Nearly Identical
12          Issues.**

13       StemCells attempts to mislead this Court into believing that the StemCells Maryland case

14   and this case have nothing in common.  (Opp. at 17-18).  For example, StemCells claims—without

15   any citations—that the two cases present "distinct operative facts and legal issues" and "involve

16   different safe harbor issues under 35 U.S.C. § 271(e)(1)."  (Opp. at 17.)  The facts prove otherwise.

17       The Amended Complaint in this action does not actually identify any infringing conduct.

18   However, in its opposition, StemCells now points to Neuralstem's work with U.C. San Diego "as

19   the basis for [its] claims."  (Opp. at 5 n.3.)  Yet that is precisely the *same* conduct that StemCells

20   is asserting infringes its patents in the StemCells Maryland Action.

21       Illustrating the point is the discovery StemCells pursued in the StemCells Maryland Action

22   including at least the following:  (1) StemCells served a third-party subpoena on U.C. San Diego;

23   and (2) StemCells' 30(b)(6) Notice to Neuralstem has requested a witness to discuss ***"[t]he***

24

25   ---
     [5]    It is unclear how Neuralstem's filing of its declaratory judgment lawsuit can be considered in
26   "bad faith" or lacking a justiciable controversy as StemCells filed this lawsuit against
     Neuralstem that *same day*.  Presumably, in order to have a good faith basis to file suit,
27   StemCells had already performed its pre-suit investigation as to whether Neuralstem infringed
     the claims of the '505 and '480 patent.  If anything, StemCells' actions prove that Neuralstem
28   was correct that a justiciable controversy existed.

*entirety of Neuralstem's involvement with the University of California, San Diego concerning therapeutic and screening activity relating to neural stem cells.*"  (Murthy Decl., Exhibits G, H at 16)(emphasis added).

Moreover, as StemCells admits, "central to Neuralstem's May 7, Maryland action is its affirmative defense of inequitable conduct with respect to the '505 patent."  (Opp. at 17). StemCells conveniently ignores, however, that proof of its inequitable conduct also provides Neuralstem with an absolute defense to the state law trade libel claim predicated on Defendant Garr's statement accusing StemCells of inequitable conduct. *See Optinrealbig.com, L.L.C. v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037, 1048 (N.D. Cal. 2004) (Armstrong, J.) (recognizing that to prevail on a California trade libel claim, the accused statement must be false).  Based on the above, StemCells cannot seriously suggest that the StemCells Maryland Action and this case have "distinct operative facts."

**B.    StemCells Is Subject To Personal Jurisdiction In Maryland.**

StemCells' argument that it is not subject to personal jurisdiction in Maryland is flawed. (Opp. at 11-12).  StemCells has repeatedly availed itself of the court system in Maryland filing at least three separate lawsuits in 2004, 2005, and 2006 alleging infringement of patents from the same family as those at issue in this case.  *See* Civil Action Nos. 04-CV-03973, 05-CV-1125, and 06-CV-1877.  Accepting StemCells' argument that it cannot be sued in Maryland would lead to a truly unjust result as the First Circuit recognized in the very case StemCells relies upon:

> In the same vein, a ruling that Trastco did not submit to the court's jurisdiction in Suit No. 1 when it instituted Suit No. 2 would produce an unjust asymmetry, allowing a party (here, Trastco) to enjoy the full benefits of access to a state's courts *qua* plaintiff, while nonetheless retaining immunity from the courts' authority *qua* defendant in respect to claims asserted by the very party it was suing (here, Interpole).

*General Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 23 (1st Cir. 1991).[6]

---

[6]    The Ninth Circuit agrees with this approach.  *See Mattel, Inc. v. Greiner & Hausser GMBH*, 354 F.3d 857, 863, 867 (9th Cir. 2003) (reversing district court's dismissal for lack of personal jurisdiction where defendant "purposefully availed itself of the privilege of conducting activities" in the state by filing a prior lawsuit against the plaintiff "on the same subject matter").

Moreover, based on the fact that the alleged infringing conduct in the StemCells Maryland Action and this case are apparently the same, StemCells should not be heard to complain about continuing a lawsuit in the same forum *it previously selected*.[7]

### C.    StemCells' Assertion That Judge Williams Deferred To This Court Is False.

Equally unfounded is StemCells' claim that the court in Maryland agreed to "defer" ruling on these issues to this Court.    (Opp. at 9 n.7).    Neuralstem never requested that any of the Defendants' in the Neuralstem Maryland Action "waive service."    (Decl. Sanjay K. Murthy In Supp. Reply Mem. Mot. Dismiss ("Murthy Decl.") ¶ 2).    Nonetheless, on June 2, 2008, attorneys with McDermott, Will & Emery representing Neurospheres (and StemCells) unilaterally filed a "waiver of service" with the court in Maryland.  (Kumamoto Decl. Exhibit 10).    Later that same day, StemCells filed a motion for an extension of time until September 1, 2008 so that it could coordinate its response date based on Neurospheres' alleged "waiver." (Kumamoto Decl. Exhibit 9).    Neuralstem immediately filed an opposition to StemCells' motion and a motion to strike Neurospheres' waiver of service.  (Kumamoto Decl. Exhibit 11).

On June 4, 2008, Judge Williams conducted a telephonic hearing on the motion with counsel for both sides.  (Murthy Decl., ¶ 2).  Neuralstem advised Judge Williams that no waiver of service had been requested and that Neurospheres would be served within the next two weeks. (Murthy Decl. ¶ 2).    Based on this assurance, Judge Williams refused to grant StemCells a three-month extension of time.  (Murthy Decl. ¶ 2; Kumamoto Decl. Exhibit 12).    Instead, he granted StemCells until no later than July 15, 2008, a date by which service on Neurospheres would be perfected.  (Murthy Decl. ¶ 2). On June 12, 2008, Neurospheres was served and its Answer is due on July 2, 2008.  (Murthy Decl. Exhibit F).

During the telephonic hearing Judge Williams was adamant that he wanted the Maryland case to move forward promptly.  (Murthy Decl. ¶ 2).    Thus, StemCells' argument that Judge

---

[7]    StemCells also argues that the alleged patent owner Neurospheres Holding is not subject to personal jurisdiction.  (Opp. at 13).    However, earlier in its opposition, StemCells claims Neurospheres is not an essential party to this dispute.  (Opp. at 11 n.8).  Based on these inconsistent arguments, the fact that Neurospheres may or may not be subject to personal jurisdiction in Maryland should have no bearing on this Court's analysis.

1    Williams agreed to "defer" to this Court is false.[8]

2        **D.    A Federal Court In Maryland Is Certainly Capable Of Applying California**
3              **Law.**

4         StemCells makes the confusing argument that a district court in Maryland cannot resolve

5    its state law trade libel and unfair competition claims because there is allegedly no independent

6    basis for Neuralstem to assert a claim for declaratory relief on those claims.  (Opp. at 15-16).  In

7    asserting this proposition, StemCells completely ignores 28 U.S.C. § 1367's conferral of

8    supplemental jurisdiction to federal courts and instead relies solely on declaratory judgment cases

9    where the court lacked ***original*** jurisdiction.  Here, the Maryland court undisputedly has original

10   federal question jurisdiction under 28 U.S.C. § 1331 over Neuralstem's claims for declaratory

11   judgment of invalidity and non-infringement of StemCells' patents.  *See Stash, Inc. v. Palmgard*

12   *Int'l*, 937 F. Supp. 531, 533 (D. Md. 1996).  Consequently, the cases StemCells cites have no

13   bearing here.

14        According to Section 1367, "in any civil action of which the district courts have original

15   jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so

16   related to claims in the action within such original jurisdiction that they form part of the same case

17   or controversy under Article III of the United States Constitution."  While StemCells has invoked

18   Supplemental Jurisdiction under Section 1367 for purposes of asserting its state law trade libel and

19   unfair competition claims here, it apparently believes that the same cannot be done for

20   Neuralstem's declaratory judgment claims.  Contrary to StemCells' misinterpretation of the law,

21   however, supplemental jurisdiction indeed extends to declaratory judgment claims.  As the court

22   explained in *O'Bannon v. Friedman's, Inc.*, 437 F. Supp. 2d 490 (D. Md. 2006), § 1367 confers

23   supplemental jurisdiction over state law declaratory judgment claims sharing a "common nucleus

24   of operative fact" with the claim establishing the district court's original jurisdiction.  *Id.* at 492-93.

25   _____

26   [8]    If the Court has any doubts regarding Judge Williams' intent, Neuralstem respectfully requests
         that this Court contact Judge Williams directly.  Neuralstem will not speak for the court in
27       Maryland, but it is confident Judge Williams will not corroborate StemCells' version of
         events.  Neuralstem believes that StemCells' decision to present an argument to this Court that
28       its counsel knows to be false is a violation of Rule 11.

1  By invoking supplemental jurisdiction for its state law claims before this court, StemCells cannot

2  now dispute the "common nucleus of operative facts" between the patent and state law issues.

3  Thus, the court in Maryland has supplemental jurisdiction over these state law declaratory

4  judgment claims.

5  **IV.  IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE DISTRICT OF MARYLAND.**

6

7         StemCells has failed to offer any reasons why this case should not be transferred under 28

8  U.S.C. § 1404(a) to the District of Maryland, where an identical action is already pending and

9  where it can be consolidated with the StemCells Maryland Action to conserve judicial resources.

10  The fundamental rationale and function of Section 1404(a) are "to prevent waste of 'time, energy

11  and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience

12  and expense.'" *Van Dusen v. Baraack*, 376 U.S. 612, 616 (1964).[9]  All of those goals would be

13  served by transferring this case.

14       **A.    Two Actions Are Already Pending In The District Of Maryland.**

15         Under Section 1404(a), an action "might have been brought" in any judicial district in

16  which venue is proper.  *See Sanders v. Franklin*, 25 F. Supp. 2d 855, 857 (N.D. Ill. 1998).  Because

17  both the Neuralstem Maryland Action and StemCells Maryland Action involve the same parties,

18  the same group of patents, and *now by StemCells' own admission the same alleged infringing*

19  *activity*, venue is certainly proper in the District of Maryland.  (Opp. at 5 n.3).  Indeed, if there ever

20  was a case where transfer was warranted, this is it.

21       **B.    The Interests Of Justice Overwhelmingly Favor Transfer To Maryland.**

22         Judge Williams is familiar with the issues in this case, the parties, patent law, and the

23  technology described in the patents—he presided over the StemCells Maryland Action for over a

24  year before that case was stayed.  Moreover, StemCells has already obtained discovery in the

25  StemCells Maryland Action related to Neuralstem's work with U.C. San Diego.  (Murthy Decl.,

26  Exhibits G, H at 16).  A 30(b)(6) witness has already been requested to testify regarding all of

27
   _____

28  [9]    *See also Cambridge Filter Corp. v. Int'l Filter Co., Inc.*, 548 F. Supp. 1308, 1311 (D. Nev. 1982) ("The feasibility of consolidation is a significant factor in deciding a transfer motion.").

Neuralstem's activities with U.C. San Diego.  It would be a tremendous waste of resources to have the same witness and the same documents produced in a second action in a distant forum.

Moreover, allowing this case to proceed in this District would waste judicial resources in having two courts construe claim terms in this related family of patents, possibly leading to inconsistent rulings on claim construction, validity and infringement issues.  Indeed, there is a strong presumption to have related patents cases consolidated for exactly this reason:

> Having two different courts interpret the same patent claims would risk inconsistent claim construction rulings which, in turn, would promote uncertainty and impede the administration of justice. ***This untenable prospect favors resolving related patent cases in the same forum whenever possible.***

*DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 596 (N.D. Tex. 2003) (emphasis added).

Here, without a transfer, there could be inconsistent ruling on the "safe harbor" defense relating to Neuralstem's activities with U.C. San Diego (which are by StemCells' own admission at issue in both litigations) and different claim constructions for the same terms in the identical and related patents involved in this case and the StemCells Maryland Action.

**C.     The Convenience Of The Parties Is Best Served By Transferring This Case.**

Finally, StemCells does not dispute that this action and the Maryland Actions will require the testimony of identical witnesses on the issues of infringement and validity of the same patents.  Specifically, both actions will likely require the same witnesses from Neuralstem to testify about its stem cell line and clinical research activities and from StemCells to testify regarding the patents-in-suit and alleged damages from infringement.  All of Neuralstem's witnesses reside in Maryland, and will be deposed on the same issues in the Maryland Actions.[10]  Should both actions proceed, the same witnesses will be required to appear multiple times in separate courts testifying about the

---

[10]   StemCells confusing representations to this Court that Neuralstem is a "virtual company" (Br. at 4, 18) that "outsources all its substantive functions" are irreconcilable with its past actions. StemCells knows full-well that Neuralstem has developed its own patented technology related to the proliferation and growth of stem cells.  In fact, several years ago StemCells attempted to acquire Neuralstem.

1    same thing on opposite sides of the country.  Transferring this action to Maryland would allow this

2    case to be consolidated with the Maryland Actions, therefore greatly reducing the burden on these

3    witnesses.

4          Moreover, StemCells' concern that it will be prejudiced if this case is consolidated with the

5    StemCells Maryland Action because it is stayed is misplaced.  (Opp. at 16-17).  As StemCells

6    acknowledged, Neuralstem has already moved to re-open the StemCells Maryland Action.  (Opp. at

7    7).  Briefing is complete on that issue.  (*Id.* at 8).  Regardless, even if the StemCells Maryland

8    Action remains stayed, ***Neuralstem has not requested that the Neuralstem Maryland Action be***

9    ***consolidated and stayed with the StemCells Action***.  Neuralstem has only requested that the stay be

10   lifted, and, if it is, Neuralstem will move to consolidate these two admittedly related actions.

11   However, that does not mean that the Maryland court cannot proceed with this case.

12   **V.    CONCLUSION**

13         For the foregoing reasons, Defendants' motion to dismiss should be granted. In the

14   alternative, this action should be transferred to the District of Maryland or at the very least stayed.

15

16   Dated: June 26, 2008                    Respectfully submitted,

17                                           BELL, BOYD & LLOYD LLP

18                                           By: /s/ Sanjay K. Murthy
                                             Alan L. Barry (*pro hac vice*)
19                                           abarry@bellboyd.com
                                             Michael J. Abernathy (*pro hac vice*)
20                                           mabernathy@bellboyd.com
                                             Sanjay K. Murthy (SBN 212097)
21                                           smurthy@bellboyd.com
                                             Brian J. Arnold (*pro hac vice*)
22                                           barnold@bellboyd.com
                                             70 West Madison, Suite 3100
23                                           Chicago, Illinois 60602-4207
                                             (312) 372-1121
24                                           (312) 827-8000

25                                           Clark S. Stone (SBN 202123)
                                             cstone@macpherson-kwok.com
26                                           Steven M. Levitan (SBN 148716)
                                             slevitan@macpherson-kwok.com
27                                           Inchan A. Kwon (SBN 247614)
                                             ikwon@macpherson-kwok.com
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MACPHERSON KWOK CHEN & HEID LLP
2033 Gateway Place, Suite 400
San Jose, CA 95110
Telephone:  (408) 392-9250
Facsimile:  (408) 392-9262

Attorney for Defendants
NEURALSTEM, INC., KARL K. JOHE, and
I. RICHARD GARR

1  Clark S. Stone (SBN 202123) cstone@macpherson-kwok.com
   Steven M. Levitan (SBN 148716) slevitan@macpherson-kwok.com
2  Inchan A. Kwon (SBN 247614) ikwon@macpherson-kwok.com
   MACPHERSON KWOK CHEN & HEID LLP
3  2033 Gateway Place, Suite 400
   San Jose, CA 95110
4  Telephone:  (408) 392-9250
   Facsimile:  (408) 392-9262
5

6  Alan L. Barry (*pro hac vice*) abarry@bellboyd.com
   Michael J. Abernathy (*pro hac vice* ) mabernathy@bellboyd.com
7  Sanjay K. Murthy (SBN 212097) smurthy@bellboyd.com
   Brian J. Arnold (*pro hac vice*) barnold@bellboyd.com
8  BELL, BOYD & LLOYD LLP
   70 West Madison Street, Suite 3300
9  Chicago, Illinois  60602
   Telephone:  (312) 372-1121
10 Facsimile:  (312) 827-8000

11 Attorneys for Defendants
   NEURALSTEM, INC., KARL K. JOHE, and
12 I. RICHARD GARR

13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

                    OAKLAND DIVISION
16

17

18 | STEMCELLS, INC., a Delaware corporation, | Case No. C 08-02364 CW |
19 | and STEMCELLS CALIFORNIA, INC., a California corporation, | |
20 | Plaintiffs, | **DECLARATION OF SANJAY K. MURTHY IN SUPPORT OF DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS, STAY OR TRANSFER** |
21 | v. | |
22 | | |
23 | NEURALSTEM, INC., a Delaware corporation, KARL K. JOHE, an individual, and I. RICHARD GARR, an individual, | Judge:      Hon. Claudia Wilken |
24 | | Date:       July 10, 2008 |
25 | | Time:       2:00 p.m. |
   | Defendants. | Courtroom:  Courtroom 2, 4th Floor |
26

27

28 DECLARATION OF SANJAY K. MURTHY IN SUPPORT
   DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
   MOTION TO DISMISS, STAY OR TRANSFER
   CASE NO. C 08-02364 (CW)

I, Sanjay K. Murthy, declare:

1.    I am a partner with the law firm of Bell, Boyd & Lloyd LLP and I am counsel for defendants Neuralstem, Inc., Karl K. Johe and I. Richard Garr  (collectively "Defendants") in the above-captioned matter.  I submit this Declaration in support of Defendants' Reply Memorandum in Support of Their Motion to Dismiss, Stay or Transfer.

2.    On June 4, 2008, Alan L. Barry, Brian J. Arnold and myself participated in a telephonic hearing with Judge Alexander Williams, Jr., District Court Judge for the District of Maryland, regarding StemCells, Inc., StemCells California, Inc., (collectively, "StemCells") and Neurospheres Holding Ltd. ("Neurospheres") Inc.'s motion for an extension of time in which to answer the amended complaint in Case No. 08-CV-01173.  During the hearing, I informed Judge Williams that Neuralstem did not request waiver of service with respect to Neurospheres, a Canadian company, and had already undertaken the expense and time of proceeding with service in Canada.  I advised Judge Williams that Neurospheres will likely be served within the next two weeks, based on information given to me by the process server.  Based on this assurance, Judge Williams refused to grant StemCells a three-month extension of time.  During the telephone hearing, Judge Williams insisted he wanted the case to move forward promptly and declined to keep the case "frozen" until September, as StemCells and Neurospheres requested.  Instead, Judge Williams granted StemCells until no later than July 15, 2008, a date by which service on Neurospheres should be perfected plus twenty days (20) to answer.   On June 12, 2008, Neurospheres was served and its Answer is due on July 2, 2008.

3.    Attached hereto as Exhibit F is a true and correct copy of an Affidavit of Service for Complaint and Summons for Neurospheres Holding, Ltd. as filed in the United States District Court for the District of Maryland on June 23, 2008 (Civil Action No. 08-cv-1173), Docket No. 23.

4.    Attached hereto as Exhibit G is a true and correct copy of StemCells, Inc.'s Notice of Deposition and Document Subpoena served on the University of California, San Diego, on December 29, 2006, in Case No. 06-CV-1877 in the District Court of Maryland.

1    5.    Attached hereto as Exhibit H is a true and correct copy of StemCells, Inc.'s 30(b)(6)

2    Deposition Notice served on Neuralstem in Case No. 06-CV-1877 in the District Court of

3    Maryland.

4    I declare under penalty of perjury under the laws of the United States that the foregoing is

5    true and correct.

6    Executed this 26th day of June, 2008 at Chicago, Illinois.

7

8    /s/Sanjay K Murthy
     Sanjay K. Murthy

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT F

# Affidavit of Process Server

*Neuralstem, Inc.* vs *Stemcells, Inc. et al.* AW081173

PLAINTIFF/PETITIONER     DEFENDANT/RESPONDENT     CASE #

CLIFFORD S. NEIL

Being duly sworn, on my oath, I declare that I am a citizen of the United States, over the age of eighteen and not a party to this action.

**Service:** ☑ CANADA  I served *Neurospheres Holding, Ltd.*

NAME OF PERSON/ENTITY BEING SERVED

with the (documents) ☐ Subpoena with $_____ witness fee and mileage

☐ ☒ *Summons and Complaint*

by serving (NAME) *STACY GROENING, ADMINISTRATIVE ASSISTANT TO DR. SAMUEL WEISS AND AN INDIVIDUAL IN AUTHORITY TO ACCEPT SERVICE*

at ☐ Home _____

☒ Business *3330 HOSPITAL DRIVE NW CALGARY ALBERTA CANADA*

☐ on (DATE) *JUNE 10, 2008* at (TIME) *4:10 p.m.*

Thereafter copies of the documents were mailed by prepaid, first class mail on (DATE) _____

from (CITY) _____ (STATE) _____

## Manner of Service:
☐ By Personal Service.

☒ By leaving, during office hours, copies at the office of the person/entity being served, leaving same with the person apparently in charge thereof,

namely *STACY GROENING*

☐ By leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the general nature of the papers,

namely _____

☐ By posting copies in a conspicuous manner to the address of the person/entity being served.

## Non-Service:
After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address    ☐ Evading    ☐ Other: _____

☐ Address Does Not Exist    ☐ Service Cancelled by Litigant

☐ Moved, Left no Forwarding    ☐ Unable to Serve in a Timely Fashion

## Service Attempts:
Service was attempted on: ( ) _____ DATE TIME , ( ) _____ DATE TIME

( ) _____ DATE TIME , ( ) _____ DATE TIME , ( ) _____ DATE TIME

## Description:
| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ Male | ☒ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. | |
| ☒ Female | ☐ Black Skin | ☒ Brown Hair | ☐ Balding | ☒ 21-35 Yrs. | ☒ 5'0"-5'3" | ☐ 100-130 Lbs. | |
| | ☐ Yellow Skin | ☐ Blond Hair | | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. | |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Mustache | ☐ 51-65 Yrs. | ☐ 5'9"-6'0" | ☒ 161-200 Lbs. | |
| ☐ Glasses | ☐ Red Skin | ☐ Red Hair | ☐ Beard | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. | |

OTHER IDENTIFYING FEATURES: _____

State of Illinois     County of Cook

Subscribed and sworn to before me, a notary public, this *12* day of *JUNE*, 20 *08*

NOTARY PUBLIC

PATRICK P. ROMANIUK
A Notary Public/Commissioner for Oaths
in and for the Province of Alberta
My Appointment expires Dec. 31, 200 *8*

SERVED BY
LASALLE PROCESS SERVERS
CLIFFORD S. NEIL

CHARTER MEMBER NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS.

# EXHIBIT G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STEMCELLS, INC. and STEMCELLS CALIFORNIA, INC.,<br>3155 Porter Drive<br>Palo Alto, California  94304,<br><br>        Plaintiffs,<br><br>        vs.<br><br>NEURALSTEM, INC.,<br>387 Technology Drive<br>College Park, MD 20742,<br><br>        Defendant. | CIVIL ACTION NO.  AW 06 CV 1877<br><br>Judge Alexander Williams, Jr. |

## NOTICE OF DEPOSITION AND DOCUMENT SUBPOENA
## TO UNIVERSITY OF CALIFORNIA, SAN DIEGO

TO:    Sanjay K. Murthy, Esq.
        BELL, BOYD & LLOYD LLC
        70 West Madison
        Suite 3100
        Chicago, IL 60602
        Telephone:  312.372.1121
        Facsimile:  312.827.8000

PLEASE TAKE NOTICE that plaintiffs StemCells, Inc. and StemCells California, Inc. are serving a deposition and document subpoena pursuant to Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure to **University of California, San Diego.** Responsive documents will be produced on Monday, January 22, 2007.  The deposition will proceed on a date, location, and time that is mutually convenient to all parties. The deposition will be

stenographically recorded and may be videotaped. Neuralstem is invited to attend and cross-examine.

Also served with the subpoena is an Exhibit A, which sets forth the Instructions, Definitions, Document Requests and Deposition Subject Matter. A copy of Exhibit A is attached to this notice. A copy of the subpoena will be provided.

                                    Respectfully submitted,

                                    MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO,
                                    P.C.

                                    _____
                                    David Barmak
                                    DBarmak@mintz.com
                                    D. Md Bar # 06816
                                    701 Pennsylvania Avenue, NW
                                    Suite 900
                                    Washington, D.C. 20004
                                    Telephone: 202.434.7300
                                    Facsimile: 202.434.7400

                                    Attorneys for Plaintiff StemCells, Inc.

Of Counsel:

Dominic J. Picca
DJPicca@mintz.com
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
Chrysler Center
666 Third Avenue
New York, New York 10017
Telephone: 212.935.3000
Facsimile: 212.983.3115

Michael T. Renaud
MTRenaud@mintz.com
Paul J. Cronin
pcronin@mintz.com
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: 617.542.6000
Facsimile: 617.542.2241

Dated: December 29, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document was served to Sanjay K. Murthy, Esq. of Bell, Boyd & Lloyd LLC, 70 West Madison Street, Suite 3100, Chicago, Illinois 60602, attorney for Defendant Neuralstem, Inc., by electronic mail and first class mail on December 29, 2006.

_____
Paul J. Cronin

**EXHIBIT A TO SUBPOENA**

**INSTRUCTIONS**

1.      These instructions are intended to cover the following requests and the documents and/or things responsive thereto, all documents and/or things in your global charge and/or possession as well as those subject to your custody and/or control, whether in your possession, at the office of your attorneys, and/or at any other place and/or in the possession of any other person and/or entity subject to your control.

2.      If you object to a particular request, or to providing particular documents and/or things, you are requested to state the precise grounds upon which its objection(s) rest.

3.      With respect to any information, documents, communications and/or tangible items or things (collectively "documents") withheld from production, on any basis whatsoever, including without limitation, on the basis of the attorney-client privilege and/or the work product doctrine, you shall serve with the responses to the document requests herein a separate list of all such documents that states and identifies the following:

(a)      the date the documents bear, if any, and if different, the date on which the document was created;

(b)      the nature of the documents (*i.e.*, draft or final letter, memoranda, report etc.), the author(s) or originator(s) of the document, the title (if any), and the subject matter of the document;

(c)      the name, business address, and business affiliation of each and every person who drafted, wrote, produced, executed, signed, edited, reviewed, revised and/or otherwise participated in creating and/or altering the documents;

4

(d)     the name, business address and business affiliation of each and every person who received the document, or any copy thereof, or was permitted to learn of its contents;

(e)     the number of pages of the documents;

(f)     the name, business address and business affiliation of each and every person who has possession, custody and/or control of the document or any copy of the document;

(g)     in detail, the precise basis for the privilege claimed by the objection made with respect to the document.

4.     All documents are to be produced in or with their original file folders, file jackets, envelops, covers and the like.

5.     If you are aware that a document and/or thing (and/or a group of documents and/or things) once existed, but has been destroyed, you are requested to specifically identify such document and/or thing, when the document and/or thing was destroyed, the reason for such destruction, and the circumstances under which such destruction occurred.

6.     In the event you are able to produce only some of the documents and/or things responsive to these interrogatories within the allowed time, you are requested to produce the documents and/or things that can be produced, and to state the reason for its asserted inability to provide the remaining documents and/or things.   Once the remaining responsive documents and/or things are obtained and/or available, those documents and/or things should be produced promptly at a mutually agreeable time.

7.     If any document and/or thing is responsive to these requests but is no longer in your possession, custody and/or control, you shall identify that document and/or thing and state whether any such document and/or thing: (a) is missing and/or lost; (b) has been destroyed; (c) has been transferred voluntarily and/or involuntarily; and/or (d) has been otherwise disposed of,

and in each instance, shall explain in detail the circumstances surrounding any such disposition thereof.

8.     You shall provide an immediate supplemental response if any additional responsive documents, information and/or things are discovered, located, identified and/or obtained after it has completed its initial and/or any supplemental production of documents responsive to these requests.

## DEFINITIONS

1.     The term "you" or "your" as used herein, refers to and includes **University of California, San Diego** and its parents or predecessors, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and any and all persons and/or business entities acting and/or purporting to act for or on its behalf.

2.     The term "Neuralstem" as used herein, refers to the defendant, Neuralstem, Inc., and its parents or predecessors, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and any and all persons and/or business entities acting and/or purporting to act for or on its behalf. In addition, where you have entered into an agreement, contract or license with Neuralstem concerning neural stem cells, the term "you" or "your" also refers to and includes Neuralstem.

3.     The term "person" refers to any individual, corporation, proprietorship, association, joint venture, company, partnership or any legal or business entity, including governmental bodies and/or agencies.

4.     The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "documents" in Fed. R. Civ. P. 34(a) and include(s) the term "writing." Electronic mail is included within the definition of the term "document". The terms "writings", "recordings", and "photographs" are defined to be

6

synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Evid. 1001. A draft or non-identical copy is a separate document within the meaning of the term "document". Furthermore, the term "document" is used herein in its customary broad sense to include without limitation the following items, whether printed or reproduced by any process, or written or produced by hand, and whether or not claimed to be privileged or otherwise excludable from discovery, namely: notes, letters, correspondence, communications, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations, diaries, reports, laboratory and research reports and notebooks, engineering notebooks, charts, plans, drawings, photographs, minutes or recordings of meetings, including directors' meetings, reports or summaries of interviews, reports or summaries of investigations, opinions or reports of consultants, reports of patent searches, patent appraisals, opinions of counsel, agreements, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of documents, data compilations, electronic mail, electronically stored data, computer tapes or disks, computer printouts, computer directories, computer files and all material fixed in a tangible medium, including computers, of whatever kind, in your possession, custody and/or control.

6.      The terms "concerning," "relating," and "referring" as used herein, shall be interpreted broadly and includes the following meanings: relating to, referring to, describing, evidencing, constituting, containing, recording, discussing, mentioning, noting, memorializing, analyzing, commenting upon and/or pertaining to.

7.      The term "each" means "all, each and every."

8.      The term "every" means "all, each and every."

9.      The term "all" means "any and all."

10.     The term "any" means "any and all"

7

11.    The term "including" means "including but not limited to"

12.    The term "and" encompass both "and" and "or."

13.    The term "or" encompasses both "and" and "or."

14.    The term "communication" shall be interpreted broadly and means the transmittal of information by any means, which shall include, but not be limited to, correspondence, memoranda, notes, letters, and/or any record of any transmittal or exchange of information whether orally, in writing, electronically, in person, by telephone or otherwise, including any utterance to another person, whether in person, by telephone or otherwise, including voice-mail.

15.    The term "date" as used herein means the exact day, month and year, if ascertainable, or if not, the best approximation (including relationships to other events).

16.    The term "identify," when used in reference to:

    (a)    an individual means to state his or her full name, present or last known residence address, present or last known business address, and position or business affiliation;

    (b)    a business entity means to state its form, full name, address of its present or last principal place of business, and its principal line of business;

    (c)    a document means to state its date, author, recipients (including recipients of copies), type (i.e., letter, memorandum, book, telegram, chart, etc.), title (or identifying or descriptive code number, file number or label), a brief description of its subject matter, its present location, and the name of all persons having possession, custody or control of it; and

8

(d)    a communication means to state its date, the communicator, the

communicatee, the type of communication (i.e. conversation, telephone call,

letter, note, etc.) and a brief description of its subject matter.

## CATEGORIES OF REQUESTED DOCUMENTS

In accordance with Fed.R.Civ.P. 45, you are commanded to produce and permit inspection and copying of the following documents or objects at the place, date, and time set forth in the attached subpoena:

1.     All documents and things concerning your involvement (in any manner) (hereinafter "involvement") with Neuralstem concerning cell and gene therapy (hereinafter "therapeutic") and drug screening (which includes drug discovery) (hereinafter "screening") activity relating to neural stem cells.

2.     All documents and things concerning all therapeutic and screening activity relating to neural stem cells that relates to, arises out of and/or results from your involvement with Neuralstem.

3.     All documents and things concerning your communications with Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

4.     All documents and things you have received from Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

5.     All documents and things you have provided to Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

6.      All documents and things you have provided to the Food and Drug Administration ("FDA") or any other regulatory agency relating to your involvement with Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

7.      All documents and things relating to the regulatory process and/or the seeking of regulatory approval, from any regulatory agency, including the Food and Drug Administration ("FDA"), relating to your involvement with Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

8.      All documents and things concerning all communications with the Food and Drug Administration ("FDA") or any other regulatory agency relating to your involvement with Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

9.      All agreements, contracts, licenses and related documents between you and Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

10.     All documents and things concerning your financial relationship with Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

11.     All documents and things concerning all consideration, money, payment, remuneration and the like that you have received from Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

12.    All documents and things concerning consideration, money, payment, remuneration and the like that you have provided to Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

13.    All documents and things concerning all of your communications and/or Neuralstem's communications with a regulatory expert or regulatory consultant relating to your involvement with Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

14.    All documents and things concerning your involvement and/or Neuralstem's involvement with any regulatory expert or regulatory consultant relating to your involvement with Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

15.    All documents concerning all studies conducted by you and/or by Neuralstem (or by any third party acting on your behalf) concerning the submission of documents or information to the Food and Drug Administration or any other regulatory agency for the purposes of obtaining approval of any therapeutic and screening activity relating to your involvement with Neuralstem concerning neural stem cells.

## DEPOSITION SUBJECT MATTER

In accordance with Fed.R.Civ.P. 30(b)(6) and 45(a), you shall identify, designate and produce for deposition one or more officers, directors, managing agents or other person(s) most knowledgeable ("corporate witness") to testify on its behalf regarding the subject matter of the following categories:

1.     Your involvement (in any manner) (hereinafter "involvement") with Neuralstem concerning cell and gene therapy (hereinafter "therapeutic") and drug screening (which includes drug discovery) (hereinafter "screening") activity relating to neural stem cells.

2.     The identity of each and every therapeutic and screening activity relating to neural stem cells that relates to, arises out of and/or results from your involvement with Neuralstem.

3.     Your communications with Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

4.     All documents you have received from Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

5.     All documents you have provided to Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

13

6.      All documents and things you have provided to the Food and Drug Administration ("FDA") or any other regulatory agency relating to your involvement with Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

7.      All activities, including all documents and things, relating to the regulatory process and/or the seeking of regulatory approval from any regulatory agency, including the Food and Drug Administration ("FDA"), relating to your involvement with Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

8.      All communications with the Food and Drug Administration ("FDA") or any other regulatory agency relating to your involvement with Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

9.      All agreements, contracts, licenses and related documents between you and Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

10.     Your financial relationship with Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

11.     All consideration, money, payment, remuneration and the like that you have received from Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

14

12.     All consideration, money, payment, remuneration and the like that you have provided to Neuralstem concerning therapeutic and screening activity relating to neural stem cells.

13.     All of your communications and/or Neuralstem's communications with a regulatory expert or regulatory consultant relating to your involvement with Neuralstem concerning therapeutic and screening activity relating to neural stem cells, and all documents and things relating thereto.

14.     Your involvement and/or Neuralstem's involvement with any regulatory expert or regulatory consultant relating to your involvement with Neuralstem concerning therapeutic and screening activity relating to neural stem cells, and all documents and things relating thereto.

15.     All studies conducted by you and/or by Neuralstem (or by any third party acting on your behalf) concerning the submission of documents or information to the Food and Drug Administration or any other regulatory agency for the purposes of obtaining approval of any therapeutic and screening activity relating to your involvement with Neuralstem concerning neural stem cells, and all documents and things relating thereto.

# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| STEMCELLS, INC. and STEMCELLS CALIFORNIA, INC., 3155 Porter Drive Palo Alto, California 94304,  ) ) ) ) ) ) | |
| Plaintiffs,  ) ) | CIVIL ACTION NO.  AW 06 CV 1877 |
| vs.  ) ) | Judge Alexander Williams, Jr. |
| NEURALSTEM, INC., 387 Technology Drive College Park, MD 20742,  ) ) ) ) ) | |
| Defendant.  ) ) ) ) | |

## NOTICE OF DEPOSITION OF NEURALSTEM, INC.

TO:    Sanjay K. Murthy, Esq.
        BELL, BOYD & LLOYD LLC
        70 West Madison
        Suite 3100
        Chicago, IL 60602
        Telephone:  312.372.1121
        Facsimile:  312.827.8000

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, plaintiffs StemCells, Inc. and StemCells California, Inc. will take the deposition of

Neuralstem, Inc. ("Neuralstem" or "Defendant") on Thursday, January 25, 2007, beginning at

9:00 a.m. and continuing from day-to-day until completed.  The deposition will proceed at the

offices of Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C. 701 Pennsylvania Avenue, NW,

Suite 900, Washington, D.C. 20004.  The deposition will be stenographically recorded and may

be videotaped.  Neuralstem is invited to attend and cross-examine.

Neuralstem shall identify and designate one or more officers, directors, managing agents or other knowledgeable person(s) to testify on its behalf regarding the subject matter identified in Attachment B. The instructions and definitions identified in Attachment A govern the categories identified in Attachment B.

Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.,

David Barmak
DBarmak@mintz.com
D. Md Bar # 06816
701 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20004
Telephone: 202.434.7300
Facsimile: 202.434.7400

Attorneys for Plaintiff StemCells, Inc.

Of Counsel:

Dominic J. Picca
DJPicca@mintz.com
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
Chrysler Center
666 Third Avenue
New York, New York 10017
Telephone: 212.935.3000
Facsimile: 212.983.3115

Michael T. Renaud
MTRenaud@mintz.com
Paul J. Cronin
pcronin@mintz.com
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone: 617.542.6000
Facsimile: 617.542.2241

2

Dated:  December 28, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document was served to Sanjay K. Murthy, Esq. of Bell, Boyd & Lloyd LLC, 70 West Madison Street, Suite 3100, Chicago, Illinois 60602, attorney for Defendant Neuralstem, Inc., by electronic mail, facsimile and first class mail on December 28, 2006.

_____

Paul J. Cronin

# ATTACHMENT A

## INSTRUCTIONS

1.     These instructions are intended to cover the following categories and the documents and/or things responsive thereto, all documents and/or things in Neuralstem's global charge and/or possession as well as those subject to its custody and/or control, whether in its possession, at the office of its attorneys, and/or at any other place and/or in the possession of any other person and/or entity subject to defendant's control.

2.     If Neuralstem objects to a particular category, or to providing particular documents or information, Neuralstem is requested to state the precise grounds upon which its objection(s) rest.

3.     With respect to any information, documents, communications and/or tangible items or things (collectively "documents") withheld from StemCells, on any basis whatsoever, including without limitation, on the basis of the attorney-client privilege and/or the work product doctrine, Neuralstem shall serve with the responses to the document requests herein a separate list of all such documents that states and identifies the following:

        (a)     the date the documents bear, if any, and if different, the date on which the document was created;

        (b)     the nature of the documents (*i.e.*, draft or final letter, memoranda, report etc.), the author(s) or originator(s) of the document, the title (if any), and the subject matter of the document;

        (c)     the name, business address, and business affiliation of each and every person who drafted, wrote, produced, executed, signed, edited, reviewed, revised and/or otherwise participated in creating and/or altering the documents;

4

(d)    the name, business address and business affiliation of each and every

person who received the document, or any copy thereof, or was permitted to learn of its contents;

(e)    the number of pages of the documents;

(f)    the name, business address and business affiliation of each and every

person who has possession, custody and/or control of the document or any copy of the document;

(g)    in detail, the precise basis for the privilege claimed by the objection made

with respect to the document.

4.    All documents are to be produced in or with their original file folders, file jackets,

envelops, covers and the like.

5.    If Neuralstem is aware that a document and/or thing (and/or a group of documents

and/or things) once existed, but has been destroyed, Neuralstem is requested to specifically

identify such document and/or thing, when the document and/or thing was destroyed, the reason

for such destruction, and the circumstances under which such destruction occurred.

6.    In the event Neuralstem is able to produce only some of the documents and/or

things responsive to these requests within the allowed time, Neuralstem is requested to produce

the documents and/or things that can be produced, and to state the reason for its asserted inability

to provide the remaining documents and/or things.  Once the remaining responsive documents

and/or things are obtained and/or available, those documents and/or things should be produced

promptly at a mutually agreeable time.

7.    If any document and/or thing is responsive to these requests but is no longer in

Neuralstem's possession, custody and/or control, Neuralstem shall identify that document and/or

thing and state whether any such document and/or thing: (a) is missing and/or lost; (b) has been

destroyed; (c) has been transferred voluntarily and/or involuntarily; and/or (d) has been

otherwise disposed of, and in each instance, shall explain in detail the circumstances surrounding any such disposition thereof.

8.    Neuralstem shall provide an immediate supplemental response if any additional responsive documents, information and/or things are discovered, located, identified and/or obtained after it has completed its initial and/or any supplemental production of documents responsive to these interrogatories.

## DEFINITIONS

1.    The term "StemCells" as used herein, refers to and includes plaintiffs StemCells, Inc. and/or StemCells California, Inc. and their parents or predecessors, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and any and all persons and/or business entities acting and/or purporting to act for or on their behalf.

2.    The term "Neuralstem" as used herein, refers to the defendant, Neuralstem, Inc., and its parents or predecessors, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and any and all persons and/or business entities acting and/or purporting to act for or on its behalf. In addition, where Neuralstem has entered into an agreement, contract or license with a third party concerning neural stem cells, the term "Neuralstem" also refers to and includes the third party.

3.    The term "third party" means any person, association, entity, strategic partner, "outsourced model" source, regulatory agency or university and includes at least the following: the Food and Drug Administration ("FDA"), Biomedical Research Models, Inc. ("BRM"), Dr. Martin Marsala, the University of California, Dr. Paul Reir, the University of Florida, Dr. Tim Collier, Rush University Medical Center, Dr. James Hickman, the University of Central Florida, United States Department of Defense ("DOD"), Gene Logic, Charles River Laboratories, A-T Children's Project, High Med Technologies, Inc., "others" (for "others," *see* the October 13,

2006 DECLARATION OF KARL JOHE PH.D. IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT at paragraph 34) and all individuals, entities and/or universities identified by Neuralstem in its response to StemCells' Interrogatory No. 1.

4.     The term "person" refers to any individual, corporation, proprietorship, association, joint venture, company, partnership or any legal or business entity, including governmental bodies and/or agencies.

5.     The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the usage of the term "documents" in Fed. R. Civ. P. 34(a) and include(s) the term "writing." Electronic mail is included within the definition of the term "document". The terms "writings", "recordings", and "photographs" are defined to be synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Evid. 1001. A draft or non-identical copy is a separate document within the meaning of the term "document". Furthermore, the term "document" is used herein in its customary broad sense to include without limitation the following items, whether printed or reproduced by any process, or written or produced by hand, and whether or not claimed to be privileged or otherwise excludable from discovery, namely: notes, letters, correspondence, communications, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations, diaries, reports, laboratory and research reports and notebooks, engineering notebooks, charts, plans, drawings, photographs, minutes or recordings of meetings, including directors' meetings, reports or summaries of interviews, reports or summaries of investigations, opinions or reports of consultants, reports of patent searches, patent appraisals, opinions of counsel, agreements, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of

7

documents, data compilations, electronic mail, electronically stored data, computer tapes or disks, computer printouts, computer directories, computer files and all material fixed in a tangible medium, including computers, of whatever kind known to or in the possession, custody and/or control of Neuralstem.

6.    The term "concerning," as used herein, shall be interpreted broadly and includes the following meanings: relating to, referring to, describing, evidencing, constituting, containing, recording, discussing, mentioning, noting, memorializing, analyzing, commenting upon and/or pertaining to.

7.    The term "each" means "all, each and every."

8.    The term "every" means "all, each and every."

9.    The term "all" means "any and all."

10.    The term "any" means "any and all"

11.    The term "including" means "including but not limited to"

12.    The term "and" encompass both "and" and "or."

13.    The term "or" encompasses both "and" and "or."

14.    The term "communication" shall be interpreted broadly and means the transmittal of information by any means, which shall include, but not be limited to, correspondence, memoranda, notes, letters, and/or any record of any transmittal or exchange of information whether orally, in writing, electronically, in person, by telephone or otherwise, including any utterance to another person, whether in person, by telephone or otherwise, including voice-mail.

15.    The term "date" as used herein means the exact day, month and year, if ascertainable, or if not, the best approximation (including relationships to other events).

16.    The term "identify," when used in reference to:

8

(a)    an individual means to state his or her full name, present or last known residence address, present or last known business address, and position or business affiliation;

(b)    a business entity means to state its form, full name, address of its present or last principal place of business, and its principal line of business;

(c)    a document means to state its date, author, recipients (including recipients of copies), type (i.e., letter, memorandum, book, telegram, chart, etc.), title (or identifying or descriptive code number, file number or label), a brief description of its subject matter, its present location, and the name of all persons having possession, custody or control of it; and

(d)    a communication means to state its date, the communicator, the communicatee, the type of communication (i.e. conversation, telephone call, letter, note, etc.) and a brief description of its subject matter.

17.    The term/phrase "state the factual basis" for a claim, ground, allegation or contention, and terms/phrases to that effect, mean describe every fact, statistic, inference, supposition, estimate, consideration, conclusion, study and/or analysis known to Neuralstem which relates to the claim, allegation or contention, or which defendant believes to be evidence of the truth or accuracy of the claim, ground, allegation or contention, and to identify all documents relating thereto.

**ATTACHMENT B**

**DEPOSITION SUBJECT MATTER**

In accordance with Fed.R.Civ.P. 30(b)(6), Neuralstem shall identify, designate and produce for deposition one or more officers, directors, managing agents or other person(s) most knowledgeable ("corporate witness") to testify on its behalf regarding the subject matter of the following categories:

1.    The identity of each and every cell and gene therapy (hereinafter "therapeutic") and drug screening (which includes drug discovery) (hereinafter "screening") activity of Neuralstem relating to neural stem cells.

2.    For each and every therapeutic and screening activity identified above in response to Subject Matter Category Number 1, the identity and description of each and every stage of its development from its origin to its present state of being, including for example all specifications used, all cells used, the selection and identification criteria for such cells, all materials used, all compounds used, all culture media used (suspension and inherent), all research tools used, all screening methods used, all licenses obtained, all patented products and methods used, all laboratories used, all outsourcing used, all strategic partners used, all pre-clinical testing performed, all clinical trials performed, all product testing performed, all *in vitro* and *in vivo* testing performed, all mammalian testing performed, all licensing agreements entered into, all material transfer agreements used, and all marketing, sales and licensing attempts (successful or otherwise) for any purpose.

3.    For each and every therapeutic and screening activity identified above in response to Subject Matter Category Number 1, the identity of the activity or activities that Neuralstem contends to be exempt from infringement pursuant to 35 U.S.C. § 271(e)(1).

4.    For each and every therapeutic and screening activity identified above in response to Subject Category No. 1, the factual basis for Neuralstem's contention that such activity or activities are exempt from infringement pursuant to 35 U.S.C. § 271(e)(1).

5.    Neuralstem's document retention policy from 1998 to the present.

6.    The identity, form, location and retention of all documents in Neuralstem's possession, custody and control concerning each and every therapeutic and screening activity of Neuralstem relating to neural stem cells.

7.    All documents and information submitted by Neuralstem (or on behalf of Neuralstem by any third party) to the Food and Drug Administration or any other regulatory agency concerning each and every therapeutic and screening activity of Neuralstem relating to neural stem cells.

8.    All communications between Neuralstem (or any third party acting on behalf of Neuralstem) and the Food and Drug Administration or any other regulatory agency concerning each and every therapeutic and screening activity of Neuralstem relating to neural stem cells.

9.    All documents submitted by Neuralstem (or by any third party acting on behalf of Neuralstem) to any regulatory expert or regulatory consultant concerning each and every therapeutic and screening activity of Neuralstem relating to neural stem cells.

10.    All documents received by Neuralstem (or by any third party acting on behalf of Neuralstem) from any regulatory expert or regulatory consultant concerning each and every therapeutic and screening activity of Neuralstem relating to neural stem cells.

11.    All communications between Neuralstem (or any third party acting on behalf Neuralstem) and any regulatory expert or regulatory consultant concerning each and every therapeutic and screening activity of Neuralstem relating to neural stem cells.

11

12.    All documents concerning all studies conducted by Neuralstem (or by any third party acting on behalf of Neuralstem) concerning the submission of documents or information to the Food and Drug Administration or any other regulatory agency for the purposes of obtaining approval of each and every therapeutic and screening activity of Neuralstem relating to neural stem cells.

13.    All communications concerning all studies conducted by Neuralstem (or by any third party acting on behalf of Neuralstem) concerning the submission of documents or information to the Food and Drug Administration or any other regulatory agency for the purposes of obtaining approval of each and every therapeutic and screening activity of Neuralstem relating to neural stem cells.

14.    All documents received by Neuralstem (or by any third party acting on behalf of Neuralstem) from any regulatory expert or regulatory consultant concerning each and every therapeutic and screening activity of Neuralstem relating to neural stem cells.

15.    All communications between Neuralstem (or any third party acting on behalf of Neuralstem) and any regulatory expert or regulatory consultant concerning each and every therapeutic and screening activity of Neuralstem relating to neural stem cells.

16.    All documents submitted by Neuralstem (or by any third party acting on behalf of Neuralstem) to any third party concerning each and every therapeutic and screening activity relating to neural stem cells.

17.    All documents received by Neuralstem (or by any third party acting on behalf of Neuralstem) from any third party concerning each and every therapeutic and screening activity of Neuralstem relating to neural stem cells.

18.     All communications both internal to Neuralstem and external to Neuralstem (between Neuralstem and third parties) concerning therapeutic and screening activities relating to neural stem cells.

19.     All documents submitted by Neuralstem (or by any third party acting on behalf of Neuralstem) to the Food and Drug Administration or any other regulatory agency concerning neural stem cells.

20.     All communications between Neuralstem (or any third party acting on behalf of Neuralstem) and the Food and Drug Administration or any other regulatory agency concerning neural stem cells.

21.     All documents submitted by Neuralstem (or by any third party acting on behalf of Neuralstem) to any regulatory expert or regulatory consultant concerning neural stem cells.

22.     All documents received by Neuralstem (or by any third party acting on behalf of Neuralstem) from any regulatory expert or regulatory consultant concerning neural stem cells.

23.     All communications between Neuralstem (or any third party acting on behalf of Neuralstem) and any regulatory expert or regulatory consultant concerning neural stem cells.

24.     All documents concerning all studies conducted by Neuralstem (or by any third party acting on behalf of Neuralstem) concerning the submission of documents or information to the Food and Drug Administration or any other regulatory agency for the purposes of obtaining approval of any activity of Neuralstem relating to neural stem cells.

25.     All communications concerning all studies conducted by Neuralstem (or by any third party acting on behalf of Neuralstem) concerning the submission of documents or information to the Food and Drug Administration or any other regulatory agency for the purposes of obtaining approval of any activity of Neuralstem relating to neural stem cells.

13

26.     All documents received by Neuralstem (or by any third party acting on behalf of Neuralstem) from any regulatory expert or regulatory consultant concerning neural stem cells.

27.     All communications between Neuralstem (or any third party acting on behalf of Neuralstem) and any regulatory expert or regulatory consultant concerning neural stem cells.

28.     Any involvement by Neuralstem (or by any third party acting on behalf of Neuralstem) with therapeutic and screening activities relating to neural stem cells.

29.     All of the information requested in PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT (Nos. 1-5), which includes Neuralstem's answers to PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT (Nos. 1-5) as set forth in DEFENDANT'S ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES (Nos. 1-5).

30.     All of the documents and information requested in PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT (Nos. 1-7), which includes Neuralstem's answers to StemCells' document requests as set forth in DEFENDANT'S ANSWERS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS (Nos. 1-7).

31.     All of the documents produced to StemCells by Neuralstem to date.

32.     All activities and matters referred to in the October 13, 2006 DECLARATION OF KARL JOHE PH.D. IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT.

33.     All activities and matters referred to in the October 13, 2006 MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT.

34.    All agreements, contracts, licenses and related documents between Neuralstem and all third parties concerning neural stem cells and any communications relating thereto.

35.    All business plans and related documents concerning neural stem cells and any communications relating thereto.

36.    The source, terms and amount of any royalty, remuneration, payment or income that Neuralstem has received concerning neural stem cells for any reason and all communications and documents relating thereto.

37.    The entirety of Neuralstem's involvement with The National Institute of Mental Health concerning therapeutic and screening activity relating to neural stem cells.

38.    The entirety of Neuralstem's involvement with High Med Technologies, Inc. concerning therapeutic and screening activity relating to neural stem cells.

39.    The entirety of Neuralstem's involvement with Biomedical Research Models, Inc. concerning therapeutic and screening activity relating to neural stem cells.

40.    The entirety of Neuralstem's involvement with A-T Children's Project concerning therapeutic and screening activity relating to neural stem cells.

41.    The entirety of Neuralstem's involvement with the Institute of Animal Physiology and Genetics, Czech Academy of Sciences concerning therapeutic and screening activity relating to neural stem cells.

42.    The entirety of Neuralstem's involvement with Rush Presbyterian St. Luke's Medical Center concerning therapeutic and screening activity relating to neural stem cells.

43.    The entirety of Neuralstem's involvement with Viacell, Inc. concerning therapeutic and screening activity relating to neural stem cells.

15

44.     The entirety of Neuralstem's involvement with the University of California, San Diego concerning therapeutic and screening activity relating to neural stem cells.

45.     The entirety of Neuralstem's involvement with Wyeth-Research concerning therapeutic and screening activity relating to neural stem cells.

46.     The entirety of Neuralstem's involvement with Auburn University concerning therapeutic and screening activity relating to neural stem cells.

47.     The entirety of Neuralstem's involvement with Johns Hopkins University concerning therapeutic and screening activity relating to neural stem cells.

48.     The entirety of Neuralstem's involvement with Cellomics, Inc. concerning therapeutic and screening activity relating to neural stem cells.

49.     The entirety of Neuralstem's involvement with the Department of Defense concerning therapeutic and screening activity relating to neural stem cells.

50.     The entirety of Neuralstem's involvement with Gene Logic concerning therapeutic and screening activity relating to neural stem cells.

51.     The entirety of Neuralstem's involvement with Metrigenix, Inc. concerning therapeutic and screening activity relating to neural stem cells.

52.     The entirety of Neuralstem's involvement with Reneuron, Ltd. concerning therapeutic and screening activity relating to neural stem cells.

53.     The entirety of Neuralstem's involvement with Aurora Biosciences, Inc. concerning therapeutic and screening activity relating to neural stem cells.

54.     The entirety of Neuralstem's involvement with Incyte Pharmaceuticals, Inc. concerning therapeutic and screening activity relating to neural stem cells.

55.     The entirety of Neuralstem's involvement with Diacrin/Genzyme concerning therapeutic and screening activity relating to neural stem cells.

56.     The entirety of Neuralstem's involvement with the University of Florida concerning therapeutic and screening activity relating to neural stem cells.

57.     The entirety of Neuralstem's involvement with Charles River Laboratories concerning therapeutic and screening activity relating to neural stem cells.

58.     The entirety of Neuralstem's "outsourced model" approach to its research and development and business affairs concerning therapeutic and screening activity relating to neural stem cells.