IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEMCELLS, INC., a Delaware corporation; and STEMCELLS CALIFORNIA, INC., a California corporation,<br><br>    Plaintiffs,<br><br>  v.<br><br>NEURALSTEM, INC., a Maryland Corporation; KARL K. JOHE; and I. RICHARD GARR,<br><br>    Defendants.<br>_____/ | No. C 08-2364 CW<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO STAY OR TRANSFER |

    Defendants Neuralstem, Inc., Karl Johe and Richard Garr (collectively "Neuralstem") move to dismiss or stay this action or, in the alternative, to transfer it to the District of Maryland. Plaintiffs StemCells, Inc. and StemCells, California, Inc. (collectively "StemCells") oppose the motion. The motion was decided on the papers. Having considered all of the papers filed by the parties the Court denies Neuralstem's motion to dismiss and denies without prejudice its motion to stay or transfer the action.

## BACKGROUND

The parties to this action are companies that research and develop stem cell therapeutics. StemCells is a Delaware corporation with its primary place of business in Palo Alto, California. All of StemCells' approximately sixty employees are located in California. Neuralstem is a Delaware corporation with its primary place of business in Rockville, Maryland.

This case is the third action involving StemCells and Neuralstem. Both of the prior cases were filed in the District of Maryland.

In 2006, StemCells filed a suit in the District of Maryland, alleging that Neuralstem's research activities infringed StemCells' rights under four U.S. patents not at issue in this case (2006 suit).[1] Case No. 06-CV-1877. Neuralstem answered the complaint and asserted affirmative defenses including that (1) its activities were protected under the safe harbor defense provided for in 35 U.S.C. § 271(e)(1), and (2) each claim of the patents-in-suit was invalid. In February, and May, 2007, the Patent and Trademark Office (PTO) granted Neuralstem's request for reexamination of the four patents at issue in the 2006 suit. In June, 2007, StemCells and Neuralstem filed a joint motion to stay the 2006 suit pending the completion of the reexamination proceedings. On May 6, 2008, Neuralstem filed a motion to reopen the case and lift the stay.

---

[1] Neuralstem asserts that the patents at issue in this case are from "the same patent family" as the patents at issue in the 2006 suit.

2

StemCells opposed the motion, and it is currently under submission in the Maryland court.

On April 22, 2008, the PTO issued U.S. Patent number 7,361,505 (the '505 patent) to Neurospheres. StemCells is Neurospheres' exclusive licensee for the '505 patent. On April 23, 2008, the day after the '505 patent was issued, StemCells issued a press release stating that the PTO had issued the '505 patent with "broad claims covering human neural stem cells derived from any tissue source, including embryonic, fetal, juvenile or adult tissue." Murthy Decl., Ex. B. StemCells went on to claim, "The issuance of this patent rounds out and strengthens our neural stem cell portfolio, which we believe is unparalleled in its breadth, depth and completeness." Id. Therefore, StemCells stated, "We are confident that any third party wishing to commercialize neural stem cells as potential therapeutics or to use them as drug screening tools will have to seek a license from us irrespective of how they derive the cells." Id.

Several days later, on May 7, 2008, Neuralstem filed in the District of Maryland a complaint seeking a declaration that the '505 patent is invalid, not infringed and unenforceable (2008 Maryland suit). Case No. 08-cv-1173. Hours later, StemCells filed the complaint in this case, alleging infringement of the '505 patent as well as U.S. Patent number 7,115,418 ('418 patent).

On May 9, 2008, StemCells filed an amended complaint in this case, adding claims for trade libel and unfair competition in violation of California Business and Professions Code § 17200. On May 13, 2008, Neuralstem amended its complaint in the 2008 Maryland

3

suit, adding claims seeking declarations that (1) the '418 patent is invalid, not infringed and unenforceable and (2) certain statements Neuralstem made about the status of the PTO reexamination proceedings related to the patents involved in the 2006 suit are not trade libel or unfair competition.

## DISCUSSION

"There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 94-5 (9th Cir. 1982). This doctrine, known as the first-to-file rule, "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993). The rule "serves the purpose of promoting efficiency well and should not be disregarded lightly." Church of Scientology of California v. United States Dep't of Army, 611 F.2d 738, 750 (9th Cir. 1979). And, "the considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action." Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 938 (Fed. Cir. 1993).

In applying the first-to-file rule, a court looks to three threshold factors: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." Z-Line Designs, Inc. v. Bell'O Int'l LLC, 218 F.R.D. 663, 665 (N.D.

4

Cal. 2003). If the first-to-file rule does apply to a suit, the court in which the second suit was filed may transfer, stay or dismiss the proceeding in order to allow the court in which the first suit was filed to decide whether to try the case. Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 622 (9th Cir. 1991). "Circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit and forum shopping." Id. at 628 (internal citations omitted).

Another exception to the first-to-file rule applies if "the balance of convenience weighs in favor of the later-filed action." Ward v. Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994). This is analogous to the "convenience of parties and witnesses" on a transfer of venue motion pursuant to 28 U.S.C. § 1404(a). Med-Tec Iowa, Inc. v. Nomos Corp., 76 F. Supp. 2d 962, 970 (N.D. Iowa 1999); 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 133 (S.D.N.Y. 1994). The court with the first-filed action should normally weigh the balance of convenience. Pacesetter, 678 F.2d at 96 (citing Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 185 (1952)); see also Alltrade Inc., 946 F.2d at 628.

Neuralstem argues that the first-to-file rule warrants a dismissal or stay of this action because it filed the 2008 Maryland suit before StemCells filed this action, and the parties and issues in both cases are substantially the same. StemCells counters that, following the Federal Circuit's recent decision in Micron Technology, Inc. v. Mosaid Technologies, Inc., 518 F.3d 897 (Fed. Cir. 2008), the Court should give little weight to the first-to-

5

file rule and, in the alternative, that application of the first-to-file rule is not applicable because the cases differ and Neuralstem's 2008 Maryland suit is a bad-faith anticipatory suit.

In <u>Micron</u>, the district court dismissed a first-filed declaratory judgment action, finding that it lacked subject-matter jurisdiction and, in the alternative, declining to exercise its jurisdiction under the Declaratory Judgment Act. 518 F.3d at 900. The Federal Circuit reversed, holding that the district court applied the wrong standard in finding that lacked jurisdiction. <u>Id.</u> at 901-02. More relevant to the motion presently before this Court, the Federal Circuit held that "the district court's grounds for declining to exercise [] jurisdiction were not sufficient." <u>Id.</u> at 903.

The district court had relied on two factors to support its decision not to exercise its jurisdiction. First, it found that the declaratory relief cause of action was itself "tenuous at best." <u>Id.</u> The Federal Circuit rejected that reasoning because the determination was based on the district court's application of the wrong standard for determining subject matter jurisdiction in declaratory relief actions. <u>Id.</u> Next, the district court found that the declaratory action could be "fully litigated" in the Eastern District of Texas where an infringement action had been filed. The district court found that the Texas action was "'broader' than the declaratory relief action." <u>Id.</u> Like this case, the infringement action in Texas concerned more patents and included more defendants than the original declaratory judgment action. <u>Id.</u> at 900. In addition, the district court found that

6

"because the cases were filed only one day apart, [it] was no more invested in the case than the Texas court." Id. at 903.

The Federal Circuit also rejected these findings. In concluding that the district court should have exercised its jurisdiction under the declaratory judgment act, the Federal Circuit observed, "In light of the new more lenient standard for declaratory judgment jurisdiction, competing patent lawsuits may be filed within relatively short time frames." Id. at 904. Therefore, the Federal Circuit advised,

> Instead of relying solely on considerations such as tenuousness of jurisdiction, broadness of case, and degree of vestment, as in this case, or automatically going with the first filed action, the more appropriate analysis takes account of the convenience factors under 28 U.S.C. § 1404(a).
> . . .
> The first-filed suit rule, for instance, will not always yield the most convenient and suitable forum. Therefore, the trial court weighing jurisdiction additionally must consider the real underlying dispute: the convenience and suitability of competing forums. . . . In other words, this court notes that when the discretionary determination is presented after the filing of an infringement action, the jurisdiction question is basically the same as a transfer action under § 1404(a).

518 F.3d 904-05.

StemCells argues that the Court should give little weight to the first-to-file rule in this case. However, as StemCells recognizes, the consideration of the § 1404(a) factors has always been part of the first-to-file analysis. Moreover, as noted above, the court in the first-filed action should decide whether there is an exception to the first-to-file rule. Indeed, the Micron court observed, "District courts, typically the ones where declaratory

7

judgment actions are filed, . . . will have to decide whether to keep the case or decline to hear it in favor of the other forum, most likely where the infringement action is filed." Id. at 904 (emphasis added).

StemCells' alternative argument that, in any case, Neuralstem cannot rely on the first-to-file rule because StemCells' infringement action includes additional defendants and was the first to include claims for trade libel and unfair competition and claims based on the '418 patent, is also inapposite. As the Micron court noted, such considerations "carr[y] little weight because a patent holder may often easily file an artificially broader infringement suit to avoid declaratory judgment jurisdiction." 518 F.3d at 903.

The Court finds that the first-to-file rule is applicable and requires deference to the first-filed court. Applying the first-to-file rule in this case furthers the sound policy rationale underlying it. Thus, the court in the first-filed action should decide whether there is an exception to the first-to-file rule. Therefore, this Court will not address StemCells' arguments that Neuralstem's declaratory judgment action was anticipatory and filed in bad faith, or that the balance of convenience factors weighs in favor of litigating in Northern California. The Court defers to the District of Maryland to decide the appropriate forum and whether an exception to the first-to-file rule is applicable. See Pacesetter, 678 F.2d at 96 (noting that normally the respective convenience of the two courts should be addressed to the court in the first-filed action).

8

CONCLUSION

For the foregoing reasons, the Court DENIES Neuralstem's motion to dismiss and DENIES without prejudice its motion to stay or transfer this action (Docket No. 19). If StemCells wishes to have its complaint in this case decided in this Court, it may file a motion to transfer the declaratory judgment action to this Court. Because it would seem most conducive to judicial economy to have all of the disputes between these parties decided in the same court, StemCells may also move to transfer the 2006 case. If StemCells files a motion to transfer and the Maryland court denies it, the Court will transfer this case to Maryland. If StemCells files a motion to transfer and the Maryland court grants it, the parties shall file a notice of related cases and this Court will relate the cases. If, within two weeks, StemCells does not file a motion to transfer in Maryland and provide this Court notice that it has done so, the Court will stay this action pending the resolution of the Maryland litigation.

A case management conference will be held in this case as previously scheduled on August 26, 2008 at 2:00 PM, unless by that date the case has been transferred to Maryland or stayed.

IT IS SO ORDERED.

Dated: 7/1/08

CLAUDIA WILKEN
United States District Judge