MCDERMOTT WILL & EMERY LLP
Terrence P. McMahon (71910)
tmcmahon@mwe.com
William G. Gaede III (136184)
wgaede@mwe.com
Andrew A. Kumamoto (178541)
akumamoto@mwe.com
3150 Porter Drive
Palo Alto, CA  94304-1212
Telephone:    (650) 813-5000
Facsimile:    (650) 813-5100

MCDERMOTT WILL & EMERY LLP
John R. Fuisz (*pro hac vice*)
jfuisz@wme.com
Stephen Shahida (*pro hac vice*)
sshahida@wme.com
600 13th Street, N.W.
Washington, DC 20005-3096
Telephone:    (202) 756-8000
Facsimile:    (202) 756-8087

Attorneys for *StemCells, Inc. and
StemCells California, Inc.*

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STEMCELLS, INC., a Delaware corporation, and STEMCELLS CALIFORNIA, INC., a California corporation,<br><br>Plaintiffs,<br><br>v<br><br>NEURALSTEM, INC., a Maryland corporation, KARL K. JOHE, an individual, and I. RICHARD GARR, an individual,<br><br>Defendants. | Case No.  C-08-02364 CW<br><br>**NOTICE TO COURT OF PENDING MOTION TO TRANSFER CASE**<br><br><br><br>**Hon. Claudia Wilken** |

Pursuant to this Court's Order of July 1, 2008 (Dkt. No. 37, Order Denying Defendants'

Motion to Dismiss and Denying Without Prejudice Defendants' Motion to Stay or Transfer),

Plaintiffs StemCells, Inc. and StemCells California, Inc. (collectively "StemCells" or "Plaintiffs")

hereby provide notice to the Court that on July 15, 2008, Plaintiffs filed a motion to dismiss or

1  alternatively transfer the Maryland Case No. 08-CV-1173 AW to the Northern District of

2  California. A copy of StemCells' motion as filed is attached hereto as Exhibit 1.

3  DATED:    July 15, 2008                        MCDERMOTT WILL & EMERY LLP

4

5  By:        /s/ Brian L. Baker
                     Brian L. Baker

6

7  Attorneys for *StemCells, Inc. and StemCells California, Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

### SOUTHERN DIVISION

| | |
|---|---|
| Neuralstem, Inc.<br><br>    Plaintiff,<br><br>    vs.<br><br>StemCells, Inc., StemCells California, Inc., and<br>NeuroSpheres Holding Ltd.<br><br>    Defendants. | Civil Action No. 08-CV-01173-AW<br><br>Judge Alexander Williams, Jr. |

---

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, LACK OF PERSONAL JURISDICTION, AND IMPROPER VENUE OR IN THE ALTERNATIVE TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

Defendants StemCells, Inc., and StemCells California, Inc. (collectively, "StemCells") and NeuroSpheres Holding Ltd. ("NeuroSpheres") respectfully move this Court to dismiss Neuralstem, Inc.'s ("Neuralstem") amended complaint for (1) lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1); (2) lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2); and (3) improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). In the alternative, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), Defendants move the Court to transfer this action to the Northern District of California.

Defendants submit a memorandum of law, which is incorporated by reference into this motion. Defendants respectfully request a hearing on the present motion.

Respectfully Submitted,

*/s/ John R. Fuisz*

John R. Fuisz (Admitted *Pro Hac Vice*)
Jeremy I. Medovoy (Bar No. 16893)
MCDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, DC 20005-3096
Telephone: (202) 756-8000
Facsimile: (202) 756-8087
jmedovoy@mwe.com

*Counsel for Defendants StemCells, Inc.,
StemCells California, Inc., and
NeuroSpheres Holding Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2008, I electronically filed the foregoing with the Clerk of Court through the CM/ECF system which will send electronic notice of the filing to the registered participants as identified on the Notice of Electronic Filing.

_/s/ Jeremy I. Medovoy_

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

## SOUTHERN DIVISION

|  |  |
|---|---|
| Neuralstem, Inc. | |
|     Plaintiff, | |
|     vs. | Civil Action No. 08-CV-01173-AW |
| StemCells, Inc., StemCells California, Inc., and NeuroSpheres Holding Ltd. | Judge Alexander Williams, Jr. |
|     Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, LACK OF PERSONAL JURISDICTION, AND IMPROPER VENUE OR IN THE ALTERNATIVE TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

John R. Fuisz (Admitted *Pro Hac Vice*)
Jeremy I. Medovoy (Bar No. 16893)
MCDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, DC 20005-3096
Telephone: (202) 756-8000
Facsimile: (202) 756-8087
jmedovoy@mwe.com

*Counsel for Defendants StemCells, Inc.,
StemCells California, Inc., and
NeuroSpheres Holding Ltd.*

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................2

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................5
      A.   The Companies ...........................................................................................5
      B.   The Closed StemCells 2006 Maryland Infringement Action................5
      C.   The '418 and '505 Patents.........................................................................6
      D.   Neuralstem's Declaratory Relief Action.................................................7
      E.   StemCells' California Action and Neuralstem's Subsequent Reactionary
           Steps to Have All Actions Tried in Maryland .......................................7

III.  ARGUMENT .........................................................................................................9
      A.   The Court Lacks Subject Matter Jurisdiction Over This Action.............9
           1.   The Court Lacks Subject Matter Jurisdiction Over Neuralstem's
                Declaratory Judgment Action on the '505 Patent ......................9
           2.   The Court Should Not Exercise Subject Matter Jurisdiction Over
                Neuralstem's Declaratory Judgment Action on the '418 Patent
                Because Doing So Would Deny StemCells of Its Earlier, Chosen
                Forum ...........................................................................................11
           3.   The Court Lacks Subject Matter Jurisdiction Over Neuralstem's
                Declaratory Judgment Action on the California State Causes of
                Action ...........................................................................................12
      B.   The Court Lacks Personal Jurisdiction Over StemCells and NeuroSpheres........12
      C.   The Court Should Dismiss This Action for Improper Venue .............15
      D.   The Court Should Transfer the Case to the Northern District of California
           Pursuant to 28 U.S.C. §§ 1406(a) and 1404(a) ...................................15
           1.   The California Court Can Properly Exercise Jurisdiction and
                Venue Over All Necessary and Desired Parties and Claims and
                This Court Lacks Jurisdiction and Venue Over StemCells and
                NeuroSpheres................................................................................18
           2.   The Convenience and Availability of Witnesses Favors the
                California Forum...........................................................................19
           3.   Consolidation of This Action With the Closed Maryland Action
                Would be Improper and Would Inequitably Delay the Trial and
                Confuse the Issues Under Consideration....................................20
           4.   The Interests of Justice Strongly Favor California as the Proper
                Forum ...........................................................................................22
           5.   Neuralstem May Not Claim Whatever Residual Benefit Exists
                Under the First-to-File Rule Because the Actions Differed in
                Parties and Subject Matter, and This Declaratory Judgment Action
                Is a Bad Faith, Anticipatory Suit................................................22

IV.   CONCLUSION....................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321 (4th Cir. 1937) ................................23

*Bigg Wolf Disc. Video Movie Sales, Inc. v. Montgomery County*, 256 F. Supp. 2d 385 (D. Md. 2003)................................................................................20

*Bridgelux, Inc. v. Cree, Inc.*, No. 06-CV-6495, 2007 U.S. Dist. LEXIS 53137 (N.D. Cal. July 9, 2007) .............................................................................10

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000) ................23

*Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315 (Fed. Cir. 2005) ........................................................................ 12, 13

*Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461 (D. Md. 2000) ...............................................................................................20

*Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978)..............................23

*Fasolyak v. The Cradle Soc'y, Inc.*, C.A. No. 06-622, 2006 U.S. Dist. LEXIS 96546 (D. Md. June 15, 2006) ..........................................................3, 16, 22

*Genentech v. Eli Lilly & Co.*, 998 F.2d 931 (Fed. Cir. 1993) ...................................22

*Glaxo Wellcome, Inc. v. Pharmadyne Corp.*, 32 F. Supp. 2d 265 (D. Md. 1998) ................9, 10

*Kearns v. Gen. Motors Corp.*, 94 F.3d 1553 (Fed. Cir. 1996) ........................... 14, 17

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952)......................17

*Mallinckrodt Med., Inc. v. Sonus Pharms., Inc.*, 989 F. Supp. 265 (D.D.C. 1998).............13, 14

*MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007) .............................passim

*Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008) .....................passim

*Monsanto Co. v. Syngenta Crop Protection, Inc.*, No. 07-CV-543, 2008 U.S. Dist. LEXIS 7236 (E.D. MI 2008) ......................................................................10

*Nilssen v. Osram Sylvania, Inc.*, 440 F. Supp. 2d 884 (N.D. Ill. 2004)......................21

*Red Wing Shoe Co. v. Hockerson-Halberstadt*, 148 F.3d 1355 (Fed. Cir. 1998) ....................14

*Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037 (Fed. Cir. 1995).......................16

*Southwest Marine, Inc. v. Triple a Mach. Shop, Inc.*, 720 F. Supp. 805 (N.D. Cal. 1989) ..........................................................................................20

*StemCells, Inc. v. Neuralstem, Inc.*, No. C 08-2364 CW ......................................2, 4

*Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275 (Fed. Cir. 2005) ...............................................................................................18

*U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924 (E.D. Va. 2005) ............13, 14

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581 (4th Cir. 2004)................12

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)....................................................11

## STATUTES

28 U.S.C. § 1332...........................................................................................12

28 U.S.C. § 1391(b) .................................................................................................... 15

28 U.S.C. § 1391(c) .................................................................................................... 15

28 U.S.C. § 1404(a) ............................................................................................... passim

28 U.S.C. § 1406(a) ...................................................................................... 1, 3, 15, 16

28 U.S.C. § 2201(a) ....................................................................................................... 9

Fed. R. Civ. P. 42; 9 Wright & Miller § 2382 ...........................................................20

Federal Rule of Civil Procedure 12(b)(1) ....................................................................1

Federal Rule of Civil Procedure 12(b)(2) ....................................................................1

Federal Rule of Civil Procedure 12(b)(3) ....................................................................1

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

## SOUTHERN DIVISION

| | |
|---|---|
| Neuralstem, Inc. | |
|     Plaintiff, | |
|     vs. | Civil Action No. 08-CV-01173-AW |
| StemCells, Inc., StemCells California, Inc., and NeuroSpheres Holding Ltd. | Judge Alexander Williams, Jr. |
|     Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, LACK OF PERSONAL JURISDICTION, AND IMPROPER VENUE OR IN THE ALTERNATIVE TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA

Defendants StemCells, Inc. and StemCells California, Inc. (collectively, "StemCells") and NeuroSpheres Holding Ltd. ("NeuroSpheres") respectfully move the Court to dismiss this case for (1) lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1); (2) lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2); and (3) improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).  In the alternative, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), Defendants move the Court to transfer this case to the Northern District of California where StemCells' patent infringement and California state law causes of action are moving forward as case no. C-08-02364 CW (the "California Action").  StemCells filed the California Action on the same day that Neuralstem, Inc. ("Neuralstem") filed this case seeking declaratory judgment.  But in stark contrast to this case, jurisdiction and venue are proper in the California Action, and the California forum is convenient for all parties and witnesses.

## I.    INTRODUCTION

This anticipatory suit for declaratory judgment wholly ignores the jurisdictional standards under the Declaratory Judgment Act as well as the requirements for establishing personal jurisdiction and proper venue.  All of these procedural deficiencies preclude this Court from exercising jurisdiction over this case.  Disregarding these serious obstacles, Neuralstem attempts to rely on an incorrect approach to the first-to-file rule that is far too rigid and is clearly at odds with the standards governing the first-to-file analysis that were articulated by the Federal Circuit in *Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008).

Just a few weeks ago, Neuralstem unsuccessfully moved to dismiss the California Action based on the first-to-file rule and, alternatively, sought to transfer the California Action to this Court pursuant to 28 U.S.C. § 1404(a).  (Fuisz Decl., Ex. 1.)  Judge Wilken denied Neuralstem's motion and, in her well reasoned opinion, acknowledged that the first-to-file analysis is not rigid, but rather ***requires*** a balancing of equitable factors.  *See StemCells, Inc. v. Neuralstem, Inc.*, No. C 08-2364 CW, Order Denying Defendants' Motion to Dismiss and Denying Without Prejudice Defendants' Motion to Stay or Transfer, July 1, 2008 (hereafter, "Wilken Order"), at 5 ("Another exception to the first-to-file rule applies if the balance of convenience weighs in favor of the later-filed action." (citation and quotation omitted)).  (Fuisz Decl., Ex. 2.)  Judge Wilken also recognized that additional equitable "[c]ircumstances under which an exception to the first-to-file rule typically . . . include bad faith, anticipatory suit and forum shopping." *Id.* (citation and quotation omitted).

Indeed, as the Federal Circuit held in *Micron*, it is wrong to apply the first-to-file rule mechanically, especially in light of the "newly understood legal environment" articulated by the U.S. Supreme Court in its 2007 *MedImmune* decision, which lowered the bar for declaratory relief jurisdiction in patent cases.  *Micron*, 518 F.3d at 905; *see also MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007).  The Federal Circuit recognized that under *MedImmune*, potential defendants had "greater opportunity to race to the courthouse." *Micron*, 518 F.3d at 905.  To discourage these races, the Federal Circuit stated that courts must consider each

competing forums' suitability through "robust consideration" of four convenience factors: (1) where jurisdiction properly lies, (2) whether efficient consolidation is possible, (3) the convenience of the witnesses and parties, and (4) the interests of justice generally. *Id.* In other words, to discourage litigants from racing to federal court to claim first-to-file status, and the injustices and waste that would surely follow, *Micron* confirmed that a proper forum analysis requires the courts to focus on the suitability and convenience of the competing forums, not the actions of the parties.

In its failed attempt to dismiss or transfer the California Action, Neuralstem glossed over this analysis and this new legal environment because its chosen forum, Maryland, presents fundamental jurisdictional and procedural issues that are wholly absent in California. These manifold jurisdictional deficiencies require dismissal of the present action as a matter of law or, alternatively, transfer to California. *See Fasolyak v. The Cradle Soc'y, Inc.*, C.A. No. 06-622, 2006 U.S. Dist. LEXIS 96546, at *19 (D. Md. June 15, 2006) (dismissing for lack of jurisdiction, but transferring case pursuant to 28 U.S.C. § 1406(a) after considering "both the convenience and fairness of transferring the case").

Moreover, and as a matter of sound equity, this Court may instead elect to transfer this case to the Northern District of California following a review of the equitable factors under 28 U.S.C. § 1404(a) and by *Micron*: (1) jurisdiction, (2) consolidation, (3) convenience of witnesses, and (4) justice. These equitable factors weigh heavily in favor of transferring this case to California, so that it can be tried together with the California Action:

- The Northern District of California Court has proper personal jurisdiction and venue over all the parties, for example. This Court, in contrast, lacks personal jurisdiction and venue over both StemCells and NeuroSpheres because both entities, having insufficient contact with Maryland, have not consented to suit in Maryland.

- The Northern District of California Court also has subject matter jurisdiction over the entire dispute. This Court, in contrast, lacks subject matter jurisdiction over both the patent claims, because no case and controversy existed under *MedImmune* when Neuralstem filed its declaratory judgment suit, as well as the declaratory state law causes of action, because both diversity and federal question jurisdiction are lacking with respect to these California state law claims.

- Meanwhile, any argument of consolidation in Maryland would be false as the earlier Maryland case is based on different patents and facts and raises different legal considerations not presented here. In addition, the earlier case is administratively closed and will remain so for the foreseeable future.

- The convenience of third party witnesses also weighs in favor of California. Witnesses in California will be important to establishing California acts of infringement and violations of California state and common law. In contrast, Neuralstem has not identified any material third-party witnesses in Maryland.

- Litigating in California poses no undue difficulty to Plaintiff Neuralstem, as evidenced by Neuralstem's initiating suit against another company in California a few months ago.

- Finally, interests of justice all weigh in favor of the Northern District of California Court because, among other things, only that court has jurisdiction over both Defendants' infringement and California state law claims.

Indeed, as it is not bogged down by any jurisdictional disputes, the California Action is presently moving forward towards discovery and a speedy resolution. On May 12, 2008, Judge Wilken entered an order scheduling a case management conference for August 26, 2008, and directing the parties to prepare a joint case management statement. *StemCells, Inc. v. Neuralstem, Inc.*, No. C 08-2364 CW, Case Management Scheduling Order, May 12, 2008 (hereafter, "Wilken Scheduling Order") (Fuisz Decl., Ex. 3.) The parties' Rule 26(f) conference must occur by August 5 and written discovery can be served starting thereafter. StemCells' preliminary infringement contentions are due on September 9th. To keep matters moving, in addition to denying Neuralstem's motion to dismiss or transfer, Judge Wilken further encouraged StemCells to file this motion to transfer with this Court. *See* Wilkin Order at 9. (Fuisz Decl., Ex. 2 at 9.)

For all these reasons, dismissing or transferring this action to the Northern District of California will best serve the interests of justice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    THE COMPANIES

StemCells[1] is a Delaware corporation located in Palo Alto, California, that discovers and develops stem cell therapeutics. StemCells employs approximately sixty employees, all located in California. It has been in business since 1988 and has a broad suite of intellectual property relating to the field of stem and progenitor cells, including patents covering the purification, proliferation, and use of human neural stem cells. StemCells has also licensed intellectual property from other early players in the stem cell field, including the exclusive right, title and interest to a portfolio of patents from NeuroSpheres, a Canadian entity located in Alberta, Canada.

StemCells relies upon its pioneering intellectual property to protect its proprietary therapeutic drug programs, and to monetize other aspects of its technology with third parties such as by entering into license agreements. This year, StemCells completed enrollment for a Phase I clinical trial using neural stem cells to treat infantile Neuronal Ceroid Lipofuscinosis, a fatal genetic disorder in children.

Neuralstem is a Delaware corporation located in Rockville, Maryland. Neuralstem was formed in 1996, and it employs approximately seven employees. (Fuisz Decl., Ex. 4.) Neuralstem outsources much of its research on stem cells to third parties, including its collaborators at the University of California at San Diego. (*Id.* at 18-20.)

### B.    THE CLOSED STEMCELLS 2006 MARYLAND INFRINGEMENT ACTION

Two years ago, in July 2006, StemCells filed suit against Neuralstem in this Court alleging infringement of four of StemCells' patents, namely U.S. Patent Nos. 5,851,832, 6,294,346, 6,497,872, and 7,101,709. On December 7, 2006 and April 5, 2007, Neuralstem petitioned the U.S. Patent Office to reexamine these older patents based on eleven prior art references. After the U.S. Patent Office granted these petitions for reexamination, StemCells and

---

[1] "StemCells" refers collectively to StemCells, Inc. and StemCells California, Inc.

Neuralstem voluntarily agreed to stay and administratively close the 2006 Maryland infringement action until the reexaminations were completed (the "Closed Maryland Action"). (Fuisz Decl., Ex 5.)  Recent statistics published by the Patent Office show that the average pendency for a reexamination proceeding is two years.  (Fuisz Decl., Ex 6.)  None of the current reexamination proceedings has been completed.  (Fuisz Decl., Ex 7.)

On May 6, 2008, Neuralstem moved to administratively open the Closed Maryland Action and lift the stay.  (Fuisz Decl., Ex 8.)  StemCells has opposed this motion on the grounds that (i) Neuralstem's motion violates the Court's stipulated order closing the case, and (ii) the motion would, if granted, result in fractured and piecemeal litigation because the Patent Office has not yet finished its reexamination of the four patents at issue in the Closed Maryland Action. (Fuisz Decl., Ex. 9.)  The motion is fully briefed and pending before this Court.

### C.   THE '418 AND '505 PATENTS

On October 3, 2006, U.S. Patent No. 7,115,418 (the "'418 Patent") issued to NeuroSpheres.  StemCells is the exclusive licensee to this patent.  On April 22, 2008, U.S. Patent No. 7,361,505 (the "'505 Patent") issued to NeuroSpheres with StemCells as its exclusive licensee.  These patents arose out of the complex prosecution history that also resulted in the '832, '346, '872, and '709 patents.

StemCells did not issue a press release on the '418 Patent, but issued a press release, on April 23, 2008, on the '505 Patent.  In this press release, StemCells stated:

> The issuance of this patent rounds out and strengthens our neural stem cell portfolio, which we believe is unparalleled in its breadth, depth and completeness. . . . We are confident that any third party wishing to commercialize neural stem cells as potential therapeutics or to use them as drug screening tools will have to seek a license from us irrespective of how they derive the cells.  We have already granted licenses to several companies and are currently considering licensing others.

(Fuisz Decl., Ex. 10.)  No communications have occurred between StemCells and Neuralstem concerning either the '418 or the '515 Patents, either before or after StemCells issued this press release.  The '505 and '418 Patents are not at issue in the Closed Maryland Action.

D.    **NEURALSTEM'S DECLARATORY RELIEF ACTION**

On May 7, 2008, Neuralstem filed this declaratory judgment action against StemCells and NeuroSpheres, seeking a finding that the '505 Patent is unenforceable, not infringed and invalid.  On the day it filed this suit, Neuralstem announced to the investing public that StemCells had not directly accused Neuralstem of infringing the '505 Patent.  Specifically, in its May 7 press release, Neuralstem stated:

> While we believe that it is clear that we are not infringing this patent, ***and we have not yet been directly accused by StemCells, Inc. of infringing this patent***, the threatening statements in their press release of April 23rd leave the misleading impression that we would require a license from them as a result of the issuance of this patent.  Nothing could be further from the truth. . . . And, in addition to finding that the patent is unenforceable against us, or anyone else for that matter, as a result of their actions, we are asking that the Court also declare that we are not infringing the patent and that the patent is also invalid.

(Fuisz Decl., Ex. 11.) (emphasis added).

E.    **STEMCELLS' CALIFORNIA ACTION AND NEURALSTEM'S SUBSEQUENT REACTIONARY STEPS TO HAVE ALL ACTIONS TRIED IN MARYLAND**

On May 7, 2008, just hours after Neuralstem filed this declaratory judgment action against only the '505 Patent, StemCells filed its complaint in the California Action against Neuralstem and its founders, Karl L. Johe and I. Richard Garr, alleging infringement of both the '418 and '505 Patents.  StemCells' complaint marked the first time either party raised a cause of action involving the '418 Patent, as Neuralstem's earlier declaratory judgment action failed to do so.

On May 9, 2008, StemCells amended its California complaint to include the following two California state law causes of action:  violation of California Business and Professions Code Section 17200 and California common law trade libel.  These two California causes of action arose out of Neuralstem's repeated derogatory statements to the public about StemCells' patent portfolio, including, for example, inaccurate claims about the reexaminations pending before the U.S. Patent Office and allegations of fraud before the Patent Office in procuring the '505 Patent.

Thereafter, on May 13, 2008, Neuralstem filed an amended declaratory judgment complaint in this action, seeking a finding of no infringement of StemCells' '418 Patent and a

finding that Neuralstem did not commit trade libel or violate California Business and Professions Code Section 17200.  Thus, Neuralstem mirrored StemCells' allegations in the California Action.  As of now, the individual defendants in the California Action, Karl Johe and Richard Garr, have not sought to intervene in this Maryland declaratory judgment action and, thus, are only parties to the California Action.

On May 30, 2008, Neuralstem filed in the California Action a motion to dismiss based on the first-to-file rule and, alternatively, sought to transfer the California Action to this Court under 28 U.S.C. § 1404(a).  (Fuisz Decl., Ex. 1.)  Neuralstem's motion did not move to dismiss the California Action for any alleged lack of subject matter or personal jurisdiction, or improper venue.  (*Id.*)  On July 1, 2008, Judge Wilken denied Neuralstem's motion to dismiss, transfer or stay the California Action.  However, Judge Wilken "defer[red] to [this Court] to decide the appropriate forum and whether an exception to the first-to-file rule is applicable."  Wilken Order at 8.  (Fuisz Decl., Ex. 2 at 8.)  Nonetheless, by denying Neuralstem's motion to dismiss, transfer or stay, Judge Wilken acknowledged that California was an appropriate forum for this action to proceed should this Court concur.  Judge Wilken further invited StemCells to "file a motion to transfer [Neuralstem's] declaratory judgment action to this [California] Court," and "to move to transfer the 2006 [Closed Maryland Action]."  (*Id.* at 9.)

The California Action is therefore proceeding expeditiously forward.  On May 12, 2008, Judge Wilken entered an order scheduling a case management conference for August 26, 2008, and directed the parties to prepare a joint case management statement.  *See* Wilken Scheduling Order at 1.  (Fuisz Decl., Ex. 3 at 1.)  The parties' Rule 26(f) conference must occur by August 5 and written discovery can be served starting thereafter.  The Joint Case Management Statement setting forth a trial date, discovery limits, preliminary summaries of the legal and factual issues of the case, and a case management schedule will be filed on August 19th.  StemCells' preliminary infringement contentions are due on September 9th pursuant to the Northern District of California's Local Patent Rules.

## III.  ARGUMENT

### A.  THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS ACTION

#### 1.  The Court Lacks Subject Matter Jurisdiction Over Neuralstem's Declaratory Judgment Action on the '505 Patent

This Court lacks subject matter jurisdiction over Neuralstem's request for declaratory relief on the '505 Patent.  Neuralstem alleges that this action arises under the Declaratory Judgment Act.  (First Am. Compl. ¶ 1.)  The law is clear, however, that jurisdiction under the Declaratory Judgment Act absolutely requires an actual controversy.  *Micron*, 518 F.3d at 901; *see also* Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("In a case of *actual controversy* within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." (emphasis added)).  This requirement "is rooted in Article III of the Constitution, which provides for federal jurisdiction over only 'cases and controversies,' as *MedImmune* recognizes."  *Micron*, 518 F.3d at 901.  Here, Neuralstem fails to prove, let alone properly allege, facts that support a showing of an "actual controversy."

For a court to exercise declaratory judgment jurisdiction, the dispute must be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune*, 127 S. Ct. at 771 (citation and quotations omitted).  Moreover, "a party seeking a declaratory judgment pursuant to [the Declaratory Judgment Act] must establish that subject matter jurisdiction over its action existed at the commencement of the action."  *Glaxo Wellcome, Inc. v. Pharmadyne Corp.*, 32 F. Supp. 2d 265, 273 (D. Md. 1998) (citation omitted).

At the time Neuralstem filed its May 7, 2008 declaratory judgment action, no "substantial controversy" existed between Neuralstem and StemCells "of sufficient immediacy and reality" to warrant Neuralstem seeking a declaratory judgment of inequitable conduct, non-infringement and invalidity on the '505 Patent.  Indeed, as Neuralstem's May 7, 2008 press release admits, StemCells had never threatened Neuralstem directly with patent infringement on the '505 Patent prior to Neuralstem's filing suit.  Rather, StemCells merely stated in its April 23, 2008, press

release that the '505 Patent "rounds out and strengthens" StemCells' neural stem cell patent portfolio, and that it was confident that any third party wishing to commercialize neural stem cells would need to seek a license to one or more of the patents in the portfolio. StemCells' press release did not mention Neuralstem by name, let alone ask it to seek a license to use the '505 Patent. (*See* Fuisz Decl., Ex. 10.)

Faced with this reality, Neuralstem attempts to create the illusion of a need for declaratory relief and, thereby, subject matter jurisdiction, by pleading an alleged "history of [StemCells] aggressively enforcing its exclusively licensed patents." (First Am. Compl. ¶ 10.) Neuralstem, however, conveniently ignores critical facts about this "history." In fact, the 2004 and 2005 Maryland actions cited in Neuralstem's complaint (*see id.*): (1) were against the same third party (ReNeuron Limited, which is now a StemCells licensee), (2) were never served, and (3) were dismissed without prejudice. (Fuisz Decl., Ex. 12.) The third action identified (First Am. Compl. ¶ 11), the Closed Maryland Action, was brought against Neuralstem and voluntarily closed by StemCells to permit the Patent Office to perform its reexaminations of the '832, '346, '872, and '709 patents. None of these prior lawsuits involved the '505 Patent issued in 2008. As a matter of law, these dismissed and closed suits on different patents do not create a justiciable controversy over the '505 Patent. S*ee Bridgelux, Inc. v. Cree, Inc.*, No. 06-CV-6495, 2007 U.S. Dist. LEXIS 53137 at *20-24 (N.D. Cal. July 9, 2007) (dismissing a declaratory action against two of six patents, despite the existence of pending lawsuits between the same parties on the other four patents, as the court found "that neither defendant had filed any lawsuit alleging infringement of the [two] patents, and that neither defendant has ever accused [the plaintiff] of infringing the patents"); *see also Monsanto Co. v. Syngenta Crop Protection, Inc.*, No. 07-CV-543, 2008 U.S. Dist. LEXIS 7236 (E.D. MI 2008) (despite acknowledging that *MedImmune* lowered the standard for filing declaratory judgment actions, the court still found no jurisdiction existed where there were no specific accusations that the declaratory judgment plaintiff was infringing patents).

Neuralstem's action seeks an unwarranted extension of declaratory judgment authority that wrests further control from patentees over their property. Because no "actual controversy" existed when Neuralstem filed suit against Defendants, this Court lacks subject matter jurisdiction over this action.

> **2.    The Court Should Not Exercise Subject Matter Jurisdiction Over Neuralstem's Declaratory Judgment Action on the '418 Patent Because Doing So Would Deny StemCells of Its Earlier, Chosen Forum**

Neuralstem's declaratory judgment complaint also fails to allege any communications from StemCells to Neuralstem concerning the '418 Patent. In fact, Neuralstem brought this infringement claim six days *after* StemCells alleged infringement of the '418 Patent against Neuralstem, Garr and Johe in the California Action. Subject matter jurisdiction exists only by virtue of StemCells' first filed claim for infringement pending in California. Thus, retaining jurisdiction over this action would deprive StemCells of its earlier and chosen California forum, and should therefore be dismissed. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act**,** even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Accordingly, this claim should be dismissed or transferred in favor of the earlier filed California Action.

Moreover, any assertion by Neuralstem that the Court initially had subject matter jurisdiction over its declaratory judgment action on the '418 Patent when it first filed its declaratory judgment action on the '505 Patent is based upon the flawed assumption that there was subject matter jurisdiction over the '505 Patent in the first place. As explained above, this Court lacks subject matter jurisdiction over the declaratory action on the '505 Patent because there was no "actual controversy" at the time.

### 3. The Court Lacks Subject Matter Jurisdiction Over Neuralstem's Declaratory Judgment Action on the California State Causes of Action

Counts VI and VII of Neuralstem's amended complaint arise under California state law (trade libel and unfair competition laws), not the U.S. patent laws. (First Am. Compl. ¶¶ 63-71.) As with the claim for the '418 Patent, these declaratory relief claims were also filed after StemCells alleged such claims in California. Neuralstem's alleged basis for jurisdiction is the Declaratory Judgment Act, but the Court must "possess[] an independent basis for jurisdiction . . . (*e.g.*, federal question or diversity jurisdiction)" before it can properly exercise jurisdiction under the Declaratory Judgment Act. *See, e.g., Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004).

Neuralstem did not, and cannot, plead a sufficient independent basis for exercising jurisdiction over these claims. Neuralstem did not, and cannot, allege diversity jurisdiction, *see* 28 U.S.C. § 1332 (requiring amount in controversy to exceed $75,000), for example, and its claim for jurisdiction under the patent laws is fatally flawed. These two counts involve California state law causes of action, not the U.S. patent laws.

Neuralstem cannot bootstrap its initially filed declaratory judgment action against the '505 Patent as the basis for subject matter jurisdiction over the California state law causes of action under theories of pendant jurisdiction. As initially filed, there was no "actual controversy" giving rise to subject matter jurisdiction for the declaratory judgment action on the '505 Patent. This Court, therefore, lacks subject matter jurisdiction over the California state law claims, *i.e.*, Counts VI and VII, and those Counts should be dismissed or transferred to California. In addition to these various problems with subject matter jurisdiction, this case is fatally flawed because personal jurisdiction is lacking for all of the defendants.

### B. THE COURT LACKS PERSONAL JURISDICTION OVER STEMCELLS AND NEUROSPHERES

To establish personal jurisdiction over StemCells and NeuroSpheres, Neuralstem bears the burden of proving "that the requirements of due process are satisfied." *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005).

Under the Due Process clause, this Court's exercise of jurisdiction over non-resident defendants, such as StemCells and NeuroSpheres, "requires certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 1319 (citations and quotations omitted).

Recognizing that StemCells and NeuroSpheres have insufficient "minimum contacts" with Maryland, Neuralstem does not even attempt to allege that StemCells or NeuroSpheres have any genuine presence in Maryland.[2] (*See* First Am. Compl. ¶ 5.)  Instead, Neuralstem attempts to establish jurisdiction by arguing that StemCells "has availed itself of the jurisdiction of this Court by filing lawsuits alleging patent infringement . . . including [the Closed Maryland Action]." (*Id.* ¶ 5.)

This argument finds no support in the law.  The filing of one suit by a party in a particular jurisdiction does not subject that party to future cases on a different transaction or occurrence in the same jurisdiction, even cases involving the same parties.  *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 935 n.25 (E.D. Va. 2005) ("[I]t is plainly not the case that by submitting to jurisdiction in one case that a party consents to all future suits against the party in that district, even if they are related."); *Mallinckrodt Med., Inc. v. Sonus Pharms., Inc.*, 989 F. Supp. 265, 271 (D.D.C. 1998) ("It would be ludicrous to suggest that [parties] consented to the jurisdiction of this Court for all time, with respect to all potential competitors, and for all purposes, simply because they once chose to sue . . . here.").  StemCells did not consent to being sued on all patents in its portfolio in Maryland simply because it sued Neuralstem in Maryland in 2006 for infringement of four different patents.

---

[2]  In any event, Neuralstem would not be able to prove sufficient contacts in Maryland. StemCells is a Delaware corporation with its principal place of business in California, and all of its approximately sixty employees are located in California.  It does not have any offices or employees in Maryland.  Nor does StemCells sell any products in Maryland.  NeuroSpheres is a Canadian company with its principal place of business in Alberta, Canada.  Like StemCells it does not have any offices or employees in Maryland, nor does it sell any products in Maryland.

Nor do the Closed Maryland Action and Neuralstem's declaratory judgment action arise from the same transaction or occurrence. For example, as the Federal Circuit held in *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1555-56 (Fed. Cir. 1996), it is fundamental that each patent raises an independent and distinct cause of action that does not "arise from the same transaction and occurrence" so as to subject a later patent to *res judicata* from prior suits on other patents. The Federal Circuit reached this result because proof of infringement or invalidity on one patent does not prove infringement or invalidity of a different patent. *Id.* Each patent raises an independent and distinct cause of action and consent to jurisdiction on one patent does not equal consent to jurisdiction on the legally distinct rights that inure under a separate patent, even if related.[3] *See U.S. Ship Mgmt*, 357 F. Supp. 2d at 935 n.25; *Mallinckrodt*, 989 F. Supp. at 271.

Finally, Neuralstem's personal jurisdiction argument with regard to NeuroSpheres is also fatally flawed. Neuralstem alleges jurisdiction over NeuroSpheres based on its "its active and ongoing relationship with its exclusive licensee, StemCells . . . ." (First Am. Compl. ¶ 7.) NeuroSpheres, however, is not a party to the Closed Maryland Action, and it certainly cannot be held to consent to personal jurisdiction based on the actions of StemCells. *Redwing Shoe*, 148 F.3d at 1361 ("[T]he Supreme Court has made clear that contacts resulting from the unilateral activity of another party or third person are not attributable to a defendant." (citation and quotations omitted)). Moreover, as discussed above, StemCells never consented to jurisdiction on a separate suit in Maryland based on filing prior unrelated litigation arising out of different patents.

---

[3] Moreover, StemCells' April 23, 2008, press release is also insufficient to create personal jurisdiction. *See Red Wing Shoe Co. v. Hockerson-Halberstadt*, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998) ("Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum."). In *Red Wing*, while three notice letters to competitors directly alleging infringement, in combination with other facts, were held to support a declaratory judgment action, they were held to be insufficient to create personal jurisdiction over a patentee in the forum to which the letters were sent. *Id.*

In sum, this Court lacks personal jurisdiction over all the defendants in this case, StemCells and NeuroSpheres.

**C.      THE COURT SHOULD DISMISS THIS ACTION FOR IMPROPER VENUE**

As yet another basis to dismiss this improper case, the District of Maryland is an improper venue for this action.  Neuralstem alleges that venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c).  (First Am. Compl. ¶ 1.)  This allegation, however, is based on the assumption that the Court has personal jurisdiction over StemCells and NeuroSpheres, *see* 28 U.S.C. § 1391(c) and, as demonstrated above, this assumption is wrong.  This Court lacks personal jurisdiction over non-resident defendants StemCells and NeuroSpheres.  The Court, therefore should also dismiss this action for improper venue.  *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss . . . .").

Of course, this Court does not need to make a determination as to StemCells' requests for dismissal for (i) lack of subject matter jurisdiction, (ii) lack of personal jurisdiction and (iii) improper venue, should the Court instead elect to transfer this case to the Northern District of California, where none of these jurisdictional problems exists.  As established below, each of the *Micron* factors that the Court must consider in order to rule on this motion (not just jurisdiction) weighs heavily in favor of transferring this action to California.

**D.      THE COURT SHOULD TRANSFER THE CASE TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1406(a) AND 1404(a)**

In the alternative to dismissing this case outright for lack of jurisdiction and venue, the Court can unquestionably transfer this action to California, "if it [would] be in the interest of justice."  28 U.S.C. § 1406(a); *see also* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").  Time and again, courts in this jurisdiction have relied on 28 U.S.C. § 1406(a) to transfer cases, rather than outright dismiss them for lack of jurisdiction or improper venue.  *See, e.g., Fasolyak*, 2006 U.S. Dist. LEXIS

96546, at *19 (Williams, Jr., J.) (dismissing for lack of jurisdiction, but transferring case pursuant to 28 U.S.C. § 1406(a) after considering "both the convenience and fairness of transferring the case").

This case could have been filed in the Northern District of California, and a consideration of convenience and fairness factors favors transferring the case to that district to be tried together with the California Action. Indeed, through an examination of the convenience factors from 28 U.S.C. § 1404(a), as required by the Federal Circuit in *Micron*, this Court should determine that the Northern District of California is the proper location for this dispute. In point of fact, while the decision to transfer this case rests squarely with this Court, Judge Wilken noted that "it would seem most conducive to judicial economy to have all of the disputes between these parties decided in the same court," and she invited StemCells to "file a motion to transfer [Neuralstem's] declaratory judgment action to [the California] Court," as well as the Closed Maryland Action, the "2006 case." Wilken Order at 9.[4] (Fuisz Decl., Ex. 2 at 9.)

Neuralstem's attempt to push this case before this Court has so far been based solely upon a rigid, formulaic first-to-file approach that the Federal Circuit has never endorsed.[5] (Fuisz Decl., Ex. 1.) In pursuing this agenda, however, Neuralstem ignores altogether the Federal Circuit's 2008 decision in *Micron*, reaffirming law stretching back to 1952. Then, as now, judicial administration of competing cases brought in different forums does not allow rigid mechanical rules. As the Supreme Court explained,

> The Federal Declaratory Judgment Act, facilitating as it does the initiation of litigation by different parties to many-sided transactions, has created complicated problems for coordinate courts. Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,

---

[4] As discussed in Section III.D.3, *infra*, StemCells does not oppose transferring the Closed Maryland Action to California. However, because the case is administratively closed and likely will be for some time, it is premature at this point to consider transferring that closed case to California, and consideration of transferring this Maryland Action to California should not hinge on the Closed Maryland Action.

[5] Federal Circuit law governs where a court is being called upon to decide whether to retain jurisdiction over a declaratory judgment action in favor of a forum where a patent infringement action is pending. *See Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995).

does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature.

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952).

Recently, the *Micron* decision reaffirmed that categorical rules deferring to the first-to-file forum would be inappropriate, particularly in light of the "newly understood legal environment" for declaratory judgment jurisdiction articulated in the Supreme Court's *MedImmune* decision. *See Micron*, 518 F.3d 897. Before *MedImmune*, declaratory judgment jurisdiction did not arise in patent cases until there was an objectively reasonable threat of imminent suit. *Id.* at 901. *MedImmune* lowered the bar to whether "all the circumstances show a controversy." *Id.* at 902.

Recognizing that this new environment could promote litigants to race to the courthouse, as Neuralstem did here, the *Micron* court cautioned that rather than "automatically going with the first filed action," the more appropriate analysis takes account of the convenience factors under 28 U.S.C. § 1404(a). As the Federal Circuit explained, "where the two actions were filed almost simultaneously, this court detects that the transfer analysis essentially mirrors the considerations that govern whether [a] court could decline to hear the case." *Id.* at 904. In other words, whatever weight the first-to-file analysis has as a rule is greatly diminished in this new, more lenient environment where the actions, as here, were filed almost simultaneously.[6]

Having noted that the convenience factors "take on added significance" in light of the newly understood *MedImmune* legal environment surrounding declaratory judgment jurisdiction, the Federal Circuit in *Micron* held that district courts "must consider the real underlying dispute:

---

[6] Notably, Neuralstem's declaratory judgment action is not entitled to claim first-to-file status with respect to much of the substance of the California Action. It is undisputed that StemCells filed first in California on: (1) infringement claims of the '418 Patent against all three Defendants; (2) infringement claims on the '505 Patent against two of the three Defendants; (3) violation of California trade libel laws; and (4) violation of California Business and Professions Code Section 17200. Each of these causes of action invokes separate and distinct legal issues and in no way can be considered to mirror Neuralstem's original declaratory judgment action limited to just the '505 Patent. *See Kearns*, 94 F.3d at 1555-56 (each patent is a separate and distinct cause of action).

The convenience and suitability of competing forums." *Id.* at 905. The court in *Micron* went on to articulate the controlling standard for review:

> The convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations relating to the interest of justice *must be evaluated to ensure the case receives attention in the most appropriate forum.* Eventually, robust consideration of these factors will reduce the incentives for a race to the courthouse because both parties will realize that the case will be heard or transferred to the most convenient or suitable forum.

*Id.* (emphasis added). In keeping with this controlling precedent, Judge Wilken also recognized that the Section 1404(a) factors must be addressed when considering the first-to-file rule. *See* Wilken Order at 7 (quoting *Micron*, 518 F.3d 904-05). (Fuisz Decl., Ex. 2 at 7.)

Here, careful examination of each of the four transfer factors from *Micron*, which the Court must now address, reveals that California, and not Maryland, is the proper place for the present dispute to be heard.

1. **The California Court Can Properly Exercise Jurisdiction and Venue Over All Necessary and Desired Parties and Claims and This Court Lacks Jurisdiction and Venue Over StemCells and NeuroSpheres**

Personal jurisdiction, venue and subject matter jurisdiction are proper for all parties and claims in the California Action. StemCells is located in Palo Alto, California. NeuroSpheres, though not a necessary party under Rule 19, properly can be named in California because it has exclusively licensed the '505 Patent to StemCells in California. The California court also has personal jurisdiction over Neuralstem and defendants Garr and Johe, as their alleged infringing acts occurred in large part in California. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) (for purposes of establishing personal jurisdiction, "in patent litigation the injury occurs at the place where the infringing activity directly impacts on the interests of the patentee" (citation and quotation omitted)). In particular, as alleged in the California complaint, Neuralstem outsources much of its research on stem cells to its collaborators at the University of California at San Diego. (Fuisz Decl., Ex. 4.) Significantly,

the defendants in the California Action, Neuralstem, Johe and Garr failed to raise any serious jurisdictional issues in their motion to dismiss the California Action.[7]

In contrast, and as detailed above, this Court lacks personal jurisdiction over StemCells and NeuroSpheres, venue is improper, and subject matter jurisdiction is not established. The absence of jurisdiction here, coupled with the fact that jurisdiction is proper in the Northern District of California, strongly favors transferring this action.

### 2. The Convenience and Availability of Witnesses Favors the California Forum

There is no debate that this action can proceed conveniently in California. Neuralstem is a local Maryland company, but it outsources to different states all of its substantive functions, including research activities in California. In fact, Neuralstem has demonstrated in many ways its willingness to act in California. For example, just a few months ago, Neuralstem filed suit in California against another California entity. (Fuisz Decl., Ex. 13.) Litigation in California clearly poses no hardship to Neuralstem. In turn, StemCells is located in California and all of its employees and corporate witnesses are in California.

In addition, many of the key third-party witnesses reside either in California or are significantly closer to California than to Maryland. Two of the inventors of the '418 and '505 Patents, for example, reside in Alberta, Canada, which is closer to California than to Maryland. Moreover, as alleged in the California Action, Neuralstem's alleged trade libel and violations of California Business and Professions Code involve lost licenses with BrainCells, Inc. and NeuroGeneration, both California companies, and perhaps others in California. Further, many of the alleged infringing activities arise out of work done in California at the University of California at San Diego and will necessarily involve witnesses located in Southern California. Accordingly, the convenience to third-party witnesses weighs heavily in favor of the California

---

[7] While objections to subject matter jurisdiction are not waived, Neuralstem, Garr and Johe failed to raise any such objection in California and thus apparently agree that subject matter jurisdiction exists in the California Action from its inception.

forum. *See Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000) (transferring case and recognizing that "[p]erhaps the most important factor to be considered by a court in passing on a motion to transfer is the convenience of the witnesses").

>    **3.     Consolidation of This Action With the Closed Maryland Action Would be Improper and Would Inequitably Delay the Trial and Confuse the Issues Under Consideration**

*Micron's* consolidation element also weighs in favor of the California forum. Consolidation of Neuralstem's declaratory judgment action with the Closed Maryland Action would be highly prejudicial by delaying StemCells' enforcement of its rights under the '505 and '418 Patents, which are not under reexamination.[8]  *See Bigg Wolf Disc. Video Movie Sales, Inc. v. Montgomery County*, 256 F. Supp. 2d 385, 390 (D. Md. 2003) (denying motion to consolidate on the grounds that there had been delays in one of the cases); *Southwest Marine, Inc. v. Triple a Mach. Shop, Inc.*, 720 F. Supp. 805, 807 (N.D. Cal. 1989) ("To determine whether to consolidate, a court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation."); *see generally* Fed. R. Civ. P. 42; 9 Wright & Miller § 2382.

In addition, this declaratory judgment action and the Closed Maryland Action present different patents and distinct operative facts and legal issues. For example, Neuralstem has stated publicly and in its motion to lift the stay that it will raise the defense of intervening rights in the Closed Maryland Action. (Fuisz Decl., Ex. 8.) While StemCells and NeuoSpheres strongly disagree with Neuralstem's intervening rights argument, that issue is not present at all with respect to the '505 and '418 Patents, given that these patents have not been reexamined (or asked to be reexamined) by the U.S. Patent Office. Similarly, given Neuralstem's alleged

---

[8] In fact, StemCells opposed Neuralstem's attempt to re-open prematurely the Closed Maryland Action, in part, because StemCells bargained for benefits in the stipulated court order which will not accrue until the reexaminations have been completed. (Fuisz Decl., Ex. 9.) Moreover, as explained in StemCells' opposition to Neuralstem's motion to lift the stay, the case cannot be fully opened, and if opened, will proceed in piecemeal fashion because certain of the patents are still in reexamination and their scope is not yet resolved.

intervening rights argument, the two actions will likely involve different safe harbor issues under 35 U.S.C. § 271(e)(1).

In addition, central to Neuralstem's declaratory judgment action is its affirmative defense of inequitable conduct with respect to the '505 Patent. The four older patents under reexamination, which merely share a common parent application with the newly issued '505 Patent, cannot possibly be tainted by the alleged inequitable conduct under the doctrine of infectious unenforceability. *See, e.g., Nilssen v. Osram Sylvania, Inc.*, 440 F. Supp. 2d 884, 902 (N.D. Ill. 2004) (holding doctrine of infectious unenforceability applies only to patents with "immediate and necessary relation;" sharing a common parent application is not sufficient to establish relatedness). Adjudicating these issues of inequitable conduct in the Closed Maryland Action would be prejudicial to that case, and unnecessarily so.

For these reasons, any argument of consolidation in Maryland with the stayed action would be spurious because of the different procedural postures of the cases, the different patents, and the variability and differences in the issues. In turn, the risk of prejudicial delays and case confusion in Maryland would be very real, while none of these potential prejudices exists in the California forum. Indeed, the California action is proceeding quickly towards a resolution, with the parties set to participate in a case management conference in just over a month, on August 26, 2008. Furthermore, should the Court harbor any conviction about consolidating the two Maryland actions, Judge Wilken offered to take the Closed Maryland Action when it reopens. Given the status of the California Action, however, it is quite possible that the California Action could reach a trial before the patents currently in reexamination receive certification from the U.S. Patent Office. Defendants remain opposed to consolidating either this action or the California Action with the Closed Maryland Action, at least until such time as the reexaminations have concluded. However, should the Court also wish to transfer the Closed Maryland Action, StemCells and NeuroSpheres do not oppose such a transfer. In any event, there is no reason to delay the California Action.

#### 4. The Interests of Justice Strongly Favor California as the Proper Forum

Finally, the *Micron* "interest of justice" factor also favors the California forum. First, personal jurisdiction, venue, and subject matter jurisdiction are established in the California Action permitting the California court to reach the merits. In contrast, this Court's lack of jurisdiction will almost certainly delay this action.

Second, the California court has experience with the uniquely California claims for unfair competition under Business and Professions Code Section 17200 and trade libel and, thus, adjudication of the state law claims would be more efficient in California. *See Fasolyak*, 2006 U.S. Dist. LEXIS 96546, at *20 (Williams, Jr., J.) (transferring case to Northern District of Illinois after determining that Illinois law would govern the contract dispute).

#### 5. Neuralstem May Not Claim Whatever Residual Benefit Exists Under the First-to-File Rule Because the Actions Differed in Parties and Subject Matter, and This Declaratory Judgment Action Is a Bad Faith, Anticipatory Suit

Neuralstem's race to the courthouse in Maryland is the exact situation that *Micron* warned against when it held that a rigid view of the first-to-file rule "cannot be given undue weight because it is easily manipulated." *Micron*, 518 F.3d at 904. While robust application of the *Micron* factors confirms that California is the appropriate forum for resolution of this case, other "exceptions" to the first-to-file rule further establish that this case should be transferred to California. *See, e.g., Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) (exceptions to a preference for the first to file action "are not rare, and are made when justice or expediency requires, as in any issue of forum choice").

As a matter of both law and equity, Neuralstem cannot claim first-to-file on the '505 Patent because this Court lacked subject matter jurisdiction and personal jurisdiction when the action was filed. Moreover, this action was an anticipatory bad faith suit designed to harm StemCells publicly, as demonstrated by Neuralstem presaging the suit with a press release accusing StemCells of defrauding the U.S. Patent Office. *Id.* (recognizing that anticipatory or bad faith tactics are also exceptions to first-to-file). When Neuralstem issued this press release

and filed this action, it was aware that StemCells had spent considerable sums developing and protecting its patent estate and that its IP portfolio and licensing opportunities have been, as for any biotechnology company, of critical importance to StemCells' business, employees and prospects. And yet, when Neuralstem filed its suit, there was no "substantial controversy" between the parties over either the '505 or '418 Patents – indeed, there was no controversy about them at all, as admitted by Neuralstem in its May 7, 2008, press release. Compounding this illegitimacy, Neuralstem then attempted to game the federal system by amending its complaint so that it could argue that its action mirrors StemCells' first filed California Action – all the while avoiding the serious jurisdictional issues underlying the flawed but calculated rush to the Maryland courthouse.

To put it bluntly, Neuralstem conjured up a threat of suit from the benign '505 Patent press release, filed for declaratory relief on the '505 Patent, amended that action *post facto* to mirror StemCells' action, and is now attempting to portray itself as having therefore filed first in Maryland. Given the equities here, Neuralstem was not the first to file (and certainly shouldn't be permitted to use a rigid first-to-file rule to deprive the patent holders of their ability to litigate their patents in their chosen forum). Allowing such anticipatory and bad faith actions to dictate forum choice should not be permitted, especially in this new legal environment post-*MedImmune*.[9]

## IV. CONCLUSION

As detailed above, the convenience of the parties and witnesses, jurisdiction over the parties, inequities of consolidation, and other interests of justice all show that the first-to-file rule

---

[9] Even before *Micron*, several circuits have recognized the danger of forum shopping caused by declaratory judgment actions. *See Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937) (holding courts should decline jurisdiction over declaratory judgment actions filed "for the purpose of anticipating the trial of an issue in a court of co-ordinate jurisdiction"); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 557 (S.D.N.Y. 2000) ("An improper anticipatory filing is one made under the apparent threat of a presumed adversary filing the mirror image of that suit in another court."); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978) ("The federal declaratory judgment is not a prize to the winner of a race to the courthouses.").

is inapplicable here. Therefore, the Court should dismiss Neuralstem's amended complaint. In the alternative, the Court should transfer the case to the Northern District of California where the California Action is proceeding expeditiously.

DATED: _____July 15, 2008_____                    Respectfully Submitted,

                                                    /s/ John R. Fuisz
                                                    John R. Fuisz (Admitted *Pro Hac Vice*)
                                                    Jeremy I. Medovoy (Bar No. 16893)
                                                    McDERMOTT WILL & EMERY LLP
                                                    600 13th Street, N.W.
                                                    Washington, DC 20005-3096
                                                    Telephone: (202) 756-8000
                                                    Facsimile: (202) 756-8087
                                                    jmedovoy@mwe.com

                                                    *Counsel for Defendants StemCells, Inc.,*
                                                    *StemCells California, Inc., and*
                                                    *NeuroSpheres Holding Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2008, I electronically filed the foregoing with the Clerk of Court through the CM/ECF system which will send electronic notice of the filing to the registered participants as identified on the Notice of Electronic Filing.

_____/s/ Jeremy I. Medovoy_____