1  Clark S. Stone (SBN 202123) cstone@macpherson-kwok.com
   MACPHERSON KWOK CHEN & HEID LLP
2  2033 Gateway Place, Suite 400
   San Jose, CA 95110
3  Telephone:  (408) 392-9250
   Facsimile:  (408) 392-9262
4
   Michael J. Abernathy (*pro hac vice*) mabernathy@bellboyd.com
5  Sanjay K. Murthy (SBN 212097) smurthy@bellboyd.com
   BELL, BOYD & LLOYD LLP
6  70 West Madison Street, Suite 3100
   Chicago, Illinois  60602
7  Telephone:  (312) 372-1121
   Facsimile:  (312) 827-8000
8

9  Attorneys for Defendants
   NEURALSTEM, INC., KARL K. JOHE, and
10 I. RICHARD GARR

11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                          OAKLAND DIVISION

15

16

17 STEMCELLS, INC., a Delaware corporation, and   **Case No. C 08-02364 CW**
   STEMCELLS CALIFORNIA, INC., a California
18 corporation,                                    **NOTICE OF DECISION FROM THE**
                                                   **DISTRICT OF MARYLAND AND**
19              Plaintiffs,                        **RENEWAL OF MOTION TO DISMISS,**
                                                   **TRANSFER OR STAY**
20         v.

21 NEURALSTEM, INC., a                             Judge:      Hon. Claudia Wilken
   Delaware corporation, KARL K. JOHE, an         Courtroom:  Courtroom 2, 4th Floor
22 individual, and I. RICHARD GARR, an
   individual,
23
24              Defendants.

25

26

27

28
   NOTICE OF DECISION FROM THE DISTRICT OF MARYLAND
   AND RENEWAL OF MOTION TO DISMISS, TRANSFER OR STAY
   CASE NO. C 08-02364 (CW)

1    **TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

2         PLEASE TAKE NOTICE that, pursuant to this Court's Order of July 1, 2008 (Dkt. No. 37),

3    Neuralstem, Inc., Karl K. Johe, and I. Richard Garr (collectively "Defendants") provide Notice of

4    the Order and Memorandum Opinion by the Honorable Alexander Williams, Jr. of the United

5    States District Court for the District of Maryland ***denying*** Plaintiffs, StemCells, Inc. and StemCells

6    California, Inc. (collectively "StemCells"), motion to dismiss or transfer Neuralstem's declaratory

7    judgment action which was filed before this case. (Exhibit A). As explained in his Memorandum

8    Opinion, Judge Williams will be resolving all of the patent and related state law claims at issue in

9    this case.

10        In the Order dated July 1, 2008, this Court indicated it was denying Defendants' Motion to

11   Dismiss, Transfer or Stay "without prejudice" and further noted it would transfer this action if

12   Judge Williams denied StemCells' motion to transfer. (Dkt. No. 37 at 9). Since this matter will be

13   moving forward in Maryland, there is no reason for this duplicative action. Accordingly,

14   Defendants respectfully renew their Motion to Dismiss, Stay or Transfer, insofar as that motion

15   requests to have this action either dismissed or transferred to the District of Maryland.[1]

16

17   Dated: August 28, 2008                    Respectfully submitted,

18                                             BELL, BOYD & LLOYD LLP

19                                             By: /s/ *Sanjay K. Murthy*_____
                                               Michael J. Abernathy (*pro hac vice*)
20                                             mabernathy@bellboyd.com
                                               Sanjay K. Murthy (SBN 212097)
21                                             smurthy@bellboyd.com
                                               70 West Madison, Suite 3100
22                                             Chicago, Illinois 60602-4207
                                               Telephone: (312) 372-1121
23                                             Facsimile: (312) 827-8000

24                                             Clark S. Stone (SBN 202123)
                                               cstone@macpherson-kwok.com
25                                             MACPHERSON KWOK CHEN & HEID LLP
                                               2033 Gateway Place, Suite 400
26                                             San Jose, CA 95110

27   [1]    Counsel for Neuralstem also wishes to express his sincere gratitude to the Court for moving
           the Case Management Conference previously set for August 26, 2008. His son was born just a
28         few days before on August 22, 2008 and his family is doing well.

Telephone:  (408) 392-9250
Facsimile:  (408) 392-9262

Attorneys for Defendants
NEURALSTEM, INC., KARL K. JOHE, and
I. RICHARD GARR

**EXHIBIT A**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### SOUTHERN DIVISION

| | | |
|---|---|---|
| NEURALSTEM, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW-08-1173 |
| | * | |
| STEMCELLS, INC., *et al.*, | * | |
| | * | |
| Defendants. | * | |

*********************************************************************************

## <u>ORDER</u>

For the reasons stated in the accompanying Memorandum Opinion, IT IS this **<u>27th day of August, 2008</u>**, by the United States District Court for the District of Maryland, hereby **ORDERED**:

1. That Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Personal Jurisdiction, and Improper Venue or, in the Alternative, to Transfer to the Northern District of California (Doc. No. 25) BE, and the same hereby IS, **DENIED-in-par**t and **GRANTED-in-part**;[1]

2. That Defendant Neurospheres Holding, Ltd. BE, and the same hereby IS, **DISMISSED** from this action; AND

3. That the Clerk of the Court transmit a copy of this Memorandum Opinion and Order to all counsel of record.

_____/s/_____
Alexander Williams, Jr.
United States District Judge

---

[1] As explained in the Memorandum Opinion, the Court will grant Defendants' motion only with respect to dismissing Defendant Neurospheres Holdings Ltd. from this action for lack of personal jurisdiction.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| NEURALSTEM, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW-08-1173 |
| | * | |
| STEMCELLS, INC., *et al.*, | * | |
| | * | |
| Defendants. | * | |

**************************************************************************

## <u>MEMORANDUM OPINION</u>

Plaintiff Neuralstem, Inc. ("Neuralstem" or "Plaintiff") brings this declaratory judgment action against StemCells, Inc. and Stemcells California, Inc. (collectively "StemCells") and Neurospheres Holding, Ltd. ("Neurospheres" or collectively "Defendants"), seeking a finding of non-infringement and invalidity of patents. Currently pending before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Personal Jurisdiction, and Improper Venue or, in the Alternative, to Transfer to the Northern District of California (Doc. No. 25). The Court held a telephonic conference to discuss the pending motion on August 13, 2008.[1] *See* Local Rule 105.6 (D. Md. 2008). The Court has reviewed the entire record, as well as the pleadings and exhibits, with respect to the instant motion. The issues having been fully briefed and argued by the parties, this matter is now ripe for review. For the reasons set forth below, the Court will DENY-in-part and GRANT-in-part Defendants' Motion.

---

[1] During the telephonic conference, the Court also discussed Neuralstem, Inc.'s Motion to Re-Open Case and Lift Stay (Doc. No. 71) in *StemCells, Inc., et al. v. Neuralstem, Inc.*, Civil Action No. AW-06-1877.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant StemCells is a Delaware corporation, located in Palo Alto, California, that discovers and develops stem cells therapeutics.[2]  Plaintiff Neuralstem is a Delaware corporation located in Rockville, Maryland.

On July 24, 2006, StemCells filed suit against Neuralstem in this Court (the "Maryland action"), alleging infringement of four of StemCells' patents: namely, U.S. Patent Nos. 5,851,832 ( the "'832 Patent"), 6,294,346 ( the "'346 Patent"), 6,497,872 (the "'872 Patent"), and 7,101,709 (the "'709 Patent").   Neuralstem petitioned the United States Patent and Trademark Office ("USPTO") for a reexamination of all four patents, which was subsequently granted.  The Maryland action remains stayed and administratively closed pending the completion of the reexaminations.

On October 3, 2006, and April 22, 2008, the USPTO issued U.S. Patent Nos. 7,115,418 (the "'418 Patent") and 7,361,505 (the "'505 Patent"), respectively, to Neurospheres.  StemCells is the exclusive licensee to these patents, which both arose out of the complex prosecution history that also resulted in the four patents at issue in the Maryland action – the '832, '346, '872, and '709 Patents.

With regards to the '505 Patent, StemCells issued a press release on April 23, 2008, stating:

> The issuance of this patent rounds out and strengthens our neural stem cell portfolio, which we believe is unparalleled in its breadth, depth, and completeness . . . We are confident that any third party wishing to commercialize neural stem cells as potential therapeutics or to use them as drug screening tools will have to seek a license from us irrespective of how they derive the cells.  We have already granted licenses to several companies and are considering licensing others.

(Pl. Opp. Br., Ex. G.)  StemCells notes that no communications have occurred between StemCells

---

[2] StemCells is the exclusive licensee to Defendant Neurospheres' two patents involved in this action –  U.S. Patent Nos. 7,115,418 (the "'418 Patent") and 7,361,505 (the "'505 Patent").

and Neuralstem concerning either the '418 and '505 Patents, either before or after StemCells issued its press release.

Neuralstem filed this declaratory judgment action against StemCells and Neurospheres, on May 7, 2008, seeking to find that the '505 Patent is unenforceable, not infringed, and invalid. Just hours after Neuralstem filed this declaratory judgment action, StemCells filed an action against Neuralstem in the United States District for the Northen District of California (the "California action"), alleging infringement of both the '418 and '505 Patents. On May 9, 2008, StemCells amended its complaint to include two California state law causes of action: (1) violation of California Business and Professions Code Section 17200; and (2) violation of California common law trade libel.

Thereafter, on May 13, 2008, Neuralstem filed an amended declaratory judgment complaint in this Court, seeking a finding of no infringement of StemCells' '418 Patent, and a finding that Neuralstem is not in violation of the California laws. On May 30, 3008, Neuralstem filed a motion to dismiss in the California action, based on the first-to-file rule and, alternatively, sought to transfer that action to this Court. On July 1, 2008, the California court denied Neuralstem's motion and deferred to this Court to decide the appropriate forum.

## STANDARD OF REVIEW

### I.     Subject Matter Jurisdiction, Fed. R. Civ. P. 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has

jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647. The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768.

## II.    Personal Jurisdiction, Fed. R. Civ. P. 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), the party asserting personal jurisdiction has the burden to prove the existence of a ground for jurisdiction by a preponderance of the evidence. *Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993). When a court addresses the question of jurisdiction based only on the pleadings, the allegations in the complaint, the motion papers, and any supporting legal memoranda, without an evidentiary hearing, the burden is on the plaintiff to make a prima facie showing of a sufficient basis for jurisdiction. *Id.*; *see also New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). In determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan*, 2 F.3d at 60; *see also Dring v. Sullivan*, 423 F.Supp.2d 540, 543 (D. Md. 2006).

## DISCUSSION

## I.    Subject Matter Jurisdiction Under the Declaratory Judgment Act

Defendants argue that the Court lacks subject matter jurisdiction over Neuralstem's request for declaratory relief because there was not an "actual controversy" at the time the declaratory judgment action was filed.

The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual

controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought . . . ."  28 U.S.C. § 2201(a).  "The 'actual controversy' requirement of the Declaratory Judgment Act is rooted in Article III of the Constitution, which provides for federal jurisdiction over only 'cases and controversies.'"  *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008).

Having recently examined the "actual controversy" requirement under the Declaratory Judgment Act in the context of a patent license dispute, and finding that the requirement is compatible with Article III's "case and controversy" requirement, the Supreme Court stated that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, ___, 127 S. Ct. 764, 771 (2007).  In light of the Supreme Court's decision in *MedImmune*, the Federal Circuit has abandoned its two-part – "reasonable apprehension of suit" test – previously used to determine whether an actual controversy existed under the Declaratory Judgment Act.[3]  *See SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1380 (Fed. Cir. 2007) ("The Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit test.").  The court adopted "the now more lenient legal standard" set forth in *MedImmune*, which seemingly "facilitates or enhances the availability of declaratory judgment

---

[3] Under the "reasonable apprehension" test, a plaintiff was required to prove: "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension of imminent suit; and (2) present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken with the intent to conduct such activity."  *Teva Pharms. USA, Inc. v. Pfizer Inc.*, 395 F.3d 1324, 1332 (Fed. Cir. 2005).

jurisdiction in patent cases." *Micron,* 518 F.3d at 902.[4] Under the "more lenient" standard, a plaintiff need only show, in short, that "all of the circumstances" establish a "substantial controversy*.*" *Id.* at 901.

Neuralstem argues that there is an "actual controversy" that justifies the filing of the present action for declaratory relief as to the '505 patent.

First, Neuralstem argues that StemCells' public statements and actions establish a controversy. After the USPTO issued the '505 patent to Neurospheres, StemCells, the exclusive licensee of the '505 patent, issued a press release on April 23, 2008, stating that they "are confident that any third party wishing to commercialize neural stem cells as potential therapeutics or to use them as drug screening tools will have to seek a license from [StemCells] irrespective of how they derive the cells." (Pl. Opp. Br., Ex. G.) Although this public statement did not mention Neuralstem by name, Neuralstem maintains that Defendants were "unmistakenly threatening" Neuralstem by using "code words" linked to previous litigation, such as "potential therapeutics" and "drug screening tools."

Neuralstem contends that its use of stem cells as "potential therapeutics" or as "drug screening tools" is the exact activity at the center of the dispute in the 2006 Maryland Action filed by StemCells. Moreover, as an entity that develops stem cells as "potential therapeutics," Neuralstem notes that it does not believe it needs a license from StemCells to continue its activities,

---

[4] The Federal Circuit cited a number of cases in which it remanded or reversed district court dismissals of declaratory judgment actions in light of the "now more lenient" legal standard. *Micron*, 518 F.3d at 902 ("*Sony Elecs. Inc., v. Guardian Media Techs.*, *Ltd.*, 497 F.3d 1271 (Fed. Cir. 2007) (remand of district court's dismissal of declaratory judgment action); *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.,* 482 F.3d 1330 (reversal of district court's dismissal of declaratory judgment action); *SanDisk.*, 480 F.3d 1372 (remand of district court's dismissal of declaratory judgment action).").

and that StemCells' public charges that "any third party" using "stem cells as potential therapeutics" must obtain a license from StemCells jeopardizes Neuralstem's right to operate. Neuralstem also references StemCells' April 15, 2008 press release relating to patents involved in the 2006 Maryland action, in which StemCells announced "we can move ahead expeditiously with our suit against Neuralstem and it its collaborators and we remain confident they will ultimately be found to have infringed numerous claims of our patents." (Pl. Opp. Br., Ex. H.) Neuralstem further contends that StemCells has a policy of enforcing its patents and, in a letter dated April 10, 2006, "threatened" Neuralstem by making it clear that it will enforce its patents: "As you know from previous letters to Neuralstem, and the previous discussions between the parties, Neuralstem cannot commercialize any neural stem cell product absent a license from SCI . . . . It is StemCells policy to enforce its patents."[5] (Pl. Opp. Br., Ex. O.)

Second, Neuralstem alleges that StemCells has an "aggressive" history of suing on the same technology involved in this action, which, as Neuralstem argues, demonstrates "a course of conduct that shows a preparedness and willingness to enforce its patent rights . . . ."[6] *See SanDisk*, 480 F.3d at 1383 (declining to hold that a statement that the defendant would not sue the plaintiff eliminates the justiciable controversy, because the defendant "has engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights despite [the] statement"). To further support its argument, Neuralstem relies on the Federal Circuit's decision in *Teva Pharms. USA, Inc.*

---

[5] This letter was not written in connection with the patents at issue in this action .

[6] In addition to the 2006 Maryland action between the parties, which is currently pending before this Court, Neuralstem states that StemCells twice sued another competitor on patents on the technology involved here. In 2004 and 2005, StemCells brought an action in this district against ReNeuron Limited. *See* Civil Action Nos. 04-CV-0973-MJG and 05-CV-1125-MJG (D. Md.). Neuralstem also notes that, in 2001, StemCells sued Sciencell Research Laboratories in the District of Massachusetts alleging infringement of nine patents. *See* Civil Action No. 01-11942-REK. Defendants note that ReNeuron was never served and both actions were dismissed without prejudice. Irrespective of this fact, proof that Defendants filed these suits is indicative of Defendants enforcing their patents.

*v. Novartis Pharms. Corp.*, where the court explained that "related litigation involving the same technology and the same parties is relevant in determining whether a justiciable declaratory judgment controversy exists *on other related patents*." 482 F.3d 1330, 1344 (emphasis added).[7] Third, Neuralstem notes that StemCells filed its infringement action in California just hours after Neuralstem filed this declaratory judgment action, and argues that this nearly simultaneous filing also proves that a controversy existed.

In their challenge to jurisdiction under the Declaratory Judgment Act, Defendants contend that the Federal Circuit, based on its decision in *SanDisk*, requires a showing that a "patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party." *SanDisk*, 480 F.3d at 1381. Relying on *SanDisk*, Defendants argue that there must be an identification of a specific patent and the allegedly infringing products or activities in order for there to be declaratory relief jurisdiction. Based upon the Court's reading and interpretation of *SanDisk*, however, the Court is unable to discern such a requirement. Rather than requiring that there be a patent which a patentee has asserted against another party as being infringed, the Federal Circuit merely noted:

> We *hold only* that *where* [or in the event that] a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, that such action occurs, an Article III case or controversy will arise and the party need

---

[7] Neuralstem cites other federal district court decisions confirming that "a history of patent litigation between the parties can provide a jurisdictional basis under the circumstances." *See, e.g.*, *Vutek, Inc. v. Leggett & Platt, Inc.*, 2008 U.S. Dist. LEXIS 12516 (E.D. Mo. Feb. 20, 2008) ("A history of patent litigation between the parties can provide a jurisdictional basis under certain circumstances.") (citing *Kos Pharm. v. Barr Lab., Inc.*, 242 F. Supp. 2d 311, 315 (S.D.N.Y. 2003)). Even applying the stricter "reasonable apprehension" test, the district court in *Kos* found that a prior history of patent litigation between the parties supported a finding of jurisdiction where "the litigation between the parties involved the same technology as the patent that is subject to the declaratory judgment action before the Court." *Id.* There was also evidence that plaintiff had made a public statement that it would "vigorously enforce [its] patent rights." *Id.*

> not risk a suit for infringement by engaging in the identified activity
> before seeking a declaration of its legal rights.

*SanDisk*, 480 F.3d at 1381 (emphasis added).  In fact, the court expressly avoided the "need [to] define the outer boundaries of declaratory judgment jurisdiction, which [as the court noted] will depend on the application of the principles of declaratory judgment jurisdiction to the facts and circumstances of each case." *Id.*  The court did recognize, however, that "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *Id.*  Here, Neuralstem develops stem cells as "potential therapeutics" and does not believe it needs a license from StemCells to continue its activities.  Therefore, it appears that Neuralstem has been placed in a position of either "pursuing arguably illegal behavior" of using stem cells as potential therapeutics or "abandoning" its use and, as Neuralstem posits, jeopardizing its right to operate.

With respect to Defendants' public statement concerning the '505 patent, although both parties agree that Neuralstem was never threatened directly with infringement of the patent prior to Neuralstem filing suit, Neuralstem correctly points out that the Federal Circuit has acknowledged that declaratory judgment jurisdiction can exist even where the potential declaratory judgment defendant cannot sue or has not indicated a willingness to sue.  *See SanDisk*, 480 F.3d 1372; *see also Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007) ("In *SanDisk*, we held that a district court had jurisdiction over a suit requesting a declaration that a patent was invalid and not infringed even though the patentee had not threatened the declaratory judgment plaintiff with an infringement suit.").

Defendants' April 23 press release, in which StemCells vaunted its confidence that "any"

9

third party wishing to use neural stem cells as "potential therapeutics" or as "drug screening" tools "will have to seek a license from [StemCells]," Defendants' policy of enforcing their patents through litigation, and the history between the parties with respect to the technology involved here, including other statements and correspondences, amply support a finding of an actual controversy or dispute between the parties. While any one of the facts presented by Neuralstem, standing alone, may arguably not create an "actual controversy" for the purpose of the Declaratory Judgment Act, the Court believes that an examination of "all of the circumstances" unquestionably evinces the existence of an "actual controversy" at the time this declaratory judgment action was filed. Thus, given the facts and considering all of the circumstances, the Court can, without difficulty, find a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See Micron*, 518 F.3d at 901.

Even more telling is the fact that Defendants filed their infringement action in California just hours after Neuralstem filed the instant declaratory judgment action. While the Court recognizes that a "party seeking a declaratory judgment pursuant to [the Declaratory Judgment Act] must establish that subject matter jurisdiction over its action existed at the commencement of the action," *see Glaxo Wellcome, Inc. v. Pharmadyne Corp.*, 32 F. Supp. 2d 265, 273 (D. Md. 1998), the Court must also acknowledge the Federal Circuit's consideration of the fact that a defendant filed an infringement action just one day after the plaintiff filed its declaratory action. *See Micron*, 518 F.3d at 901 ("The record evidence at the time of the filing in California district court strongly suggested that Defendant would sue Plaintiff soon. Indeed, that suit, filed one day later, was actually pending in Texas at the time that the California district court made its ruling . . . .").

In sum, the Court finds that the "actual controversy" of the Declaratory Judgment Act has

been met with respect to the '505 patent, and , thus, the Court has jurisdiction over this declaratory judgment action. Moreover, since jurisdiction is proper under the Declaratory Judgment Act with respect to the '505 patent, the Court also finds that it has jurisdiction over Neuralstem's declaratory judgment action on the '418 patent, as well as the California state law claims.[8]

## II.    Personal Jurisdiction

### A.    Defendant StemCells

Defendants contend that this Court lacks personal jurisdiction over both StemCells and Neurospheres. Defendants claim that they do not have sufficient "minimum contacts" with Maryland, which would subject them to the jurisdiction of this Court.

In determining whether this Court has personal jurisdiction over StemCells, the Court "must apply the law of the Federal Circuit, as opposed to that of a regional circuit." *Breckenridge Pharm., Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006). To establish personal jurisdiction in a patent infringement case over a non-resident defendant, "a plaintiff must show both that the state long arm statute applies and that the requirements of due process are satisfied." *Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005); *see also Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (applying the traditional law regarding personal jurisdiction over an out-of-state defendant).

---

[8] Defendants essentially base their arguments with respect to the '418 patent and the state law claims on the ground that there was no subject matter jurisdiction over the '505 patent at the time Neuralstem originally filed the declaratory judgment action. Having found that jurisdiction does indeed exist, the Court will also exercise jurisdiction over the '418 patent and state law claims. The Court finds that not only does Neuralstem's amendment relate back to its original complaint, but there also was a controversy at the time Neuralstem amended its complaint because Defendants had already filed their infringement action with respect to the '418 patent. Additionally, as the Court has found that it has jurisdiction over the originally filed action, the Court can properly exercise supplemental jurisdiction with respect to the state law claims because they share a "common nucleus of operative fact" with the claim establishing this Court's original jurisdiction. *O'Bannon v. Friedman's Inc.*, 437 F. Supp. 2d 490, 492-93 (D. Md. 2006).

With respect to the first requirement, Maryland courts have interpreted Maryland's long-arm statute[9] as coextensive with the limits of the Due Process Clause of the Fourteenth Amendment. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002); *see also United States v. Undetermined Quantities of Articles of Drug*, 145 F. Supp. 2d 692, 705 (D. Md. 2001). Therefore, the statutory inquiry necessarily merges with the constitutional inquiry and the two inquiries become one. *Id.*

Turning now to the due process requirement, the Supreme Court has held that a non-resident defendant must have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" that are embodied in the Due Process Clause. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts exist only if the defendant's conduct with the forum state is "such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The Supreme Court has drawn a distinction between "specific" and "general" jurisdiction with regard to the question of personal jurisdiction. *See Helicopteros Nacionales de Colombia v.*

---

[9] Maryland's long-arm statute reads:

> A court may exercise personal jurisdiction over a person, who directly or by an agent:
> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
> (3) Causes tortious injury in the State by an act or omission in the State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
> (5) Has an interest in, uses, or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Cts. & Jud. Proc. Code Ann. § 6-103(b).

*Hall*, 466 U.S. 408, 414 (1984). Both parties have conceded that StemCells has no "continuous and systematic activities" within the forum state which would give rise to general jurisdiction.[10] Therefore, at issue here is specific jurisdiction, which exists where a suit "arises out of" a defendant's contacts with the forum state.

The Federal Circuit has established a three-prong test to determine whether the exercise of specific jurisdiction is consistent with due process: (1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the claim arises out of or relates to the defendant's activities within the forum state; and (3) whether assertion of personal jurisdiction is "reasonable and fair." *Breckenridge Pharm.*, 444 F.3d at 1363. In addressing the "reasonableness" of exercising jurisdiction, the defendant bears the burden of "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in Burger King." *Id.* The five-factors are: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive and social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

Neuralstem argues that personal jurisdiction is satisfied here because StemCells has waived its right or consented to jurisdiction by purposefully availing itself of the privilege of conducting activities in Maryland by filing a prior lawsuit in this Court against Neuralstem in a "related" action. Neuralstem argues that the 2006 Maryland action is significantly intertwined with the instant action.

---

[10] General jurisdiction requires "a substantial amount of general contacts arising from continuous and systematic activities." *Helicopteros*, 466 U.S. at 415.

13

In fact, Neuralstem contends that its use of stem cells as "potential therapeutics" or as "drug screening tools" is the activity at issue in the Maryland Action, and both cases involve overlapping theories of infringement, non-infringement, and invalidity.

The Supreme Court has held that the requirement of personal jurisdiction is intended to protect a defendant's liberty interests. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03 (1982). Finding that the defense of lack of personal jurisdiction is a personal right, courts have held that such defense "may be obviated by consent or otherwise waived." *General Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir. 1991); *see also Monsanto Co. v. McFarling*, 302 F.3d 1291, 1300 (Fed. Cir. 2002) ("Like other individual liberties, the right to due process may be waived, and a defendant by contract may consent to the jurisdiction of a court which otherwise would have no power over him.") (citing *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964)).

Many courts have concluded that personal jurisdiction may be based upon implied consent or waiver when a non-resident files a claim in the forum state that involves the same transaction. *See, e.g.*, *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1372 (Fed. Cir. 2002) (concluding that because the defendant "voluntarily invoked the court's jurisdiction as a plaintiff in a class action, it waived its personal jurisdiction defense to the suits brought by [the plaintiff]."); *General Contracting & Trade Co. v. Interpole, Inc.*, 940 F.2d 20 (1st Cir. 1991) (holding that a defendant who elected to avail itself of the benefit of a state court's jurisdiction by filing a prior suit against the same party waives its personal jurisdiction defense in all actions related to the claim and arising out of the same nucleus of operative facts for which it originally invoked the court's jurisdiction); *Lyman Steel Corp. v. Ferrostaal Metals Corp.*, 747 F. Supp. 389, 397 (N.D.

Ohio 1990) ("Voluntarily filing a lawsuit . . . where the facts similarly arise from the same series of events as another [prior] lawsuit can be deemed another indication of purposeful availment of the forum."); *Foster Wheeler Energy Corp. v. Mateallgesellshaft*, No. 91-214, 1993 U.S. Dist. LEXIS 20450 (D. Del. Jan. 4, 1993) (patent action where defendant subjected itself to personal jurisdiction in Delaware in a second suit by virtue of having previously filed its own suit in Delaware).

StemCells does not appear to contest Neuralstem's argument that a party essentially consents to jurisdiction through the act of filing a previous suit where the second suit arises from the "same transaction" or the "same nucleus of operative facts." Instead, in an effort to rebut Neuralstem's argument, StemCells contends that the two suits arise out of a different transaction or a different nucleus of operative facts. To support its contention, StemCells relies on the Federal Circuit's decision in *Kearns v. GMC*, 94 F.3d 1553, 1554 (Fed. Cir. 1996). In *Kearns*, the court decided whether *res judicata* could be applied to related patents that were not previously adjudicated on the merits, held that "[e]ach patent asserted raises an independent and distinct cause of action." *Id.* at 1555-56. Plaintiff's argument appears to be a red herring. While the Court understands that, for purposes of *res judicata*, each patent is distinct, there is undoubtedly no question here as to whether the '505 and '418 patents are independent of the four patents involved in the 2006 Maryland action. Thus, the issue here is not one of *res judicata*; rather, it is whether StemCells subjected itself to the jurisdiction of this Court when it filed a prior suit against Neuralstem with respect to related patents, involving the same parties, and arising out of the same transaction or same nucleus of operative facts. *See Gen. Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 25 (1st Cir. 1991) (holding that a defendant that invokes the jurisdiction of a court as a plaintiff waives its personal jurisdiction defense in all actions related to the claim for which it invoked the court's jurisdiction).

The Court is satisfied that there exists specific jurisdiction over StemCells in Maryland. StemCells purposefully availed itself of the privileges and benefits of this forum by voluntarily filing the 2006 Maryland action, which involves the same parties and is related to the same transaction or occurrence as the instant matter. As the Court noted during the telephonic conference with the parties, the two actions appear to be significantly intertwined and the infringement allegations of the patents involved in both cases appear to stem from Neuralstem's use of therapeutic and screening activities relating to neural stem cells. In fact, Neuralstem maintains that the USPTO found the claims of the '505 Patent and '418 Patent to be "virtually identical" to those asserted in the related Maryland action, rejecting the claims for both "same invention" and "obviousness type" double-patenting in view of claims in the '832 patent. (Pl. Opp. Br., Exs. E, at 8-11; R, at 2-4.)

Finally, Neuralstem notes that StemCells admits that the state law claims at issue in this case are based on statements made by Neuralstem's CEO concerning the reexamination of patents involved in the related 2006 Maryland action. (*See* Pl. Opp. Br., Ex. J, ¶¶ 21-37.) StemCells also admitted that these state law claims have "common operative facts" to its patent infringement claims. (*Id.*, ¶ 2.) In light of these facts, and upon the Court's examination of the relatedness between the two actions, the Court concludes that StemCells is subject to the jurisdiction of this Court. Any contrary ruling would simply "produce an unjust asymmetry," as it would allow StemCells to "enjoy the full benefits of access to [Maryland's] courts [as] plaintiff, while nonetheless retaining immunity from the courts' authority [as] defendant in respect to claims asserted by the very party it was suing [in Maryland]." *Interpole*, 940 F.2d at 23. Having ignited the spark to related litigation in this forum, StemCells cannot now attempt to determine the direction of the fire and re-direct it to the forum of its choice. Moreover, StemCells has not presented a sufficient ground upon which the Court could find any unfairness or unreasonableness in exercising

personal jurisdiction over StemCells.[11]

B.    *Defendant Neurospheres*

Neuralstem next seeks to establish personal jurisdiction over Neurospheres by virtue of Neurospheres' relationship with StemCells as the exclusive licensee of Neurospheres. Neurospheres, however, argues that it is not a party to the 2006 Maryland action and cannot be held to consent to personal jurisdiction based on the actions of StemCells.

Within the context of an exclusive licensor-licensee relationship, the Federal Circuit has held that a licensor can be subject to personal jurisdiction in a forum state where the licensor has a "relationship with an exclusive licensee headquartered or doing business in the forum state." *Breckenridge Pharm.,* 444 F.3d at 1366 (Fed. Cir. 2006).  Courts must closely examine the license agreement and consider whether the agreement creates an ongoing relationship between the licensor and licensee, such that the activities of the licensee can be imputed to the licensor. *See id.* at 1367. The Federal Circuit has held that the licensor is subject to personal jurisdiction if the license agreement provides that both the licensor and licensee are required, and have the right, to litigate infringement claims, *id.* at 1364; where there is an agreement for the licensor to indemnify the licensee for any third-party infringement action, *id.* at 1365; or where the licensor exercises control over the licensee's sales or marketing activities, *id.* at 1366.

There is no dispute here that StemCells is Neurospheres' exclusive licensee and that the license agreement grants StemCells the right to litigate on Neurospheres' behalf; however, there is no basis presented here upon which the Court can properly exercise jurisdiction over Neurospheres. While a licensor, under certain circumstances, can be subjected to personal jurisdiction in a forum state by virtue of the licensor's relationship with its exclusive licensee, the Federal Circuit requires,

---

[11]  StemCells never addresses the *Burger King* factors.

at a minimum, that the licensee conducts business in the forum state.  *See Breckenridge*, 444 F.3d at 1356 (exercising personal jurisdiction where the licensee conducted business by selling products in the forum state, and the licensor coordinated with the licensee in sending letters and in litigating infringement claims in the forum).

Unlike *Breckenridge*, there is nothing in the record here that indicates that StemCells has ever conducted business with Maryland or has had any contacts with Maryland, aside from filing previous litigation in this Court.[12]  While this Court believes that StemCells' actions are sufficient to subject StemCells to jurisdiction in this Court, there has been no activity of StemCells, as the exclusive licensee, that would warrant the exercise of personal jurisdiction over Neurospheres.  Further, Neurospheres was not a party to the related 2006 Maryland action and has never had a single contact with Maryland.  A finding that Neurospheres is subject to this Court's jurisdiction would run afoul the principle of reasonableness under the Due Process clause and the "traditional notions of fair play and substantial justice." *See Int'l Shoe Co.,* 326 U.S. 310 at 315. Therefore, the Court concludes that it does not have in personam jurisdiction over Defendant Neurospheres and will, accordingly, dismiss Neurospheres from this action.[13]

---

[12] During the telephonic conference, both parties represented to the Court that StemCells does not conduct business in the state of Maryland.

[13] Defendants also argue for dismissal based on improper venue on the ground that this Court lacks personal jurisdiction over StemCells and Neurospheres.  Despite the Court's finding that it does not have personal jurisdiction over Neurospheres, the Court finds that venue is proper here where the Court can properly exercise jurisdiction over StemCells, the exclusive licensee.  With respect to Neurospheres' dismissal from this action, the Court believes that Neurospheres, as the licensor, will be legally bound by any judgment in this action under the principles of *res judicata. See Montana v. United* States, 440 U.S. 147, 153 (1979) ("A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . .'").  If, at any point, Neurospheres deems it necessary to request the right to intervene in this action pursuant to Federal Rule of Civil Procedure 24, the Court must note that it will grant Neurospheres such a right.

### III.    Transfer Pursuant to 28 U.S.C. §§ 1404(a) and 1406(a)

Finally, the Court turns to StemCells' alternative plea to have this case transferred to the Northern District of California pursuant to 28 U.S.C. §§ 1404(a) and 1406(a) for the convenience of the parties and witnesses and in the interest of justice. Neuralstem, however, challenges a transfer by invoking the first-to-file approach, under which there is a strong presumption that the action should be decided by the court in which the action was first filed. *See Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974).

On May 7, 2008, just hours after Neuralstem filed its declaratory judgment action in this Court, StemCells filed its infringement action in the United States District Court for the Northern District of California. Neuralstem subsequently moved for dismissal or a stay of the California action based on the first-to-file rule, or, in the alternative, for a transfer to this Court. Judge Wilken, in a well-reasoned decision, denied Neuralstem's motion, but found that the first-to-file rule was applicable: "[a]pplying the first-to-file rule in this case furthers the sound policy rationale underlying it," and denied Neuralstem's motion. (Pl. Opp. Br. Ex. A, at 8). Although Judge Wilken found that the first-to-file rule should be applied in this case, she deferred to this Court "to decide the appropriate forum and whether an exception to the first-to-file rule is applicable." (*Id.*)

This Court adopts Judge Wilken's finding with respect to the applicability of the first-to-file rule in this action. As Judge Wilken noted in her Order, the first-to-file rule "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." (*Id.*) (citing *Northwest Airlines, Inv. v. American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993). It has also been said that the first-to-file rule "should not be disregarded lightly." *Church of Scientology v. U.S. Dep't. of the Army*, 611 F.2d 738, 750 (9th Cir. 1979). In this action, there is no question that Neuralstem filed its

declaratory action before StemCells filed its suit for infringement in California, and that the parties and issues in both cases are substantially the same.

Adopting Judge Wilken's findings and determining that the first-to-file rule is applicable to this action, the sole issue that remains before this Court is whether there is an exception to the rule that would warrant a departure. The Federal Circuit has held that there must be a "sound reason that would make it unjust or inefficient to continue the first-filed action. Such reason may be the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993); *see also Learning Network, Inc. v. Discovery Communs., Inc.*, 11 Fed. Appx. 297, 302 (4th Cir. 2001) (noting that the Fourth Circuit also "recognizes an exception to the first-filed rule when the balance of convenience favors the second action."); *Ellicott Machine Corp. v. Modern Welding Co.*, 502 F.2d 178, 179-180 n.2 (4th Cir. 1974). Other circumstances under which an exception to the first-to-file rule exists include "bad faith, anticipatory suit, and forum shopping." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 622 (9th Cir. 1991).

StemCells argues that the first-to-file rule should not be applied here because Neuralstem filed its declaratory judgment action in bad faith. StemCells further contends that Neuralstem cannot claim first-to-file on the '505 patent because (1) this Court lacked both subject matter and personal jurisdiction when this action was filed,[14] (2) this was an anticipatory bad faith suit designed to harm StemCells publicly, and (3) Neuralstem amended its complaint "*post facto*" to mirror StemCells' action. Neuralstem, on the other hand, argues, among other things, that no such "bad faith" or "anticipatory" action can be found here when StemCells was already suing Neuralstem on four

---

[14] The Court has already rejected this argument.

patents on the same technology and issued "threatening" statements alleging that the same activity infringed the new '505 patent. Upon a close examination of the facts presented, the Court cannot find any trappings of bad faith, anticipatory action, or forum shopping, which would warrant a departure from the first-to-file rule.

StemCells next argues that the balance of the convenience factors weighs in favor of the California action. To determine whether a transfer would be appropriate under § 1404(a), courts are to consider the following factors: (1) the weight accorded to plaintiff's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice. *Cross v. Fleet Reserve Ass'n Pension Plan,* 383 F. Supp. 2d 852, 856 (D. Md. 2005). With respect to these factors, StemCells maintains that the convenience and availability of witnesses favors the California forum; that Neuralstem is a Maryland company, but it outsources all of its substantive functions to different states, including research activities in California; that many of the key third-party witnesses reside either in California or are significantly closer to California than to Maryland (*e.g.*, two inventors of the '418 and '505 Patents reside in Canada); and that the interests of justice strongly favor California as the proper forum because personal jurisdiction, venue, and subject matter jurisdiction are established in the California action permitting the California court to reach the merits, and because the California court has experience with the two unique California claims.

In contrast, Neuralstem argues that Maryland is the most convenient forum for this dispute since (1) Neuralstem is based in Rockville, Maryland, and this cause of action arises directly from its activities within Maryland; (2) Neuralstem's employees are located in Maryland; (3) Neuralstem's research facility, documents, and potential witnesses related to how Neuralstem grows its cells are located in Maryland; (4) despite working with a research partner in California, Neuralstem has more than one research partner that it works with, many of which are located on the

east coast, which is closer to Maryland; and (5) that StemCells already agreed that Maryland is the right forum to decide these issues by filing the related 2006 Maryland action.

Upon consideration of the convenience factors, the Court must first note that the Maryland forum is entitled to substantial weight, as it is Neuralstem's choice of forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981) ("When the [plaintiff's] home forum has been chosen, it is reasonable to assume that this choice is convenient."). The Court finds that this factor militates persuasively in favor of this action being heard in Maryland. Second, while the Court recognizes that several witnesses and Defendants reside in California, it appears that several witnesses also reside in Maryland, Neuralstem's home forum, thus making both forums convenient to the witnesses and parties.

Finally, StemCells argues that the interest of justice favors the California forum because (1) personal jurisdiction, venue, and subject matter jurisdiction are established in the California Action permitting the California court to reach the merits and (2) the California court has experience with the California state law claims. Having ruled that subject matter jurisdiction exists under the Declaratory Judgement Act, that the Court has personal jurisdiction over StemCells (the exclusive licensee and arguably the essential party to this action), and that venue is proper in this district, the Court finds no persuasion in StemCells "interest of justice" argument. In fact, the Court believes that the interests of justice weigh heavily in favor of Maryland where Neuralstem was the first to file its action, where StemCells currently has a pending related action against Neuralstem in this Court, which StemCells filed back in 2006, and where those related actions could potentially be consolidated.[15] Moreover, notwithstanding the experience of the California courts in resolving California causes of action, federal courts routinely resolve the type of supplemental claims

---

[15] The Court is not, at this time, making a determination as to whether the two actions will be consolidated. The Court is merely noting the possibly of consolidation.

22

presented here, and this Court believes it is well-equipped and prepared to handle the California state law claims.

In sum, applying the first-to-file rule in favor of the Maryland action and finding no exception that would warrant a departure from this rule, the Court concludes that the instant Maryland action deserves priority over the California action. Accordingly, the Court will not transfer this action to California.

## CONCLUSION

The Court finds that subject matter jurisdiction exists over Neuralstem's declaratory judgment action, that the Court can properly exercise personal jurisdiction over Defendant StemCells, that venue is proper in this Court, and that there are no applicable exceptions that warrants a departure from the first-to-file rule. Therefore, the Court must deny Defendants' Motion to Dismiss with respect to those grounds. In addition, the Court finds no compelling reason to transfer this action to California, since the Court believes that a transfer will not serve the interests of justice, nor will it be of any greater convenience to the parties and witnesses. The Court will, however, grant Defendants' motion as it relates to this Court lacking personal jurisdiction over Defendant Neurospheres Holding, Ltd. An Order consistent with this Opinion will follow.

 

 

____August 27, 2008_____      _____/s/_____
  Date                  Alexander Williams, Jr.
                      United States District Judge